1   Amy P. Lally, SBN 198555
    alally@sidley.com
2   Emily Z. Culbertson, SBN 282560
    eculberston@sidley.com
3   SIDLEY AUSTIN LLP
    555 West Fifth Street, Suite 4000
4   Los Angeles, California  90013
    Telephone:  (213) 896-6000
5   Facsimile:  (213) 896-6600

6   Naomi A. Igra, SBN 269095
    nigra@sidley.com
7   SIDLEY AUSTIN LLP
    555 California Street, Suite 2000
8   San Francisco, California 94104
    Telephone:  (415) 772-1200
9   Facsimile:  (415) 772-7400

10  Attorneys for Defendants
    KIMBERLY-CLARK GLOBAL SALES, LLC;
11  KIMBERLY-CLARK CORPORATION; and
    KIMBERLY-CLARK WORLDWIDE, INC.

12

13              UNITED STATES DISTRICT COURT

14         FOR THE NORTHERN DISTRICT OF CALIFORNIA

15

16  JENNIFER DAVIDSON, an            ) Case No. CGC-14-537962
    individual, on behalf of herself, the )
17  general public and those similarly   ) **DEFENDANTS' NOTICE OF**
    situated,                         ) **REMOVAL; DECLARATION OF**
18                                    ) **AMY P. LALLY**
              Plaintiff,             )
19                                    )
    v.                               )
20                                    ) State Action Filed:  March 13, 2014
    KIMBERLY-CLARK                   )
21  CORPORATION; KIMBERLY-           ) State Action Served:  March 18, 2014
    CLARK WORLDWIDE, INC.;           )
22  KIMBERLY-CLARK GLOBAL            )
    SALES LLC; and DOES 1 through    )
23  50                               )
                                     )
24            Defendants.            )
                                     )
25

26

27

28

TO THE CLERK OF THE UNITED STATES DISTRICT COURT, NORTHERN DISTRICT OF CALIFORNIA:

Pursuant to 28 U.S.C. §§ 1332, 1441, 1446, and 1453, Defendant Kimberly-Clark Global Sales, LLC; Kimberly-Clark Corporation; and Kimberly-Clark Worldwide, Inc. (collectively, "Kimberly-Clark") hereby remove to this Court the above-styled action, pending as Case No. CGC-14-537962 in the Superior Court of the State of California for the County of San Francisco (the "State Court Action").

## I.    INTRODUCTION

1.    This case is properly removed to this Court pursuant to 28 U.S.C. § 1441(a) and (b) because the State Court Action is pending in the Superior Court of California, County of San Francisco, which is within the Northern District of California; the Court has original jurisdiction over the State Court Action pursuant to 28 U.S.C. § 1332(d); and the procedural requirements for removal are satisfied. Specifically, this Court has jurisdiction pursuant to the Class Action Fairness Act ("CAFA") because there is minimal diversity between the parties, the alleged putative class numbers in the "thousands," and the amount in controversy exceeds the jurisdictional amount of $5,000,000. *See* 28 U.S.C. §§ 1332(d), 1453.

## II.    BACKGROUND

2.    On or about March 13, 2014, Plaintiff Jennifer Davidson ("Plaintiff") filed the State Court Action against Kimberly-Clark Global Sales, LLC; Kimberly-Clark Corporation; Kimberly-Clark Worldwide, Inc.; and Does 1 through 50 in the Superior Court of California, County of San Francisco. [1]

3.    Plaintiff seeks relief on behalf of a statewide class consisting of "[a]ll persons who between March 13, 2010 and the present, purchased, in California, any

---

[1]    Although Plaintiffs have named Kimberly-Clark Corporation and Kimberly-Clark Worldwide, Inc. as co-defendants, those entities are neither necessary nor proper parties to this suit.  The sole correct party to this litigation is Kimberly-Clark Global Sales, LLC.  While CAFA permits any defendant to unilaterally remove the action where, as here, CAFA's requirements are met, *see* 28 U.S.C. § 1453(b), in an abundance of caution, all three defendants are removing.

of the following products:  Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths, Scott Naturals® Flushable Most Wipes, Huggies® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh flushable wipes."[2]  Compl. ¶ 74.

4.     The Complaint alleges against Kimberly-Clark violations of the California Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, *et seq.*; the California False Advertising Law, Cal. Bus. & Prof. Code § 17500, *et seq.*; the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.*; and the common law of Fraud, Deceit and/or Misrepresentation, arising out of the sale of flushable wipes.  Compl. ¶¶ 83-125.

5.     The Complaint seeks restitution, injunctive relief, compensatory damages, punitive damages, and attorneys' fees and costs.  Compl. at 31:10-32:7.

6.     On March 18, 2014, process was served on Kimberly-Clark Global Sales, LLC and Kimberly-Clark Worldwide, Inc.  On March 25, 2014, process was served on Kimberly-Clark Corporation.  No defendant has filed an answer or responsive pleading to the Complaint and no further proceedings have taken place in the State Court Action.  A case management conference has been set for August 13, 2014.

## III.  JURISDICTION

7.     Based on the allegations on the face of the Complaint, this Court has original jurisdiction over the State Court Action pursuant to CAFA.  *See* 28 U.S.C. § 1332(d).

8.     CAFA provides for federal jurisdiction of any "class action" composed of 100 or more putative-class members, where any member of the proposed class is a citizen of a state different from any defendant, and the amount in controversy exceeds $5,000,000 (exclusive of interest and costs).  28 U.S.C. § 1332(d).

---

[2]The complaint refers to these products collectively as "flushable wipes".

9.     Although Kimberly-Clark denies that it is liable to any individual or that class treatment is appropriate for this case, removal is proper pursuant to 28 U.S.C. §§ 1332(d) and 1453 because the State Court Action is an action between citizens of different states, on behalf of a putative class numbering in the "thousands," and involves an amount in controversy exceeding $5,000,000.

**A.     There is Minimal Diversity**

10.     CAFA requires only minimal diversity, namely, that "any member of a class of plaintiffs is a citizen of a State different from any defendant . . . ." 28 U.S.C. § 1332(d)(2)(A).

11.     Plaintiff alleges that she "is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California." Compl. ¶ 2. As such, Kimberly-Clark is informed and believes that at the time Plaintiff filed the State Court Action, Plaintiff was a citizen of California.

12.     For diversity purposes, a corporation is deemed to be a citizen of: (1) the state under whose laws it is organized; and (2) the state of its "principal place of business." 28 U.S.C. § 1332(c)(1); *see also Davis v. HSBC Bank Nevada, N.A.*, 557 F.3d 1026, 1028 (9th Cir. 2009). Kimberly-Clark Global Sales LLC is a corporation organized under the laws of Delaware. *See* Compl. ¶ 5; *see also* Declaration of Karen Senn ("Senn Decl.") ¶3. Kimberly-Clark Global Sales LLC has a principal place of business is Irving, Texas. Compl. ¶ 5; *see also* Senn Decl.) ¶3.

13.     The minimal-diversity requirement, therefore, is satisfied because Plaintiff is a citizen of California and Kimberly-Clark Global Sales LLC is a citizen of Delaware and Texas.

**B.     The Alleged Class Involves At Least 100 Class Members.**

14.     CAFA requires that "the number of members of all proposed plaintiff classes in the aggregate" be at least 100. 28 U.S.C. § 1332(d)(5)(B).

15.     Plaintiff's Complaint was filed as a state-wide class action, as defined in 28 U.S.C. § 1332(d)(1)(B), and alleges a putative class in excess of 100 class members. Compl. ¶ 76 (alleging that plaintiff estimates that the class "is composed of more than 100 persons").

### C.     The Alleged Amount in Controversy Exceeds $5,000,000

16.     CAFA requires that the "aggregate[]" "matter in controversy exceed[] the sum or value of $5,000,000, exclusive of interest and costs." 28 U.S.C. § 1332(d)(2) & (6). Removal is proper if it is demonstrated, "by a preponderance of evidence, that the aggregate amount in controversy exceeds" $5,000,000. *Rodriguez v. AT&T Mobility Servs. LLC*, 728 F.3d 975, 981 (9th Cir. 2013). The amount in controversy is determined by accepting Plaintiff's allegations as true. *See, e.g., Sanchez v. Monumental Life Ins. Co.*, 102 F.3d 398, 402 (9th Cir. 1996) ("[T]he amount in controversy is met by the express allegations of the plaintiff's complaint." (quotation omitted)); *Cain v. Hartford Life & Accident Ins. Co.*, 890 F. Supp. 2d 1246, 1249 (C.D. Cal. 2012) ("In measuring the amount in controversy, a court must assume that the allegations of the complaint are true and assume that a jury will return a verdict for the plaintiff on all claims made in the complaint.").

17.     Although Kimberly-Clark denies that Plaintiff is entitled to any of the relief sought in the Complaint, the relief that the Complaint seeks through restitution, injunctive relief, and attorneys' fees exceeds CAFA's $5,000,000 amount-in-controversy requirement.

### 1.     Restitution

18.     Plaintiff seeks to represent "[a]ll persons who between March 13, 2010 and the present, purchased, in California, any of the following products: Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths, Scott Naturals® Flushable Most Wipes, Huggies® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh flushable wipes." Compl. ¶ 74, and seeks restitution of "any and all monies acquired by Defendants from the Plaintiff, the general public, or those

similarly situated by means of [alleged misrepresentations]." *Id.* ¶ 99; *see also* ¶ 120.

19.    Since March 13, 2010, Kimberly-Clark Global Sales LLC's sales in California of one of the four brands of flushable wipes at issue alone exceeds $5 million. *See* Senn Decl. ¶ 4.

### 2.    Injunctive Relief

20.    Plaintiff also seeks injunctive relief. Costs of compliance with an injunction are relevant in ascertaining whether the amount in controversy requirement is satisfied. *See* 28 U.S.C. 1332(d) (excluding only interest and costs from the aggregated amount in controversy); *see also Guglielmino v. McKee Food Corp.*, 506 F.3d 696, 700 (9th Cir. 2007). Pursuant to the CLRA, Plaintiff individually and on behalf of the purported class seeks an injunction barring any practice set forth in the Complaint and ordering that Kimberly-Clark "correct, repair, replace or otherwise rectify" the alleged practices. Compl. ¶ 90.

21.    An injunction would impose additional costs on Kimberly-Clark Global Sales LLC to re-design and re-package flushable wipes throughout California and possibly nationwide given Kimberly-Clark Global Sales LLC's distribution model. *See* Senn Decl. ¶¶ 5-7.

22.    Additionally, if Kimberly-Clark Global Sales LLC is enjoined from selling flushable wipes as packaged in California, it would incur significant losses including the time during which it would have to design new labels for flushable wipes, print them, and package each product, as well as the loss of customer confidence—both at the retail and consumer level—that might result. Senn Decl. ¶ 8.

### 3.    Attorneys' Fees

23.    An award of attorneys' fees, if such fees are specifically authorized by statute, may be considered for purposes of calculating the amount in controversy. *See Kroske v. US Bank Corp.*, 432 F.3d 976, 980 (9th Cir. 2005). Here, if Plaintiff

1    and/or the putative class succeed on the CLRA claim, recovery of attorneys' fees

2    may be statutorily authorized.  *See* Cal. Civ. Code § 1780(e).

3        24.    Courts in the Ninth Circuit consider a reasonable and fair estimate of

4    attorneys' fees to be twenty-five percent of the total recovery.  *See, e.g., Powers v.*

5    *Eichen*, 229 F.3d 1249, 1256 (9th Cir. 2000); *Lim v. Helio, LLC*, No. CV 11-9183

6    PSG, 2012 WL 359304, at *3 (C.D. Cal. Feb. 2, 2012).

7        25.    As explained above, the estimated amount in controversy in the instant

8    case (for restitution, injunctive relief and attorneys' fees) exceeds $5 million.   This

9    amount satisfies CAFA's $5,000,000 amount-in-controversy requirement based on

10    the allegations of Plaintiff's Complaint.

**IV.    THE PROCEDURAL REQUIREMENTS FOR REMOVAL ARE**
       **SATISFIED**

13        26.    This Court is the proper venue for this action under 28 U.S.C.

14    § 1441(a), as the State Court Action is pending in the County of San Francisco,

15    California, and the United States District Court for the Northern District of

16    California is the "district and division embracing the place where such action is

17    pending." 28 U.S.C. § 1441(a).

18        27.    The Complaint was filed on March 13, 2014, and served along with a

19    summons on March 18, 2014.  Therefore, this Notice of Removal has been timely

20    filed within thirty days of receipt by Kimberly-Clark of a copy of the summons and

21    Complaint, pursuant to 28 U.S.C. §§ 1446(b) and 1453(b).

22        28.    Pursuant to 28 U.S.C. § 1446(a), a copy of the Summons and Complaint

23    served upon Kimberly-Clark are attached and these are the only process, pleadings,

24    and orders served upon Kimberly-Clark to date.

25        29.    Pursuant to 28 U.S.C. § 1446(d), Kimberly-Clark will promptly file a

26    removal notice with the Clerk of the Superior Court of the State of California for the

27    County of San Francisco and will serve written notice of same upon counsel of

28    record for Plaintiff.

1    31.    By filing this Notice of Removal, Kimberly-Clark does not waive, either

2  expressly or implicitly, its rights to assert any defense which it could have asserted in

3  the Superior Court of the State of California for the County of San Francisco.

4    WHEREFORE, Defendant Kimberly-Clark Global Sales LLC; Kimberly-Clark

5  Corporation; and Kimberly-Clark Worldwide, Inc. respectfully request that the Court

6  assume jurisdiction over this action.

8  Dated: *April 14*, 2014    Respectfully submitted,

    SIDLEY AUSTIN LLP

    By: _____
    Amy P. Lally

    Attorneys for Defendants
    Kimberly-Clark Global Sales LLC,
    Kimberly-Clark Corporation, and Kimberly-
    Clark Worldwide, Inc.

DEFENDANT KIMBERLY-CLARK'S NOTICE OF REMOVAL

# DECLARATION OF AMY P. LALLY

I, AMY P. LALLY, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and before the United States District Court for the Northern District of California.  I am a Partner in the law firm of Sidley Austin LLP and counsel for Defendants Kimberly-Clark Global Sales LLC, Kimberly-Clark Corporation, and Kimberly-Clark Worldwide, Inc.  The matters set forth below are within my personal knowledge, and if called upon as a witness I could and would testify competently as follows:

2.      Attached as Exhibit A is a true and correct copy of the Summons and Complaint in the action styled as *Davidson v. Kimberly Clark Corporation, et al.*, Case No. CGC-14-537962, that was filed in the Superior Court of the State of California, County of San Francisco.

I declare under penalty of perjury under the laws of the United States of America that the foregoing is true and correct.

Executed this *16th* day of *April*, 2014.

Amy P. Lally

DEFENDANT KIMBERLY-CLARK'S NOTICE OF REMOVAL

200608142v.2

# EXHIBIT A


CT Corporation

**Service of Process Transmittal**
03/18/2014
CT Log Number 524597666

**TO:**  Karon Faught
Kimberly-Clark Corporation
351 Phelps Drive
Irving, TX 75038-

**RE:**  **Process Served in Delaware**

**FOR:**  Kimberly-Clark Global Sales, LLC (Domestic State: DE)

**ENCLOSED ARE COPIES OF LEGAL PROCESS RECEIVED BY THE STATUTORY AGENT OF THE ABOVE COMPANY AS FOLLOWS:**

| | |
|---|---|
| **TITLE OF ACTION:** | Jennifer Davidson, etc., Pltf. vs. Kimberly-Clark Corporation, et al. including Kimberly-Clark Global Sales LLC, Dfts. *Name discrepancy noted.* |
| **DOCUMENT(S) SERVED:** | Attachment(s), Summons, Cover Sheet, Instructions, Complaint, Exhibit(s), Notice, ADR Packets |
| **COURT/AGENCY:** | San Francisco County - Superior Court - San Francisco, CA Case # CGC14537962 |
| **NATURE OF ACTION:** | Product Liability Litigation - Class Action - Defendants deceptively market wipes as flushable |
| **ON WHOM PROCESS WAS SERVED:** | The Corporation Trust Company, Wilmington, DE |
| **DATE AND HOUR OF SERVICE:** | By Process Server on 03/18/2014 at 09:45 |
| **JURISDICTION SERVED :** | Delaware |
| **APPEARANCE OR ANSWER DUE:** | Earliest Answer Date - Within 30 days after service (Document(s) may contain additional answer dates) |
| **ATTORNEY(S) / SENDER(S):** | Adam Gutride Gutride Safier LLP 835 Douglass St San Francisco, CA 94114 415-271-6469 |
| **ACTION ITEMS:** | CT has retained the current log, Retain Date: 03/18/2014, Expected Purge Date: 03/23/2014 Image SOP Email Notification, Kelli Morrow Kelli.morrow@kcc.com Email Notification, Karon Faught Karon.faught@kcc.com |
| **SIGNED:** | The Corporation Trust Company |
| **PER:** | Gretchen McDougal |
| **ADDRESS:** | 1209 Orange Street Wilmington, DE 19801 |
| **TELEPHONE:** | 302-658-7581 |

Page 1 of 1 / FP

Information displayed on this transmittal is for CT Corporation's record keeping purposes only and is provided to the recipient for quick reference. This information does not constitute a legal opinion as to the nature of action, the amount of damages, the answer date, or any information contained in the documents themselves. Recipient is responsible for interpreting said documents and for taking appropriate action. Signatures on certified mail receipts confirm receipt of package only, not contents.

# Work Order



**A & A LEGAL SERVICE**

123 10th Street
San Francisco, CA 94103-2604

GENERAL@AALEGALSERVICE.COM
FAX (855) 388-9240
Toll Free (855) 388-9243

1541 Bayshore Hwy.
Burlingame, CA 94010-1602

76551.86747
Number 3 of 3

(650) 697-9431

b4. LIANA SOLOMON

| | | | |
|---|---|---|---|
| **Received:** | 03/13/14 | **Type of Service:** Normal | **Special:** No |
| **Client:** | GUTRIDE SAFIER LLP | | **Client ID:** 7896390 |
| **Attention:** | +KRISTEN SIMPLICIO | | |
| **Address 1:** | 835 DOUGLASS STREET | **Fax:** 415-449-6469 | **Phone:** 415-336-6545 |
| **City, State Zip:** | SAN FRANCISCO, CA 94114 | **Attorney File No:** DAVIDSON V. KIMBERLY-CLARK |
| **Plaintiff** | JENNIFER DAVIDSON; ET AL | | |
| **Defendant** | KIMBERLY-CLARK CORPORATION; ET AL | | |
| **Representing:** | Plaintiff | **Case Number:** CGC-14-537962 | |
| **Court:** | SAN FRANCISCO COUNTY SUPERIOR COURT, UNLIMITED JURISDICTION, Department: 610 |
| **Hearing Date:** | 08/13/14    10:30AM  **Status:** 03/22/14  **Last Day to Serve:** 07/23/14  **Last Day to Sub:** |

**Serve Docs To:** KIMBERLY-CLARK GLOBAL SALES LLC C/O THE CORPORATION TRUST COMPANY(

**Description:** Race:___, Sex:___, Age:___, Hair:___, Eyes:___, Height:___, Weight:___

**Addresses:** Business, 03/13/14
1209 ORANGE STREET
WILMINGTON, DE 19801

**Documents:** SUMMONS AND COMPLAINT; CIVIL CASE COVER SHEET; ADR INFORMATION PACKAGE; BLANK STIPULATION FOR ADR; BLANK CASE MANAGEMENT STATEMENT; EARLY SETTLEMENT PROGRAM PAMPHLET

| Loc | Date | Time | Server | Code | Comments |
|---|---|---|---|---|---|
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |
| | | | | | |

**Manner:** ___[E]

[B] served via fed ex overnight  [F] filing  [I] E-mail  [L] Legal Delivery
[D] Service via facsimile  [G] Registered Mail  [J]  [N] Posting, Mailing, & Leaving
[H] served via TBS overnight  [K] e-mail and fed ex  [P] Personal Service

**Date Served:** ___ / ___ / ___   **Time Served:(Military)** _____   **Served By:** _____

**Served At:** ____ [H]ome, [B]usiness, or [U]sual Place of Mailing ___ [X] For Changes Above in Address Boxes.

**(3.b.)Person Served** _____   **Witness Fees: $** _____

Race:____, Sex:____, Age:____, Hair:____, Eyes:____, Height:____, Weight:____

**Relationship** _____ **(3.b.)By Leaving Copies With** _____

**Mailed From** _____ **Mailed Date** _____ **Time** _____

76551.86747

**SUM-100**

# SUMMONS
## (CITACION JUDICIAL)

**NOTICE TO DEFENDANT:**
*(AVISO AL DEMANDADO):*

KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK
WORLDWIDE, INC.; KIMBERLY-CLARK GLOBAL SALES LLC

**YOU ARE BEING SUED BY PLAINTIFF:**
*(LO ESTÁ DEMANDANDO EL DEMANDANTE):*

Jennifer Davidson

FOR COURT USE ONLY
(SOLO PARA USO DE LA CORTE)

**NOTICE!** You have been sued. The court may decide against you without your being heard unless you respond within 30 days. Read the information below.

You have 30 CALENDAR DAYS after this summons and legal papers are served on you to file a written response at this court and have a copy served on the plaintiff. A letter or phone call will not protect you. Your written response must be in proper legal form if you want the court to hear your case. There may be a court form that you can use for your response. You can find these court forms and more information at the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), your county law library, or the courthouse nearest you. If you cannot pay the filing fee, ask the court clerk for a fee waiver form. If you do not file your response on time, you may lose the case by default, and your wages, money, and property may be taken without further warning from the court.

There are other legal requirements. You may want to call an attorney right away. If you do not know an attorney, you may want to call an attorney referral service. If you cannot afford an attorney, you may be eligible for free legal services from a nonprofit legal services program. You can locate these nonprofit groups at the California Legal Services Web site (www.lawhelpcalifornia.org), the California Courts Online Self-Help Center (www.courtinfo.ca.gov/selfhelp), or by contacting your local court or county bar association. NOTE: The court has a statutory lien for waived fees and costs on any settlement or arbitration award of $10,000 or more in a civil case. The court's lien must be paid before the court will dismiss the case.

*¡AVISO! Lo han demandado. Si no responde dentro de 30 días, la corte puede decidir en su contra sin escuchar su versión. Lea la información a continuación.*

*Tiene 30 DÍAS DE CALENDARIO después de que le entreguen esta citación y papeles legales para presentar una respuesta por escrito en esta corte y hacer que se entregue una copia al demandante. Una carta o una llamada telefónica no lo protegen. Su respuesta por escrito tiene que estar en formato legal correcto si desea que procesen su caso en la corte. Es posible que haya un formulario que usted pueda usar para su respuesta. Puede encontrar estos formularios de la corte y más información en el Centro de Ayuda de las Cortes de California (www.sucorte.ca.gov), en la biblioteca de leyes de su condado o en la corte que le quede más cerca. Si no puede pagar la cuota de presentación, pida al secretario de la corte que le dé un formulario de exención de pago de cuotas. Si no presenta su respuesta a tiempo, puede perder el caso por incumplimiento y la corte le podrá quitar su sueldo, dinero y bienes sin más advertencia.*

*Hay otros requisitos legales. Es recomendable que llame a un abogado inmediatamente. Si no conoce a un abogado, puede llamar a un servicio de remisión a abogados. Si no puede pagar a un abogado, es posible que cumpla con los requisitos para obtener servicios legales gratuitos de un programa de servicios legales sin fines de lucro. Puede encontrar estos grupos sin fines de lucro en el sitio web de California Legal Services, (www.lawhelpcalifornia.org), en el Centro de Ayuda de las Cortes de California, (www.sucorte.ca.gov) o poniéndose en contacto con la corte o el colegio de abogados locales. AVISO: Por ley, la corte tiene derecho a reclamar las cuotas y los costos exentos por imponer un gravamen sobre cualquier recuperación de $10,000 ó más de valor recibida mediante un acuerdo o una concesión de arbitraje en un caso de derecho civil. Tiene que pagar el gravamen de la corte antes de que la corte pueda desechar el caso.*

The name and address of the court is:
*(El nombre y dirección de la corte es):* San Francisco Superior Court

400 McAllister Street
San Francisco, CA 94102

CASE NUMBER:
*(Número del Caso):*

C G C - 1 4 - 5 3 7 9 6 2

The name, address, and telephone number of plaintiff's attorney, or plaintiff without an attorney, is:
*(El nombre, la dirección y el número de teléfono del abogado del demandante, o del demandante que no tiene abogado, es):*
Adam Gutride, Kristen Simplicio Gutride Safier LLP, 835 Douglass St, SF, CA 94114 (415) 639-9090

DATE: 3/13/2014    **CLERK OF THE COURT**    Clerk, by _____ Deborah Stepp , Deputy
*(Fecha)*    *(Secretario)*    *(Adjunto)*

(For proof of service of this summons, use Proof of Service of Summons (form POS-010).)
*(Para prueba de entrega de esta citation use el formulario Proof of Service of Summons, (POS-010)).*

**NOTICE TO THE PERSON SERVED:** You are served

[SEAL]

1. ☐ as an individual defendant.
2. ☐ as the person sued under the fictitious name of (specify): Kimberly-Clark Corporation; Kimberly-Clark Worldwide Inc.; Kimberly-Clark Global Sales LLC
3. ☑ on behalf of (specify):

under: ☑ CCP 416.10 (corporation)    ☐ CCP 416.60 (minor)
☐ CCP 416.20 (defunct corporation)    ☐ CCP 416.70 (conservatee)
☐ CCP 416.40 (association or partnership)    ☐ CCP 416.90 (authorized person)
☐ other (specify):
4. ☐ by personal delivery on (date):

Page 1 of 1

Form Adopted for Mandatory Use
Judicial Council of California
SUM-100 [Rev. July 1, 2009]

**SUMMONS**

Code of Civil Procedure §§ 412.20, 465
www.courtinfo.ca.gov

FILE VIA ~~ENDORSED~~
FILED
SAN FRANCISCO COUNTY
SUPERIOR COURT

**CM-010**

| ATTORNEY OR PARTY WITHOUT ATTORNEY (Name, State Bar number, and address): | FOR COURT USE ONLY |
|---|---|
| Adam Gutride, Esq. (SBN 181446) Seth Safier, Esq. (SBN 197427)<br>Kristen Simplicio, Esq (SBN 263291)<br>Gutride Safier LLP<br>835 Douglass Street, San Francisco, CA 94114<br>TELEPHONE NO.: (415) 639-9090   FAX NO.: (415) 449-6469<br>ATTORNEY FOR (Name): Plaintiff Jennifer Davidson | 2014 MAR 13 AM 11: 43<br><br>CLERK OF THE COURT<br>BY: _____<br>DEPUTY CLERK |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF San Francisco |
|---|
| STREET ADDRESS: 400 McAllister St. |
| MAILING ADDRESS: 400 McAllister St. |
| CITY AND ZIP CODE: San Francisco, CA 94102 |
| BRANCH NAME: San Francisco Superior Court |

| CASE NAME:<br>Davidson v. Kimberly-Clark Corporation, Et Al | |
|---|---|

| CIVIL CASE COVER SHEET | Complex Case Designation | CASE NUMBER: |
|---|---|---|
| [✓] Unlimited<br>(Amount<br>demanded<br>exceeds $25,000) | [ ] Limited<br>(Amount<br>demanded is<br>$25,000 or less) | [ ] Counter  [ ] Joinder<br>Filed with first appearance by defendant<br>(Cal. Rules of Court, rule 3.402) | CGC - 14 - 537962<br>JUDGE:<br>DEPT: |

*Items 1–6 below must be completed (see instructions on page 2).*

1. Check one box below for the case type that best describes this case:

| Auto Tort | Contract | Provisionally Complex Civil Litigation |
|---|---|---|
| [ ] Auto (22) | [ ] Breach of contract/warranty (06) | (Cal. Rules of Court, rules 3.400–3.403) |
| [ ] Uninsured motorist (46) | [ ] Rule 3.740 collections (09) | [ ] Antitrust/Trade regulation (03) |
| **Other PI/PD/WD (Personal Injury/Property** | [ ] Other collections (09) | [ ] Construction defect (10) |
| **Damage/Wrongful Death) Tort** | [ ] Insurance coverage (18) | [ ] Mass tort (40) |
| [ ] Asbestos (04) | [ ] Other contract (37) | [ ] Securities litigation (28) |
| [ ] Product liability (24) | **Real Property** | [ ] Environmental/Toxic tort (30) |
| [ ] Medical malpractice (45) | [ ] Eminent domain/Inverse | [ ] Insurance coverage claims arising from the |
| [ ] Other PI/PD/WD (23) | condemnation (14) | above listed provisionally complex case |
| **Non-PI/PD/WD (Other) Tort** | [ ] Wrongful eviction (33) | types (41) |
| [✓] Business tort/unfair business practice (07) | [ ] Other real property (26) | **Enforcement of Judgment** |
| [ ] Civil rights (08) | **Unlawful Detainer** | [ ] Enforcement of judgment (20) |
| [ ] Defamation (13) | [ ] Commercial (31) | **Miscellaneous Civil Complaint** |
| [ ] Fraud (16) | [ ] Residential (32) | [ ] RICO (27) |
| [ ] Intellectual property (19) | [ ] Drugs (38) | [ ] Other complaint (not specified above) (42) |
| [ ] Professional negligence (25) | **Judicial Review** | **Miscellaneous Civil Petition** |
| [ ] Other non-PI/PD/WD tort (35) | [ ] Asset forfeiture (05) | [ ] Partnership and corporate governance (21) |
| **Employment** | [ ] Petition re: arbitration award (11) | [ ] Other petition (not specified above) (43) |
| [ ] Wrongful termination (36) | [ ] Writ of mandate (02) | |
| [ ] Other employment (15) | [ ] Other judicial review (39) | |

2. This case [ ] is  [✓] is not  complex under rule 3.400 of the California Rules of Court. If the case is complex, mark the factors requiring exceptional judicial management:
   a. [ ] Large number of separately represented parties   d. [ ] Large number of witnesses
   b. [ ] Extensive motion practice raising difficult or novel   e. [ ] Coordination with related actions pending in one or more courts
       issues that will be time-consuming to resolve       in other counties, states, or countries, or in a federal court
   c. [ ] Substantial amount of documentary evidence   f. [ ] Substantial postjudgment judicial supervision

3. Remedies sought (check all that apply): a.[✓] monetary  b.[✓] nonmonetary; declaratory or injunctive relief  c.[✓] punitive
4. Number of causes of action (specify): four (4)
5. This case [✓] is  [ ] is not  a class action suit.
6. If there are any known related cases, file and serve a notice of related case. (You may use form CM-015.)

Date: March 13, 2014
Kristen G. Simplicio
_____   ▶ _____
(TYPE OR PRINT NAME)   (SIGNATURE OF PARTY OR ATTORNEY FOR PARTY)

**NOTICE**
- Plaintiff must file this cover sheet with the first paper filed in the action or proceeding (except small claims cases or cases filed under the Probate Code, Family Code, or Welfare and Institutions Code). (Cal. Rules of Court, rule 3.220.) Failure to file may result in sanctions.
- File this cover sheet in addition to any cover sheet required by local court rule.
- If this case is complex under rule 3.400 et seq. of the California Rules of Court, you must serve a copy of this cover sheet on all other parties to the action or proceeding.
- Unless this is a collections case under rule 3.740 or a complex case, this cover sheet will be used for statistical purposes only. Page 1 of 2

| Form Adopted for Mandatory Use<br>Judicial Council of California<br>CM-010 [Rev. July 1, 2007] | **CIVIL CASE COVER SHEET** | Cal. Rules of Court, rules 2.30, 3.220, 3.400–3.403, 3.740;<br>Cal. Standards of Judicial Administration, std. 3.10<br>www.courtinfo.ca.gov |

ENDORSED
FILED
SUPERIOR COURT
COUNTY OF SAN FRANCISCO

2014 MAR 13 AM 11: 43

BY: _____
CLERK OF THE COURT

DEPUTY CLERK

1  **GUTRIDE SAFIER LLP**
   ADAM J. GUTRIDE (State Bar No. 181446)
2  SETH A. SAFIER (State Bar No. 197427)
   KRISTEN G. SIMPLICIO (State Bar No. 263291)
3  835 Douglass Street
   San Francisco, California 94114
4  Telephone: (415) 271-6469
   Facsimile:  (415) 449-6469
5

6  Attorneys for Plaintiff

7            SUPERIOR COURT OF THE STATE OF CALIFORNIA

8                    COUNTY OF SAN FRANCISCO

9                                              C G C - 1 4 - 5 3 7 9 6 2

10 JENNIFER DAVIDSON, an individual, on behalf of      CASE NO.
   herself, the general public and those similarly situated
11                                              UNLIMITED CIVIL CASE
      Plaintiff,
12                                              CLASS ACTION COMPLAINT
             v.                                 FOR VIOLATION OF THE
13                                              CALIFORNIA CONSUMERS
   KIMBERLY-CLARK CORPORATION; KIMBERLY-       LEGAL REMEDIES ACT;
14 CLARK WORLDWIDE, INC.; KIMBERLY-CLARK       FALSE ADVERTISING;
   GLOBAL SALES LLC; AND DOES 1 THROUGH 50     FRAUD, DECEIT, AND/OR
15                                              MISREPRESENTATION; AND
      Defendants                                UNFAIR BUSINESS
16                                              PRACTICES

17                                              JURY TRIAL DEMANDED

18

19

20

21

22

23

24

25

26                                              FILE VIA FAX

27

28

                              -1-

1    Jennifer Davidson, by and through her counsel, brings this Class Action Complaint

2    against Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and

3    Kimberly-Clark Global Sales, LLC on behalf of herself and those similarly situated, for violations

4    of the Consumer Legal Remedies Act, false advertising, unfair trade practices, and fraud, deceit

5    and/or misrepresentation. The following allegations are based upon information and belief,

6    including the investigation of Plaintiff's counsel, unless stated otherwise.

7                                    **INTRODUCTION**

8    1.    Defendants deceptively market several lines of personal hygiene moistened wipes

9    ("wipes") as "flushable." They charge a premium for these wipes, as compared to both toilet

10   paper and to wipes that are not marketed as "flushable." In fact, the allegedly "flushable" wipes

11   are not suitable for disposal by flushing down a toilet as they routinely damage or clog pipes,

12   septic systems, and sewage pumps; they do not disperse, disintegrate, or biodegrade like toilet

13   paper; and they are not regarded by municipal sewage systems as appropriate to flush down a

14   toilet. Defendants do not disclose any of these facts. Thus, Defendants mislead consumers into

15   believing that the products are suitable for disposal by flushing down a toilet and into paying a

16   premium price for the products that they would not otherwise pay. Defendants' actions also

17   cause significant harm to municipal wastewater treatment systems. Defendants obtained

18   substantial profits from these deceptive sales. This action seeks to require Defendants to pay

19   restitution and damages to purchasers of the wipes, to remove the word "flushable" from their

20   packaging and marketing, and to affirmatively inform purchasers that the wipes are not suitable

21   for flushing down a toilet.

22                                       **PARTIES**

23   2.    Jennifer Davidson ("Plaintiff") is, and at all times alleged in this Class Action

24   Complaint was, an individual and a resident of San Francisco, California.

25   3.    Defendant Kimberly-Clark Corporation is a corporation incorporated under the

26   laws of the Delaware, having principal places of business in Neenah, Wisconsin.

27   4.    Defendant Kimberly-Clark Worldwide, Inc. is a corporation incorporated under

28   the laws of the Delaware, having principal places of business in Irving, Texas and Neenah,

-1-

Class Action Complaint

Wisconsin.

5.    Defendant Kimberly-Clark Global Sales, LLC is a corporation incorporated under the laws of the Delaware, having principal places of business in Irving, Texas.

6.    The true names and capacities of Defendants sued as Does 1 through 50 inclusive are unknown to Plaintiff, who therefore sues said Defendants by such fictitious names pursuant to section 474 of the California Code of Civil Procedure.  Plaintiff will seek leave of Court to amend this Class Action Complaint when said true names and capacities have been ascertained.

7.    The Parties identified in paragraphs 3-5 of this Class Action Complaint are collectively referred to hereafter as "Defendants" or "Kimberly-Clark."

8.    At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

9.    At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

10.    At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

11.    At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

### JURISDICTION AND VENUE

12.    This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.*  Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

13.    The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

14.    Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in San Francisco County.

15.    In accordance with California Civil Code Section 1780(d), Plaintiff concurrently files herewith a declaration establishing that, in 2013, she purchased at least one Kimberly-Clark product in San Francisco.  (Plaintiff's declaration is attached hereto as Exhibit A.)

16.    Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

### (1) Defendants Market and Sell "Flushable" Wipes

17.    Defendants are manufacturers and marketers of consumer product goods, particularly paper products, including toilet paper, tissues, paper towels, feminine hygiene products, diapers, and baby wipes.  Their products are widely available for purchase in supermarkets, drug stores, and other retailers.   Among their biggest brands are Kleenex, Scott, Huggies, and Kotex. Other brands include Viva, Thick & Thirsty, Poise, Depends, and Cottonelle.

18.    Among the products manufactured by Defendants are a variety of pre-moistened cloths, known as wet wipes, wipes, or moist towelettes, that can be used for personal hygiene, child care needs, pet care, or cleaning.   This case focuses on four such pre-moistened cloths manufactured and marketed by Kimberly-Clark. These products are:

    a.   Kleenex® Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths ("Cottonelle Wipes")

    b.   Scott Naturals® Flushable Moist Wipes ("Scott Wipes")

    c.   Huggies ® Pull-Ups® Flushable Moist Wipes ("Huggies Wipes")

    d.   U by Kotex® Refresh flushable wipes ("Kotex Wipes")

In this complaint, these products will be collectively referred to as the "Flushable Wipes."

19.    Through the use of intentional misrepresentations and selective omissions,

-3-

1  Defendants deceptively mislead consumers to believe that these products are in fact flushable.

2  None of the products are safe and appropriate for flushing down a toilet, as the "Flushable Wipes"

3  do not disintigrate or disperse quickly like toilet paper. Rather, even under optimal, lab-simulated

4  conditions, the Flushable Wipes take hours to begin to break down.

5      20.     Specifically, as a result of the slow dispersement process, the Flushable Wipes,

6  when subjected to ordinary, consumer use, routinely (1) clog pipes; (2) do not properly break

7  down properly in septic tanks and cause damage septic pumps; and (3) cause blockages and

8  damage to municipal sewage lines and pumps, often due to proclivity of the Flushable Wipes to

9  tangle with each other, tree branches, rocks, and other non-flushable items, and form large masses

10  or ropes.

11  **(1)(a) All of Defendants' Flushable Wipes Are Deceptively Advertised As "Flushable"**

12      21.     All of the Flushable Wipes packages state that the product is "flushable" but the

13  Flushable Wipes are not, in fact, suitable for flushing down a toilet.

14      22.     As defined by Webster's Dictionary, "Flushable" means "suitable for disposal by

15  flushing down a toilet."

16      23.     Many objects and materials theoretically will pass from the toilet to the pipes after

17  one flushes, such as food scraps, jewelry, small toys, or cotton swabs, but that does not make such

18  objects or materials "flushable." Rather, the word "flushable" means in reasonable usage not just

19  that the object or material will pass from the toilet to the pipes, but that the object or material is

20  *appropriate or suitable* to flush down a toilet for purposes of passing into the sewer or septic

21  system. For example, the Merriam-Webster dictionary gives the following as the sole definition

22  of "flushable: *suitable* for disposal by flushing down a toilet." *See* http://www.merriam-

23  webster.com/dictionary/flushable, last visited Feb. 27, 2014 (emphasis added).

24      24.     The Water Environment Federation (WEF), a nonprofit association of water

25  quality professionals, has explained how Defendants are misusing the word "flushable":

26          The industry reference for dispersability is two-ply toilet paper ... [which] starts
            to break apart when the toilet is flushed and is indistinguishable in the wastewater
27          system in a matter of seconds...Anything labeled as flushable should start to
            break apart during the flush and completely disperse within 5 minutes... Our
28          mantra is, 'It's not flushable if it's not dispersible' . . .

-4-

1  *See* http://news.wef.org/stop-dont-flush-that/ (last accessed February 26, 2014) (internal

2  quotations omitted).  WEF further reports that consumers flush nondispersible wipes because they

3  are "mislabeled" as "flushable," when they do not disperse like toilet paper.  *Id.*

4      25.    Municipal water facilities and water protection organizations, and related

5  associations are in agreement with WEF that the only product other than human excrement

6  suitable for disposal down a toilet is toilet paper.  For example, the California Association of

7  Sanitation Agencies has stated:

8      Many personal hygiene wipes and cleaning products are marketed as being
       "flushable." But despite the confusing and misleading labels you should never
9      flush "flushable" or "disposable" products. No matter what a label says, the only
       items you should flush are human waste and toilet paper. Just because something
10     disappears down your toilet doesn't mean it won't cause a problem in your sewer
       pipe—or further down the line at wastewater treatment facilities. Items labeled as
11     "flushable" or "disposable" (even "bio-degradable" ones) can get caught on roots
       in sewer pipes and contribute to blockages, back-ups, and overflows.
12
13     Dispose of them in the trash, not the toilet!

14  *See* http://www.casaweb.org/flushable-wipes (last accessed February 24, 2014).

15     26.    San Francisco Public Utilities Commission officials have stated that with the

16  exception of toilet paper and human waste, "Everything else should go in the trash" and should

17  not be flushed. *See* http://www.sfexaminer.com/sanfrancisco/flushable-wipes-cause-problematic-

18  backups-at-local-sewage-plants/Content?oid=2514283 (last accessed February 24, 2014).

19     27.    The East Bay Municipal Utility District states:

20     **Non-Flushable Wipes and Products**

21     *No matter if the label says "disposable" or "flushable," cleaning and personal*
       *hygiene products should __never__ be flushed.*
22
23     "Disposable" or "flushable" wipes and other products don't breakdown in the
       sewer. Instead, they get tangled and clumped in hair and debris creating massive
       obstructions in the sewers. **Remember... your toilet is not a trash can!**
24
25  *See* https://www.ebmud.com/water-and-wastewater/pollution-prevention/residential-pollution-

26  prevention (last accessed February 26, 2014).

27     28.    The City of Carlsbad Wastewater Superintendent Don Wasko has stated:

28     They may be called flushable, but they can do severe damage to our sewer system
       . . . These cloth wipes don't break down in the sewer system the same way that

-5-

toilet paper does.

*See* http://news.carlsbadca.gov/news/flushable-wipes-and-other-things-you-should-not-flush (last accessed February 24, 2014).

29.     Wastewater treatment utilities outside of California have issued similar statemetns. For example, in Contra Costa, Colorado, the Central Contra Costa Sanitary District has said that the wipes are not flushable, and rather, "The reason they're a problem is that they don't break down as quickly as toilet paper and that's really the standard for flush-ability, as far as we're concerned." *See* http://sanfrancisco.cbslocal.com/2013/07/17/cleaning-wipes-used-in-homes-and-offices-clogging-bay-area-sewer-pipes/ (last accessed February 24, 2014).

30.     Similarly, Pima County, Arizona, issued a release that stated that, "Unfortunately, disposable wipes are rarely, if ever, biodegradable in the sanitary sewer system. They just aren't in there long enough to break down." *See* http://www.insidetucsonbusiness.com/blogs/save-yourselves-stop-flushing-flushable-wipes/article_e4db48de-312f-11e3-843e-001a4bcf887a.html (last accessed February 24, 2014).

31.     Despite the fact that wastewater treatment professionals and municipalities are in broad agreement that Defendants' Flushable Wipes are not suitable for flushing down a toilet because it does not disperse like toilet paper and causes damage to pipes, septic tanks, and sewage systems, Defendants market and advertise the Flushable Wipes in a way that is inconsistent with this accepted definition of "flushable."

-6-

Class Action Complaint

1       32.     For example, on the front of the Cottonelle Wipes package, Defendants advertise

2   the product as "FLUSHABLE MOIST WIPES" or as "flushable cleansing cloths."





22   One of the packages falsely represents that the wipes are "SEWER AND SEPTIC SAFE.*"  No

23   disclaimer appears to be associated with the asterisk.  On the back of the package, Defendants

24   falsely represent that "Cottonelle Fresh Care Flushable Cleansing Cloths break up after flushing."

25   On the backs of some packages of the Cottonelle Wipes, Defendants further state, "For best

26   results, flush only one or two cloths at a time," but this warning does not appear on all packages,

27   such as the smaller, travel size package of wipes.  Nowhere on the package do Defendants

28   disclose that the wipes are not suitable for disposal by flushing down a toilet, and rather, are not

1  regarded as flushable by municipal sewage systems as the Flushable Wipes routinely damage or

2  clog pipes, septic systems, and sewage pumps and do not disperse, distingrate, or biodgrade like

3  toilet paper.

4       33.    On the website for the Cottonelle Wipes, Defendants falsely inform consumers

5  that the "flushable wipes use a patented dispersible technology, which means that when used as

6  directed they break up after flushing and clear properly maintained toilets, drainlines, sewers,

7  pumps, and septic and municipal treatment systems." *See*

8  https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes#faqs (last

9  accessed February 6, 2014). The website goes on to claim that the Cottonelle Wipes are

10  "Flushable", "Break up after flushing", and are "Sewer- and septic-safe." *Id.* Nowhere on the

11  Cottonelle Wipes website do Defendants disclose that the wipes are not suitable for disposal by

12  flushing down a toilet, and rather, are not regarded as flushable by municipal sewage systems as

13  the Flushable Wipes routinely damage or clog pipes, septic systems, and sewage pumps and do

14  not disperse, distingrate, or biodgrade like toilet paper.

15       34.    On the front of the Scott Wipes package, Defendants advertise the product as

16  "Flushable Cleansing Cloths" and falsely represent that the wipe "breaks up after flushing."



27  On the back of the package, Defendants further mislead consumers by informing them that "Scott

28  Naturals* Flushable Cleansing Cloths break up after flushing and are sewer and septic system

1   safe.  For best results, flush only one or two cleansing cloths at a time."  No disclaimer appears to

2   be associated with the asterisk.  The back of the package also falsely informs the consumer that

3   the "flushable" cloth is "Septic Safe" and "Breaks up after flushing."  Nowhere on the package do

4   Defendants disclose that the wipes are not suitable for disposal by flushing down a toilet, but

5   rather, are not regarded as flushable by municipal sewage systems as they routinely damage or

6   clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like

7   toilet paper.

8        35.        On the front of the Huggies Wipes package, Defendants misleadingly describe the

9   product as "flushable moist wipes."



20   On the back, Defendants falsely represent that the wipes are  "Septic Safe" and "Breaks up after

21   flushing," and only advise "For best results, flush only one or two wipes at a time." On the

22   website for the Huggies Wipes, Defendants claim the wipes are "sewer and septic safe and break

23   up quickly after flushing."  Nowhere on the package or website do Defendants disclose that the

24   wipes are not suitable for disposal by flushing down a toilet, and rather, are not regarded as

25   flushable by municipal sewage systems; routinely damage or clog pipes, septic systems, and

26   sewage pumps; and do not disperse, distingrate, or biodgrade like toilet paper.

27        36.        On the front of the Kotex Wipes package, Defendants represent that the product is

28   "flushable."

1
2
3
4
5
6
7
8
9
10
11



12  Defendants provide little additional information on the back, only reiterating that the product is

13  "Flushable!" Nowhere on the package do Defendants disclose that the wipes are not suitable for

14  disposal by flushing down a toilet, and rather, are not regarded as flushable by municipal sewage

15  systems; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse,

16  distingrate, or biodgrade like toilet paper.

17      37.    In marketing products to be used as part of a bathroom routine (Cottonelle Wipes

18  and Scott Wipes), as part of feminine hygenie (Kotex Wipes), and as part of potty training

19  (Huggies Wipes), Defendants know that consumers will be more likely to purchase the product in

20  addition to, or instead of, toilet paper if they believed the product could be flushed down the

21  toilet. Thus, for all the Flushable Wipes, Defendants intend for consumers to rely on the fact that

22  the representation that the product is "Flushable."   Defendants further intend for consumers to

23  rely on the omissions that the Flushable Wipes are not suitable for disposal by flushing down a

24  toilet, and that the wipes are not regarded as flushable by municipal sewage systems; routinely

25  damages or clogs pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or

26  biodgrade like toilet paper.

27      38.    To induce consumers into relying on the false representation that the wipes are

28  "flushable," Defendants' ad campaigns routinely inform consumers that the Flushable Wipes are

-10-

Class Action Complaint

1  a useful part of good bathroom habit.  For example, Defendants have run an advertising campaign

2  entitled "Let's Talk About Your Bum," consisting of a webpage and various commercials.  The

3  campaign tells consumers that "bums deserve the utlimate in fresh and clean," and the

4  commercials encourage consumers to use the Flushable Wipes in the bathroom.  Similarly,

5  Defendants ran another commercial that featured a woman holding up both toilet paper and

6  Cottenelle Wipes, while her family debated whether the routine of using both in the bathroom

7  should be called "Southern hospitality," the "clean getaway" or the "freshy fresh."  The result is

8  that consumers believe that the wipes are flushable like toilet paper, when in fact, they are not

9  suitable for flushing down a toilet.

10         39.     Defendants' marketing campaign has been extremely successful.  In 2007,

11  Defendants reported to investors that sales for Defendants' Cottonelle and Scott flushable wipes

12  "continued to grow at a strong double-digit rate." *See* http://www.cms.kimberly-

13  clark.com/umbracoimages/UmbracoFileMedia/2007%20Annual%20Report_umbracoFile.pdf

14  (last accessed February 24, 2014).  And sales of consumer wipes have increased nearly 5 percent

15  a year since they were introduced in 2007, and that rate is expected to grow. *See*

16  http://www.contracostatimes.com/news/ci_24156213/popular-bathroom-wipes-blamed-sewer-

17  clogs (last accessed February 24, 2014).  In 2012, the "flushable wipes" market accounted for

18  14% of the $4 billion a year pre-moistened wipes market, and it is predicted that the market will

19  grow six percent a year for the next few years. *See*

20  http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-

21  sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last

22  accessed February 24, 2014).

23         40.     As a result of Defendants deceptive advertising, consumers believe that because

24  the Flushable Wipes disappear when flushed down the toilet, they are "flushable," when in fact

25  the Flushable Wipes do not disperse like toilet paper, and by flushing the Flushable Wipes,

26  consumers risk damaging pipes, septic tanks, and sewage systems.

27         41.     Because customers believe the wipes are suitable for flushing down a toilet and

28  purchase them for that convenience, Defendants are able to charge a premium for the Flushable

1    Wipes.  For example, a 42-count package of Cottenelle Wipes costs $4.99 at a Target in Albany,

2    California, whereas a 40-count package of Wet Ones, a popular brand of non-flushable wipes,

3    costs $2.29.  A 51-count package of Scott Wipes retails for $6.01 on Amazon.com, also

4    considerably more than the Wet Ones, which sell for $2.28 on that website.

5            42.     Similarly, a 24 count package of Kotex Wipes retails for $4.28 on Amazon.com,

6    whereas a 40 count package of Always® Clean Feminine Wipes, a non-flushable wipe, retails on

7    Amazon.com for $3.27.  And the Kotex Wipes are significantly more expensive than the non-

8    flushable Wet Ones.

9            43.     A consumer can buy 420 Huggies Wipes for $22.49 on Amazon.com.  In contrast,

10   a 448 Huggies Soft Skin Baby Wipes, a non-flushable product manufactured by Defendants, sells

11   for $11.97, half the cost of the "flushable" Huggies Wipes.  Other non-flushable baby wipes are

12   similarly much lower priced.  For example, a 448 count box of Pampers® Sensitive Wipes sells

13   for $10.97 on Amazon.com.  A 350 count package of the non-flushable Seventh Generation®

14   "Original Soft and Gentle Free & Clear Baby Wipes" sells for $12.99 on Amazon.com.

15           44.     If consumers knew that the Flushable Wipes were not suitable for flushing down a

16   toilet, they would not pay a premium, but rather, would opt to purchase the cheaper, non-

17   flushable items.

18   **(1)(b) All of Defendants' Wipes Are Manufactured And Packaged the Same Way**

19           45.     The Flushable Wipes are all manufactured using the same proprietary paper blend,

20   for which Defendants own the patent.  To manufacture the paper, Defendants use an "air-laid"

21   process, which creates strong knots of fibers that will not break down easily when submersed in

22   water.   Defendants tout the benefits of their paper, claiming that their patented dispersible

23   technology allows them to be strong in the package and durable for wiping, but to break up after

24   flushing and to clear properly maintained toilets, drain-lines, sewers, pumps, and septic and

25   municipal treatment systems. *See* http://www.kimberly-

26   clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last accessed February 24, 2014.)  In reality, the

27   paper is not suitable for flushing down a toilet, since it does not break up after flushing, and

28   routinely clogs pipes and pumps.

46.     A consumer who purchases the Flushable Wipes will find, upon opening the package, sheets of moist paper, dampened by a coating of wet lotion.  Unlike toilet paper, which is a dry paper product designed to fall apart in water, all of the Flushable Wipes are sold as pre-moistened products, and thus, the paper used to make them is designed to withstand months of soaking in a wet environment.  Because weeks, months, or longer will pass between the time the Flushable Wipe is manufactured and the time at which it is ultimately used by a consumer, the paper used to manufacture the wipes must be strong enough to sit in a still, wet environment for extremely long periods of time.  Thus in creating the paper used to manufacture their Flushable Wipes, Defendants must first consider whether the paper is strong enough to withstand months of soaking in wet environment, suggesting that the wipes cannot possibly efficiently disperse when placed in more water.

### (1)(c) All Defendants' Wipes Are Subject To The Same Flawed Test

47.     For consumers looking for more information on whether their products are truly flushable, Defendants have created a Frequently Asked Questions page on their website.  There, they deceptively inform consumers all the Flushable Wipes "are labeled as flushable meet or exceed the current industry guidelines for assessing the flushability of non-woven products." *See* http://www.kimberly-clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last accessed February 6, 2014).

48.     The "industry guidelines" that Defendants claim their Flushable Wipes satisfy are set by INDA, a lobbying association for manufacturers of flushable wipes, like Defendants.  INDA fights aggressively against governmental efforts to regulate the sale of flushable wipes or use of the word "flushable".   The non-mandatory INDA guidelines encourage manufacturers of flushable wipes to conduct a series of seven tests before labelling their products as "flushable."  Closer look at those tests reveals flaws in their design and demonstrates that merely passing these self-serving guidelines does not mean the wipes are flushable.

49.     For example, Defendants note that their product passes test "FG502" known as the "Slosh Box Disintegration Test."  According to Defendants' website, the test "[a]ssesses the potential for a product to disintegrate (or break up) when it is subjected to mechanical agitation in

water." *See* http://www.kimberly-clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last accessed February 24, 2014).  To conduct the test, the test material is placed in a box of water.  Testers then agitate the water, often by simulating the swirl of a toilet flush or the movement of water in a pipe, and time how long it takes for the test material to disintegrate.  Defendants and INDA have agreed that the standard for "passing" this test is not whether the product mimics the easily flushable and dispersible toilet paper or even that the product will break down during a flush.  Rather, the test only requires that after **three hours of agitation** in the slosh box, more than **25%** of the wipe passes through a 12.5 milimeter (roughly a half inch) sieve **80%** of the time. *See* http://www.njwea.org/pdf/2013-guidelines-for-assessing-the-flushability-of-disposable-nonwoven-product.pdf (last accessed February 24, 2014) (emphasis added).  In othe words, the test is still *passed even if after more than **three hours** of agitation, nearly **three-quarters** of the material is **unable** to pass through the pipe.*

50.    When subject to the Slosh Box Disintegration Test, a typical piece of toilet paper begins to break down as soon as the water in the slosh box begins to move, and is completely disintegrated within in a few seconds. *See* http://www.consumerreports.org/cro/video-hub/home--garden/bed--bath/are-flushable-wipes-flushable/16935265001/22783507001/ (last accessed February 21, 2014).  Thus, when flushed down a toilet, toilet paper will likely break into particles within seconds after flushing.  (Id.)  In comparison, the Flushable Wipes do not even begin to disintegrate quickly.  (Id.)  Rather, Defendants' own website reveals that the begin to break down in 35 minutes, and take hours to completely disperse. *See* http://www.kimberly-clark.com/newsroom/media_resources/safetoflush.aspx?print=true (last accessed February 21, 2014).  Despite not dispersing like toilet paper, Defendants advertise and sell a wipe "flushable" even if most of it is still in tact after hours of agitation.

51.    While Defendants represent that the wipes' rate of disintegration roughly mimic the amount of time it takes for a wipe to reach the sewage treatment plant, wastewater utility officials say that wipes can reach a sewage treatment pump in much less time, sometimes as quickly as a few minutes. *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-

1    sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last

2    accessed February 24, 2014).   Further, the moist lotion used in manufacturing the wipes results in

3    them traveling faster through sewer pipes than ordinary products. *See*

4    http://www.woai.com/articles/woai-local-news-119078/disposable-wipes-causing-nightmare-for-

5    san-11718265/ (last accessed February 26, 2014).

6          52.     Because the wipes are always intact after a few minutes, and largely intact even

7    after hours of agitation, they arrive at the sewage treatment pump intact, where they create the

8    problems described in paragraphs 57-68.

9          53.     Nearly all the tests are further flawed as they do not similuate real-world

10   conditions.   Sewer systems typically move sewage to the plant via gravity.  (Id.)  The flowing

11   water is not as hard on the wipes as the agitating water in some of Defendants' tests, meaning that

12   they will not break down as quickly in the pipes as they do in Defendants' lab simulated tests.

13   (Id.)  For example, both the Slosh Box test described in paragraph 49 and FG505, the "Aerobic

14   Biodisintegration" test, assess the wipes' abilities to disintegrate under constantly agitated water.

15   *See* http://www.njwea.org/pdf/2013-guidelines-for-assessing-the-flushability-of-disposable-

16   nonwoven-product.pdf (last accessed February 24, 2014).  Since the Flushable Wipes are unlikely

17   to be subjected to the same agitating water as they are subjected to in Defendants' lab, the tests

18   are not reliable predictors of whether the Flushable Wipes are suitable for flushing down a toilet.

19   The result is that many of the Flushable Wipes arrive at the sewage treatment plant in tact or

20   insufficiently broken down.

21         54.     The tests are further flawed in that they fail to take into account the wipes

22   propensity for "ragging."  After being flushed down the toilet, the Flushable Wipes have a

23   propensity to tangle amongst one another and with other debris, and form long ropes that can fill

24   sewer lines for tens of feet. *See*

25   http://www.hsconnect.com/page/content.detail/id/590706/Concerns-on-wipes-no-laughing-

26   matter.html?nav=5005 (last accessed February 24, 2014).  The tests however, assume that wipes

27   are passing through pipes and pumps one at a time, instead of in clumps of rags and ropes.  For

28   example, while the Slosh Box Disintegration Test only considers what one wipe will do, there

1  will often be multiple wipes in a pipe at a time.  The bigger the mass of wipes, the slower the

2  disintegration time. *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-

3  personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-

4  b47e45e6f8ef_story.html (last accessed February 24, 2014).

5         55.    The test FG507, the Municipal Pump Test, which evaluates the wipes'

6  "compatibility" with municipal pumping systems, is flawed for the same reason.  To conduct that

7  test, Defendants simply feed one wipe into the pump every ten seconds.  *See*

8  http://www.kimberly-clark.com/newsroom/media_resources/safetoflush.aspx (last accessed

9  February 24, 2014).  Because the wipes will likely entangle with other wipes and debris, the test

10  is a poor predictor of the wipes "compatability" with municipal pumping systems.

11  **Because the Flushable Wipes Are Not Suitable For Flushing Down a Toilet, They Wreck**

12                   **Havoc On Municipal Sewage Treatment Facilities**

13         56.    Municipalities all over the country have experienced numerous problems from

14  Defendants' Flushable Wipes.

15         57.    In Bakersfield, California, crews of three or four workers must regularly visit the

16  city's 52 sewage lift stations to cut up the balls of wipes that clog the lift stations.  If they do not,

17  there is a risk that back flow damage will spill inside homes. Mike Connor, Street Superintent at

18  Public Works in Bakersfield has stated "There's no safe brand for disposables, none of them

19  break down." *See* http://www.turnto23.com/news/local-news/bakersfield-sewer-systems-keep-

20  getting-clogged-because-of-flushable-bathroom-wipes-092413 (last accessed February 21, 2014).

21  The city has documented one of the clogs:

22

23

24

25

26

27

28

58.     In Orange County, California, the Sanitation District recorded 971 "de-ragging" maintenance calls to remove wipes from ten pump stations in a single year at a cost of $320,000. http://www.contracostatimes.com/news/ci_24156213/popular-bathroom-wipes-blamed-sewer-clogs, last accessed February 24, 2014.

59.     The San Francisco Public Utlities Commission has documendted the pipe-clogging wipes that the crews must break up:



http://www.sfexaminer.com/sanfrancisco/flushable-wipes-cause-problematic-backups-at-local-sewage-plants/Content?oid=2514283, last accessed February 24, 2014.  The city spends $160,000 a year to remove wipes and debris.  *Id.*

60.     In 2012, thirty percent of the sewage overflows in Contra Costa County were caused by "flushable wipes." http://articles.chicagotribune.com/2013-10-08/news/ct-tl-1010-s-

1   tinley-park-flushables-20131009_1_baby-wipes-flushable-toilet-paper, last accessed February 24,

2   2014.  At one sanitation district in Contra Costa County, workers take apart pumps approximately

3   30 times a year to detangle debris.  Before flushable wipes were introduced, such repairs were

4   necessary just six times a year.  *See* http://www.casaweb.org/news/unwelcome-junk-keeps-sewer-

5   line-workers-busy (last accessed February 26, 2014).

6         61.    In El Dorado Hills, California, a recent sewage spill was found to be caused in

7   large part by disposable wipes.  The result was not only extra maintenance costs, but the city was

8   fined by the state for the spill.  *See* http://www.mtdemocrat.com/news/flushable-wipes-clog-

9   pipes-trash-them-instead/ (last accessed February 24, 2014).

10        62.    Outside of California, the story is much the same.  For example, the city of

11  Vancouver, Washington, has been forced to spend more than $1 million over the last five years to

12  respond to problems creating from the increased use of "flushable" wipes. *See*

13  http://www.kctv5.com/story/23508880/flushable-wipes-clog-sewer-lines (last accessed February

14  26, 2014).  In particular, the city has spent $810,000 on new equipment, $140,00 on electricity

15  wasted through inefficiencies created by running clogged pumps, $480,000 in field labor to

16  unclog pumps, and about $100,000 in engineering and administrative support.  *See*

17  http://news.wef.org/wipes-in-pipes-cause-costly-problems-for-water-resource-recovery-facilities/

18  (last accessed February 26, 2014).

19        63.    In Illinois, the Downers Grove Sanitary District spent $30,000 last year to repair a

20  pump clogged by wipes, and additional $5,000 to install vibration monitoring equipment to alert

21  staff to new blockages.  *See* http://news.wef.org/wipes-in-pipes-cause-costly-problems-for-water-

22  resource-recovery-facilities/ (last accessed February 26, 2014).   Despite this upgrade, the wipes

23  continue to accumulate in the lift station, additional equipment may need to be installed.  *Id.*

24        64.    Outside of Washington, D.C., the Washington Suburban Sanitary Commission has

25  spent more than $1 million over five years installing heavy duty grinders to try to address the

26  problem. http://www.contracostatimes.com/news/ci_24156213/popular-bathroom-wipes-blamed-

27  sewer-clogs, last accessed February 24, 2014.  In addition, the organization has started using a

28  modified shopping cart to catch the wipes before they reach the pumps and clog equipment,

1 | which arrive intact at the treatment facility:



9     65.    Once at the municipal treatment plant, the wipes will clog pipes and pumps.  It can take hours to unclog them, and is very expensive.  The city of Jacksonville Beach estimates that the consumers are paying for the wipes multiple times – in plumbing costs and increased tax expeditures. *See* http://www.news4jax.com/news/officials-flushable-wipes-clog-pipes/-/475880/23740904/-/t5h2vrz/-/index.html (last accessed February 26, 2014). The city has released a photo that demonstrates the extent to which the wipes have clogged the pumps:



*Id.*

21     66.    In Hillsborough, Florida, the sewage treatment facility has hooked ropes to pumps that are plagued by clogs from the wipes.  Every day, teams of plant maintenance mechanics and other workers remove the wipes using the hooks, so that they can cut and untangle the wipes, which resemble "mop strings", using pliers, screwdrivers, and cutters. http://www.tampabay.com/news/humaninterest/flushable-bathroom-wipes-get-blame-for-sewer-clogs/2144911 (last accessed February 21, 2014).

27     67.    In San Antonio, Texas, the San Antonio Water System has said that flushable wipes are clogging up sewers in ways in which sewer workers have never seen before. *See*

1   http://www.woai.com/articles/woai-local-news-119078/disposable-wipes-causing-nightmare-for-

2   san-11718265/ (last accessed February 26, 2014).  Sewer workers are responding to dozens of

3   clogs, and to repair, they retreive large "rope like mass[es]" from the pipes. *Id.*

4        68.    In Arkansas, the Jacksonville Wastewater Utility has found that wipes wreck the

5   most havoc on pumps, causing thousands of dollars in damages.  Years ago, the town would

6   remove pump clogs once or twice a year, but since the flushable wipes have become popular

7   amongst consumers, the town must remove pump clogs several times a month. *See*

8   http://www.arkansasmatters.com/story/wastewater-treatment-facilities-waging-war-with-

9   wipes/d/story/1ZNQd1uAZECshHMb5daErA (last accessed February 26, 2014).  The city spends

10  thousands a year in fixing pump clogs. *Id.*

11       69.    Defendants repeatedly have insisted that these problems are caused by other non-

12  flushable products, and not their wipes.   In response, Contra Costa sewer officials dyed several

13  kinds of wipes to see what happens once they enter the sewer system, and found that wipes

14  labeled "flushable" were still intact after traveling a mile through sewage pipes.

15  http://www.contracostatimes.com/news/ci_24156213/popular-bathroom-wipes-blamed-sewer-

16  clogs, last accessed February 24, 2014.

17                                   **PLAINTIFF'S EXPERIENCE**

18       70.    In 2013, Plaintiff desired to purchase moist wipes for household use.  While

19  shopping for wipes at a Safeway store located at 2020 Market Street, San Francisco, California,

20  Plaintiff came across Defendant's Scott Naturals® Flushable Moist Wipes.  Seeing that the wipes

21  had the word "Flushable" on the front of the package and that the product was more expensive

22  than other wipes that did not have that word, she believed that the product had been specially

23  designed to be suitable for flushing down her toilet, without causing problems in her plumbing or

24  at the water treatment plant. (Several years prior to her purchase, Plaintiff had visited San

25  Francisco's sewage treatment plant as part of a school trip, and she learned there that people

26  frequently flush things that should not be flushed, which causes many problems with the

27  wastewater treatment.) She reviewed both the front and back of the package and did not see

28  anything that would lead her to believe that the wipes were not in fact suitable for flushing.

1   Because she believed it would be easier and more sanitary to flush the wipes than to dispose of

2   them in the garbage, she decided to pay the higher price, and she purchased the Scott Wipes for a

3   few dollars.

4   71.    Plaintiff began using the wipes.  She noticed that each individual wipe felt very

5   sturdy and thick, unlike toilet paper. She also noticed that the wipes did not break up in the toilet

6   bowl like toilet paper but rather remained in one piece.  After several uses of the wipes, she began

7   to seriously doubt that they were truly flushable.  So she stopped flushing the wipes and stopped

8   using the product altogether.

9   72.    Plaintiff has not purchased any of Defendants' "flushable" products since.

10   73.    Had Defendants not misrepresented (by omission and commission) the true nature

11   of their "Flushable" Products, Plaintiff would not have purchased Defendants' product or, at a

12   very minimum, she would have paid less for the product since she would not be obtaining the

13   benefit of being able to flush it.

14   **CLASS ALLEGATIONS**

15   74.    Plaintiff brings this action against Defendants on behalf of herself and all others

16   similarly situated, as a class action pursuant to section 382 of the California Code of Civil

17   Procedure and section 1781 of the California Civil Code.  Plaintiff seeks to represent a group of

18   similarly situated persons (the "Class"), defined as follows:

19       All persons who, between March 13, 2010 and the present, purchased, in
         California, any of the following products: Cottonelle® Fresh Care Flushable
20       Wipes & Cleansing Cloths, Scott Naturals® Flushable Moist Wipes, Huggies
         ® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh flushable
21       wipes.

22   75.    This action has been brought and may properly be maintained as a class action

23   against Defendants pursuant to the provisions of California Code of Civil Procedure section 382

24   because there is a well-defined community of interest in the litigation and the proposed class is

25   easily ascertainable.

26   76.    Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated

27   that it is composed of more than 100 persons.  The persons in the class are so numerous that the

28   joinder of all such persons is impracticable and the disposition of their claims in a class action

1    rather than in individual actions will benefit the parties and the courts.

2        77.    Common Questions Predominate:  This action involves common questions of law

3    and fact to the potential class because each class member's claim derives from the deceptive,

4    unlawful and/or unfair statements and omissions that led Defendants' customers to believe that

5    the Non-Flushable Wipes were flushable.   The common questions of law and fact predominate

6    over individual questions, as proof of a common or single set of facts will establish the right of

7    each member of the Class to recover.  Among the questions of law and fact common to the class

8    are:

9        a)    Whether Defendants' Flushable Wipes are suitable for flushing down a

10   toilet;

11       b)    Whether Defendants unfairly, unlawfully and/or deceptively failed to

12   inform class members that their Flushable Wipes were not flushable;

13       c)    Whether Defendants' advertising and marketing regarding their Flushable

14   Wipes sold to class members was likely to deceive class members or was unfair;

15       d)     Whether Defendants engaged in the alleged conduct knowingly, recklessly,

16   or negligently;

17       e)    The amount of revenues and profits Defendants received and/or the amount

18   of monies or other obligations lost by class members as a result of such wrongdoing;

19       f)    Whether class members are entitled to injunctive and other equitable relief

20   and, if so, what is the nature of such relief; and

21       g)    Whether class members are entitled to payment of actual, incidental,

22   consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the

23   nature of such relief.

24       78.    Typicality:  Plaintiff's claims are typical of the class because, in 2013, she

25   purchased one of the Flushable Wipes, namely Defendants' Scott® Naturals Flushable Moist

26   Wipes, in reliance on Defendants' misrepresentations and omissions that they were flushable.

27   Thus, Plaintiff and class members sustained the same injuries and damages arising out of

28   Defendants' conduct in violation of the law.  The injuries and damages of each class member

1    were caused directly by Defendants' wrongful conduct in violation of law as alleged.

2        79.    Adequacy:  Plaintiff will fairly and adequately protect the interests of all class

3    members because it is in her best interests to prosecute the claims alleged herein to obtain full

4    compensation due to her for the unfair and illegal conduct of which he complains.  Plaintiff also

5    has no interests that are in conflict with or antagonistic to the interests of class members.  Plaintiff

6    has retained highly competent and experienced class action attorneys to represent her interests

7    and the interests of the class.  By prevailing on her own claim, Plaintiff will establish Defendants'

8    liability to all class members.  Plaintiff and her counsel have the necessary financial resources to

9    adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their

10   fiduciary responsibilities to the class members and are determined to diligently discharge those

11   duties by vigorously seeking the maximum possible recovery for class members.

12       80.    Superiority:  There is no plain, speedy, or adequate remedy other than by

13   maintenance of this class action.  The prosecution of individual remedies by members of the class

14   will tend to establish inconsistent standards of conduct for the Defendants and result in the

15   impairment of class members' rights and the disposition of their interests through actions to

16   which they were not parties.  Class action treatment will permit a large number of similarly

17   situated persons to prosecute their common claims in a single forum simultaneously, efficiently,

18   and without the unnecessary duplication of effort and expense that numerous individual actions

19   world engender.  Furthermore, as the damages suffered by each individual member of the class

20   may be relatively small, the expenses and burden of individual litigation would make it difficult

21   or impossible for individual members of the class to redress the wrongs done to them, while an

22   important public interest will be served by addressing the matter as a class action.

23       81.    Nexus to California.  The State of California has a special interest in regulating the

24   affairs of corporations that do business here.  Defendants have more customers here than in any

25   other state.  Accordingly, there is a substantial nexus between Defendants' unlawful behavior and

26   California such that the California courts should take cognizance of this action on behalf of a

27   class of individuals who reside anywhere in the United States.

28       82.    Plaintiff is unaware of any difficulties that are likely to be encountered in the

-23-

Class Action Complaint

1    management of this action that would preclude its maintenance as a class action.

2    <u>**CAUSES OF ACTION**</u>

3    <u>**PLAINTIFF'S FIRST CAUSE OF ACTION**</u>

4    **(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)
On Behalf of Herself and the Class**

5    83.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint

6    as if set forth herein.

7    84.    This cause of action is brought pursuant to the California Consumers Legal

8    Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

9    85.    Defendants' actions, representations and conduct have violated, and continue to

10   violate the CLRA, because they extend to transactions that are intended to result, or which have

11   resulted, in the sale or lease of goods or services to consumers.

12   86.    Plaintiff and other class members are "consumers" as that term is defined by the

13   CLRA in California Civil Code § 1761(d).

14   87.    The Flushable Products that Plaintiff (and others similarly situated class members)

15   purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

16   88.    By engaging in the actions, representations and conduct set forth in this Class

17   Action Complaint, Defendants have violated, and continue to violate, § 1770(a)(2), § 1770(a)(5),

18   § 1770(a)(7), § 1770(a)(8), and § 1770(a)(9) of the CLRA.  In violation of California Civil Code

19   §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the

20   source, sponsorship, approval, or certification of the goods they sold.  In violation of California

21   Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that

22   the goods they sell have sponsorship, approval, characteristics, ingredients, uses, benefits, or

23   quantities, which they do not have.  In violation of California Civil Code §1770(a)(7),

24   Defendants' acts and practices constitute improper representations that the goods they sell are of a

25   particular standard, quality, or grade, when they are of another.  In violation of California Civil

26   Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by

27   false or misleading representation of fact.  In violation of California Civil Code §1770(a)(9),

28   Defendants have advertised goods or services with intent not to sell them as advertised.

1    Specifically, in violation of sections 1770 (a)(2), (a)(5), (a)(7) and (a)(9), Defendants' acts and

2    practices led customers to falsely believe that that their Flushable Products were suitable for

3    flushing down a toilet.  In violation of section 1770(a)(8), Defendants falsely or deceptively

4    market and advertise that, unlike products not specifically denominated as flushable, its Flushable

5    Products are suitable for flushing down a toilet, when in fact none of the products are suitable for

6    flushing.

7        89.    Plaintiff requests that this Court enjoin Defendants from continuing to employ the

8    unlawful methods, acts and practices alleged herein pursuant to California Civil Code

9    § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the

10    future, Plaintiff and the other members of the Class will continue to suffer harm.

11        90.    CLRA § 1782 NOTICE.  **Irrespective of any representations to the contrary in**

12    **this Class Action Complaint, Plaintiff specifically disclaims, at this time, any request for**

13    **damages under any provision of the CLRA.**  Plaintiff, however, hereby provides Defendants

14    with notice and demand that within thirty (30) days from that date, Defendants correct, repair,

15    replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of

16    herein.  Defendants' failure to do so will result in Plaintiff amending this Class Action Complaint

17    to seek, pursuant to California Civil Code § 1780(a)(3), on behalf of himself and those similarly

18    situated class members, compensatory damages, punitive damages and restitution of any ill-gotten

19    gains due to Defendants' acts and practices.

20        91.    Plaintiff also requests that this Court award her her costs and reasonable attorneys'

21    fees pursuant to California Civil Code § 1780(d).

22                    **PLAINTIFF'S SECOND CAUSE OF ACTION**
                **(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
23                        **On Behalf Of Himself and the Class**

24        92.    Plaintiff realleges and incorporates by reference the paragraphs of this Class

25    Action Complaint as if set forth herein.

26        93.    Beginning at an exact date unknown to Plaintiff, but within three (3) years

27    preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

28    and/or misleading statements in connection with the advertising and marketing of their Flushable

-25-

1   Products.

2        94.     Defendants made representations and statements (by omission and commission)

3   that led reasonable customers to believe that they were purchasing products that could be flushed

4   down the toilet without problem. Defendants deceptively failed to inform Plaintiff, and those

5   similarly situated, that their Flushable Wipes were not suitable for disposal by flushing down a

6   toilet, and that the Flushable wipes are not regarded as flushable by municipal sewage systems;

7   routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse,

8   distingrate, or biodgrade like toilet paper.

9        95.     Plaintiff and those similarly situated relied to their detriment on Defendants' false,

10   misleading and deceptive advertising and marketing practices, including each of the

11   misrepresentations and omissions set forth in paragraphs 31-38, and 70, above. Had Plaintiff and

12   those similarly situated been adequately informed and not intentionally deceived by Defendants,

13   they would have acted differently by, without limitation, refraining from purchasing Defendants'

14   Flushable Wipes or paying less for them.

15        96.     Defendants' acts and omissions are likely to deceive the general public.

16        97.     Defendants engaged in these false, misleading and deceptive advertising and

17   marketing practices to increase their profits. Accordingly, Defendants have engaged in false

18   advertising, as defined and prohibited by section 17500, et seq. of the California Business and

19   Professions Code.

20        98.     The aforementioned practices, which Defendants used, and continue to use, to

21   their significant financial gain, also constitute unlawful competition and provide an unlawful

22   advantage over Defendants' competitors as well as injury to the general public.

23        99.     Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as

24   necessary and according to proof, to restore any and all monies acquired by Defendants from

25   Plaintiff, the general public, or those similarly situated by means of the false, misleading and

26   deceptive advertising and marketing practices complained of herein, plus interest thereon.

27        100.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit

28   Defendants from continuing to engage in the false, misleading and deceptive advertising and

1  marketing practices complained of herein.  The acts complained of herein occurred, at least in

2  part, within three (3) years preceding the filing of this Class Action Complaint.

3      101.  Plaintiff and those similarly situated are further entitled to and do seek both a

4  declaration that the above-described practices constitute false, misleading and deceptive

5  advertising, and injunctive relief restraining Defendants from engaging in any such advertising

6  and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

7  and restrained by order of this Court, will continue to cause injury in fact to the general public

8  and the loss of money and property in that the Defendants will continue to violate the laws of

9  California, unless specifically ordered to comply with the same.  This expectation of future

10  violations will require current and future customers to repeatedly and continuously seek legal

11  redress in order to recover monies paid to Defendants to which Defendants are not entitled.

12  Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate

13  remedy at law to ensure future compliance with the California Business and Professions Code

14  alleged to have been violated herein.

15      102.  As a direct and proximate result of such actions, Plaintiff and the other members of

16  the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

17  as a result of such false, deceptive and misleading advertising in an amount which will be proven

18  at trial, but which is in excess of the jurisdictional minimum of this Court.

19  **PLAINTIFF'S THIRD CAUSE OF ACTION**
    **(Fraud, Deceit and/or Misrepresentation)**

20      **On Behalf of Herself and the Class**

21      103.  Plaintiff realleges and incorporates by reference the paragraphs of this Class

22  Action Complaint as if set forth herein.

23      104.  In 2013, Defendants fraudulently and deceptively led Plaintiff to believe that

24  Defendants' Flushable Wipes were suitable for flushing down a toilet.  Defendants also failed to

25  inform Plaintiff that Defendants' Flushable Wipes were not suitable for disposal by flushing

26  down a toilet, and the wipes are not regarded as flushable by municipal sewage systems; routinely

27  damages or clogs pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or

28  biodgrade like toilet paper.

105.    These omissions were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendants' Flushable Wipes.

106.    Defendants made identical misrepresentations and omissions to members of the Class regarding Defendants' Flushable Wipes.

107.    In not so informing Plaintiff and the members of the Class, Defendants breached their duty to her.  Defendants also gained financially from, and as a result of, their breach.

108.    Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent omissions.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) Defendants' Flushable Wipes.

109.    Defendants had a duty to inform class members at the time of their purchase of that the Flushable Wipes were not suitable for flushing down a toilet, and the wipes are not regarded as flushable by municipal sewage systems; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like toilet paper. Defendants omitted to provide this information to class members.  Class members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the class members to purchase the Flushable Wipes.  In making these omissions, Defendants breached their duty to class members.  Defendants also gained financially from, and as a result of, their breach.

110.    By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, to purchase their Flushable Wipes.

111.    Plaintiff and those similarly situated justifiably and reasonably relied on Defendants' omissions, and, accordingly, were damaged by the Defendants.

112.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Flushable Wipes.

113.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

### PLAINTIFF'S FOURTH CAUSE OF ACTION
(Unfair, Unlawful and Deceptive Trade Practices,
Business and Professions Code § 17200, et seq.)
On Behalf of Herself and the Class

114.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

115.    Within four (4) years preceding the filing of this Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices outlined in this Class Action Complaint.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

    a.    deceptively representing to Plaintiff, and those similarly situated, the Flushable Products were suitable for flushing down a toilet;

    b.    failing to inform Plaintiff, and those similarly situated, that the Flushable Products were not suitable for disposal by flushing down a toilet, and the wipes are not regarded as flushable by municipal sewage systems; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like toilet paper.

    c.    engaging in fraud, deceit, and misrepresentation as described herein;

    d.    violating the CLRA as described herein; and

    e.    violating the FAL as described herein.

116.    Plaintiff and those similarly situated relied to their detriment on Defendants' unfair, deceptive and unlawful business practices.  Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Flushable Wipes.

117.    Defendants' acts and omissions are likely to deceive the general public.

118.    Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, et seq. of the California Business and Professions Code.

119.    The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

120.    Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

121.    Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

122.    The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

123.    Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future.  Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same.  This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

124.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property

1   as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an

2   amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this

3   Court.   Among other things, Plaintiff and the class lost the amount they paid for the Flushable

4   Products.

5       125.    As a direct and proximate result of such actions, Defendants have enjoyed, and

6   continue to enjoy, significant financial gain in an amount which will be proven at trial, but which

7   is in excess of the jurisdictional minimum of this Court.

8                              **PRAYER FOR RELIEF**

9       WHEREFORE, Plaintiff prays for judgment as follows:

10          A.    On Cause of Action Number 1 against Defendants and in favor of Plaintiff

11              and the other members of the Class:

12              1.  for restitution and injunctive relief pursuant to California Civil

13                  Code section 1780;

14              2   [Reserved]; and

15              3   [Reserved].

16          B.    On Causes of Action Numbers 2 and 4 against Defendants and in favor of

17              Plaintiff and the other members of the Class:

18              1.  for restitution pursuant to, without limitation, the California

19                  Business & Professions Code §§ 17200, et seq. and 17500, et seq.;

20                  and

21              2.  for injunctive relief pursuant to, without limitation, the California

22                  Business & Professions Code §§ 17200, et seq .and 17500, et seq.;

23          C.    On Cause of Action Number 3 against Defendants and in favor of Plaintiff

24              and the other members of the Class:

25              1.  an award of compensatory damages, the amount of which is to be

26                  determined at trial; and

27              2.  an award of punitive damages, the amount of which is to be

28                  determined at trial.

-31-

Class Action Complaint

D.    On all causes of action against Defendants and in favor of Plaintiff, class
members and the general public:

    1.    for reasonable attorneys' fees according to proof pursuant to,
without limitation, the California Legal Remedies Act and
California Code of Civil Procedure § 1021.5;

    2.    for costs of suit incurred; and

    3.    for such further relief as this Court may deem just and proper.

### JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  March 13, 2014                    **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

1

## EXHIBIT A

2

I, Jennifer Davidson, declare:

3

1.      I am the Plaintiff in this action.  If called upon to testify, I could and would

4

competently testify to the matters contained herein based upon my personal knowledge.

5

2.      I submit this Declaration pursuant to California Code of Civil Procedure section

6

2215.5 and California Civil Code section 1780(d).

7

3.      I am a resident of San Francisco, California.  As set forth in my complaint, in 2013,

8

I purchased Scott Naturals® Flushable Moist Wipes from the Safeway store located at 2020

9

Market Street, San Francisco.

10

I declare under penalty of perjury under the laws of California that the foregoing is true

11

and correct.

12

Executed this 11th day of March, 2014, in San Francisco, California.

13

14

15

_____

16

Jennifer Davidson

17

18

19

20

21

22

23

24

25

26

27

28

-1-

DAVIDSON DECLARATION RE CAL. CIV. CODE SECTION 1780(D) JURISDICTION



## What is ESP?

The Bar Association of San Francisco's **Early Settlement Program** (ESP) is available as one of San Francisco Superior Court's Alternative Dispute Resolution (ADR) programs (Local Rule 4.3).

ESP is a **highly successful** ADR program that handles cases in areas of law such as business, personal injury, employment, labor, civil rights, discrimination, insurance, malpractice, landlord/tenant, and many others.

ESP is **unique** in that the panelists, in helping you move toward settlement, can provide you confidential feedback about their evaluation of your case, including opinions as to potential case value.

For more information as well as the complete Policies & Procedures, go to: **www.sfbar.org/esp**

## Who are the Panelists?



They are experienced attorneys with at least **10 years** of trial experience. Panels consist of one plaintiff and one defense attorney. Sometimes an attorney who is experienced in both types of representation serves as a solo panelist.

## Costs

There is a $295 administrative fee per party, or capped at $590 for multiple parties represented by the same attorney to pay for the cost of running this program. If you have a fee waiver with the Superior Court, your fee will be waived by the ESP program.

## Contact

▶ email: esp@sfbar.org

▶ phone: 415-982-1600

▶ fax: 415-989-0381

## Steps:

The forms you need can be found at **www.sfbar.org/esp**, or email adr@sfbar.org or call 415-782-8905 for a packet to be sent to you.

❶ Please complete the ESP Agreement and return it to BASF via email at adr@sfbar.org or by fax to 415-989-0381. You don't have to get the other parties to sign, just send yours.

❷ When all parties have signed the ESP Agreement, you will be sent the Notice of ESP, along with an invoice.

❸ There is a $295 administrative fee per party, with a cap of $590 for multiple parties represented by the same attorney. You can pay by check, money order or credit card.

❹ Send your administrative fee by fax, email or mail to: BASF / ESP, 301 Battery Street, Third Floor, San Francisco, California 94111.

❺ When BASF receives the fees from all parties, your matter will be assigned to a panelist (or panel of 2), who you will work with to set the date, time and location for your conference.

❻ If you must reschedule your ESP conference date, work with the other side and your panelist(s) to set the new date. BASF does not need to be notified.

❼ Before your conference, provide a copy of your description of the dispute to all parties and panelists. BASF does not need a copy.

❽ If the matter is settled in your ESP conference, congratulations!

❾ If the matter is not settled in your ESP conference, your initial court date remains the same.

CASE NUMBER: CGC-14-537962  JENNIFER DAVIDSON, AN INDIVIDUAL, ON BEHALF OF V

## NOTICE TO PLAINTIFF

A Case Management Conference is set for:

**DATE:**  **AUG-13-2014**

**TIME:**  **10:30AM**

**PLACE:**  **Department 610**
**400 McAllister Street**
**San Francisco, CA  94102-3680**

All parties must appear and comply with Local Rule 3.

CRC 3.725 requires the filing and service of a case management statement form CM-110 no later than 15 days before the case management conference. However, it would facilitate the issuance of a case management order  **without an appearance**  at the case management conference if the case management statement is filed, served and lodged in Department 610 twenty-five (25) days before the case management conference.

Plaintiff must serve a copy of this notice upon each party to this action with the summons and complaint. Proof of service subsequently filed with this court shall so state.  **This case is eligible for electronic filing and service per Local Rule 2.10.  For more information, please visit the Court's website at www.sfsuperiorcourt.org under Online Services.**

### ALTERNATIVE DISPUTE RESOLUTION POLICY REQUIREMENTS

**IT IS THE POLICY OF THE SUPERIOR COURT THAT EVERY CIVIL CASE PARTICIPATE IN EITHER MEDIATION, JUDICIAL OR NON-JUDICIAL ARBITRATION, THE EARLY SETTLEMENT PROGRAM OR SOME SUITABLE FORM OF ALTERNATIVE DISPUTE RESOLUTION PRIOR TO A TRIAL.**
(SEE LOCAL RULE 4)

Plaintiff must serve a copy of the Alternative Dispute Resolution Information Package on each defendant along with the complaint.  All counsel must discuss ADR with clients and opposing counsel and provide clients with a copy of the Alternative Dispute Resolution Information Package prior to filing the Case Management Statement.

**[DEFENDANTS: Attending the Case Management Conference does not take the place of filing a written response to the complaint. You must file a written response with the court within the time limit required by law. See Summons.]**

Superior Court Alternative Dispute Resolution Coordinator
400  McAllister Street, Room 103
San Francisco, CA  94102
(415) 551-3876

**See Local Rules 3.3, 6.0 C and 10 B re stipulation to judge pro tem.**

## Superior Court of California, County of San Francisco
### Alternative Dispute Resolution
### Program Information Package



> The plaintiff must serve a copy of the ADR information package
> on each defendant along with the complaint.  (CRC 3.221(c))

**WHAT IS ADR?**
Alternative Dispute Resolution (ADR) is the term used to describe the various options available for settling a dispute without a trial.  There are many different ADR processes, the most common forms of which are mediation, arbitration and settlement conferences.  In ADR, trained, impartial people decide disputes or help parties decide disputes themselves. They can help parties resolve disputes without having to go to court.

**WHY CHOOSE ADR?**
"It is the policy of the Superior Court that every noncriminal, nonjuvenile case participate either in an early settlement conference, mediation, arbitration, early neutral evaluation or some other alternative dispute resolution process prior to trial." (Local Rule 4)

ADR can have a number of advantages over traditional litigation:
- **ADR can save time.**  A dispute often can be resolved in a matter of months, even weeks, through ADR, while a lawsuit can take years.
- **ADR can save money,** including court costs, attorney fees, and expert fees.
- **ADR encourages participation.**  The parties may have more opportunities to tell their story than in court and may have more control over the outcome of the case.
- **ADR is more satisfying.**  For all the above reasons, many people participating in ADR have reported a high degree of satisfaction.

**HOW DO I PARTICIPATE IN ADR?**
Litigants may elect to participate in ADR at any point in a case.  General civil cases may voluntarily enter into the court's ADR programs by any of the following means:
- Filing a Stipulation to ADR: Complete and file the Stipulation form (attached to this packet) at the clerk's office located at 400 McAllister Street, Room 103;
- Indicating your ADR preference on the Case Management Statement (also attached to this packet); or
- Contacting the court's ADR office (see below) or the Bar Association of San Francisco's ADR Services at 415-782-8905 or www.sfbar.org/adr for more information.

**For more information about ADR programs or dispute resolution alternatives, contact:**

Superior Court Alternative Dispute Resolution
400 McAllister Street, Room 103, San Francisco, CA   94102
415-551-3876

*Or, visit the court ADR website at www.sfsuperiorcourt.org*

The San Francisco Superior Court offers different types of ADR processes for general civil matters; each ADR program is described in the subsections below:

## 1) SETTLEMENT CONFERENCES

The goal of settlement conferences is to provide participants an opportunity to reach a mutually acceptable settlement that resolves all or part of a dispute early in the litigation process.

**(A) THE BAR ASSOCIATION OF SAN FRANCISCO (BASF) EARLY SETTLEMENT PROGRAM (ESP):** ESP remains as one of the Court's ADR programs (see Local Rule 4.3) but parties must select the program – the Court no longer will order parties into ESP.

**Operation:** Panels of pre-screened attorneys (one plaintiff, one defense counsel) each with at least 10 years' trial experience provide a minimum of two hours of settlement conference time, including evaluation of strengths and weakness of a case and potential case value. On occasion, a panelist with extensive experience in both plaintiff and defense roles serves as a sole panelist. BASF handles notification to all parties, conflict checks with the panelists, and full case management. The success rate for the program is 78% and the satisfaction rate is 97%. Full procedures are at: www.sfbar.org/esp.

**Cost:** BASF charges an administrative fee of $295 per party with a cap of $590 for parties represented by the same counsel. Waivers are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) MANDATORY SETTLEMENT CONFERENCES:** Parties may elect to apply to the Presiding Judge's department for a specially-set mandatory settlement conference. See Local Rule 5.0 for further instructions. Upon approval of the Presiding Judge, the court will schedule the conference and assign the case for a settlement conference.

## 2) MEDIATION

Mediation is a voluntary, flexible, and confidential process in which a neutral third party facilitates negotiations. The goal of mediation is to reach a mutually satisfactory agreement, before incurring the expense of going to court, that resolves all or part of a dispute after exploring the interests, needs, and priorities of the parties in light of relevant evidence and the law. A mediator strives to bring the parties to a mutually beneficial settlement of the dispute.

**(A) MEDIATION SERVICES OF THE BAR ASSOCIATION OF SAN FRANCISCO,** in cooperation with the Superior Court, is designed to help civil litigants resolve disputes before they incur substantial costs in litigation. While it is best to utilize the program at the outset of litigation, parties may use the program at any time while a case is pending.

**Operation:** Experienced professional mediators, screened and approved, provide one hour of preparation time and the first two hours of mediation time. Mediation time beyond that is charged at the mediator's hourly rate. BASF pre-screens all mediators based upon strict educational and experience requirements. Parties can select their mediator from the panels at www.sfbar.org/mediation or BASF can assist with mediator selection. The BASF website contains photographs, biographies, and videos of the mediators as well as testimonials to assist with the selection process. BASF staff handles conflict checks and full case management.

Mediators work with parties to arrive at a mutually agreeable solution. The success rate for the program is 64% and the satisfaction rate is 99%.

**Cost:** BASF charges an administrative fee of $295 per party. The hourly mediator fee beyond the first three hours will vary depending on the mediator selected. Waivers of the administrative fee are available to those who qualify. For more information, call Marilyn King at 415-782-8905, email adr@sfbar.org or see the enclosed brochure.

**(B) PRIVATE MEDIATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private mediation. Parties may elect any private mediator or mediation organization of their choice; the selection and coordination of private mediation is the responsibility of the parties. Parties may find mediators and organizations on the Internet. The cost of private mediation will vary depending on the mediator selected.

## 3) ARBITRATION

An arbitrator is neutral attorney who presides at a hearing where the parties present evidence through exhibits and testimony. The arbitrator applies the law to the facts of the case and makes an award based upon the merits of the case.

**(A) JUDICIAL ARBITRATION:** When the court orders a case to arbitration it is called "judicial arbitration". The goal of arbitration is to provide parties with an adjudication that is earlier, faster, less formal, and usually less expensive than a trial.

**Operation:** Pursuant to CCP 1141.11 and Local Rule 4, all civil actions in which the amount in controversy is $50,000 or less, and no party seeks equitable relief, shall be ordered to arbitration. (Upon stipulation of all parties, other civil matters may be submitted to judicial arbitration.) A case is ordered to arbitration after the Case Management Conference. An arbitrator is chosen from the court's arbitration panel. Arbitrations are generally held between 7 and 9 months after a complaint has been filed. Judicial arbitration is not binding unless all parties agree to be bound by the arbitrator's decision. Any party may request a trial within 60 days after the arbitrator's award has been filed.

Local Rule 4.2 allows for mediation in lieu of judicial arbitration, so long as the parties file a stipulation to mediate after the filing of a complaint. If settlement is not reached through mediation, a case proceeds to trial as scheduled.

**Cost:** There is no cost to the parties for judicial arbitration.

**(B) PRIVATE ARBITRATION:** Although not currently a part of the court's ADR program, civil disputes may also be resolved through private arbitration. Here, the parties voluntarily consent to arbitration. If all parties agree, private arbitration may be binding and the parties give up the right to judicial review of the arbitrator's decision. In private arbitration, the parties select a private arbitrator and are responsible for paying the arbitrator's fees.

TO PARTICIPATE IN ANY OF THE COURT'S ADR PROGRAMS, PLEASE COMPLETE THE ATTACHED STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION AND SUBMIT IT TO THE COURT. YOU MUST ALSO CONTACT BASF TO ENROLL IN THE LISTED BASF PROGRAMS. THE COURT DOES NOT FORWARD COPIES OF COMPLETED STIPULATIONS TO BASF.

| ATTORNEY OR PARTY WITHOUT ATTORNEY (*Name and address*) | *FOR COURT USE ONLY* |
|---|---|
| TELEPHONE NO.:<br><br>ATTORNEY FOR *(Name)*: | |

| SUPERIOR COURT OF CALIFORNIA, COUNTY OF SAN FRANCISCO<br>400 McAllister Street<br>San Francisco, CA 94102-4514 |
|---|

| PLAINTIFF/PETITIONER:<br><br>DEFENDANT/RESPONDENT: |
|---|

| STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION (ADR) | CASE NUMBER:<br><br>**DEPARTMENT 610** |
|---|---|

**1)**     **The parties hereby stipulate that this action shall be submitted to the following ADR process:**

☐    **Early Settlement Program of the Bar Association of San Francisco (BASF) -** Pre-screened experienced attorneys provide a minimum of 2 hours of settlement conference time for a BASF administrative fee of $250 per party. Waivers are available to those who qualify. BASF handles notification to all parties, conflict checks with the panelists, and full case management. www.sfbar.org/esp

☐    **Mediation Services of BASF -** Experienced professional mediators, screened and approved, provide one hour of preparation and the first two hours of mediation time for a BASF administrative fee of $250 per party. Mediation time beyond that is charged at the mediator's hourly rate. Waivers of the administrative fee are available to those who qualify. BASF assists parties with mediator selection, conflicts checks and full case management. www.sfbar.org/mediation

☐    **Private Mediation -** Mediators and ADR provider organizations charge by the hour or by the day, current market rates. ADR organizations may also charge an administrative fee. Parties may find experienced mediators and organizations on the Internet.

☐    **Judicial Arbitration -** Non-binding arbitration is available to cases in which the amount in controversy is $50,000 or less and no equitable relief is sought. The court appoints a pre-screened arbitrator who will issue an award. There is no fee for this program. www.sfsuperiorcourt.org

☐    **Other ADR process (describe)** _____

**2)**     The parties agree that the ADR Process shall be completed by (date): _____

**3)**     Plaintiff(s) and Defendant(s) further agree as follows:

_____

_____

_____

| _____ | _____ |
|---|---|
| Name of Party Stipulating | Name of Party Stipulating |
| _____ | _____ |
| Name of Party or Attorney Executing Stipulation | Name of Party or Attorney Executing Stipulation |
| _____ | _____ |
| Signature of Party or Attorney | Signature of Party or Attorney |
| ☐ Plaintiff ☐ Defendant ☐ Cross-defendant | ☐ Plaintiff ☐ Defendant ☐ Cross-defendant |
| Dated: _____ | Dated: _____ |

☐   *Additional signature(s) attached*

ADR-2  07/12        **STIPULATION TO ALTERNATIVE DISPUTE RESOLUTION**

CM-110

| ATTORNEY OR PARTY WITHOUT ATTORNEY *(Name, State Bar number, and address)*: | FOR COURT USE ONLY |
|---|---|
| TELEPHONE NO.:          FAX NO. *(Optional)*:<br>E-MAIL ADDRESS *(Optional)*:<br>ATTORNEY FOR *(Name)*: | |

**SUPERIOR COURT OF CALIFORNIA, COUNTY OF**
 STREET ADDRESS:
 MAILING ADDRESS:
 CITY AND ZIP CODE:
 BRANCH NAME:

 PLAINTIFF/PETITIONER:

DEFENDANT/RESPONDENT:

| **CASE MANAGEMENT STATEMENT**<br>*(Check one):* ☐ **UNLIMITED CASE**   ☐ **LIMITED CASE**<br> (Amount demanded      (Amount demanded is $25,000<br> exceeds $25,000)       or less) | CASE NUMBER: |
|---|---|

A CASE MANAGEMENT CONFERENCE is scheduled as follows:

Date:                  Time:            Dept.:          Div.:            Room:

Address of court *(if different from the address above)*:

☐  Notice of Intent to Appear by Telephone,  by *(name)*:

---

**INSTRUCTIONS: All applicable boxes must be checked, and the specified information must be provided.**

1. **Party or parties** *(answer one):*
   a. ☐  This statement is submitted by party *(name)*:
   b. ☐  This statement is submitted **jointly** by parties *(names)*:


2. **Complaint and cross-complaint** *(to be answered by plaintiffs and cross-complainants only)*
   a.  The complaint was filed on *(date)*:
   b. ☐  The cross-complaint, if any, was filed on *(date)*:

3. **Service** *(to be answered by plaintiffs and cross-complainants only)*
   a. ☐  All parties named in the complaint and cross-complaint have been served, have appeared, or have been dismissed.
   b. ☐  The following parties named in the complaint or cross-complaint
      (1) ☐  have not been served *(specify names and explain why not)*:

      (2) ☐  have been served but have not appeared and have not been dismissed *(specify names)*:

      (3) ☐  have had a default entered against them *(specify names)*:

   c. ☐  The following additional parties may be added *(specify names, nature of involvement in case, and date by which they may be served)*:


4. **Description of case**
   a.  Type of case in ☐  complaint  ☐  cross-complaint     *(Describe, including causes of action)*:

---

Page 1 of 5

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

4. b.  Provide a brief statement of the case, including any damages. *(If personal injury damages are sought, specify the injury and damages claimed, including medical expenses to date [indicate source and amount], estimated future medical expenses, lost earnings to date, and estimated future lost earnings. If equitable relief is sought, describe the nature of the relief.)*

☐  *(If more space is needed, check this box and attach a page designated as Attachment 4b.)*

5.  **Jury or nonjury trial**
The party or parties request ☐ a jury trial ☐ a nonjury trial.  *(If more than one party, provide the name of each party requesting a jury trial):*

6.  **Trial date**
a. ☐ The trial has been set for *(date):*
b. ☐ No trial date has been set. This case will be ready for trial within 12 months of the date of the filing of the complaint *(if not, explain):*

c. Dates on which parties or attorneys will not be available for trial *(specify dates and explain reasons for unavailability):*

7.  **Estimated length of trial**
The party or parties estimate that the trial will take *(check one):*
a. ☐ days *(specify number):*
b. ☐ hours (short causes) *(specify):*

8.  **Trial representation** *(to be answered for each party)*
The party or parties will be represented at trial ☐ by the attorney or party listed in the caption ☐ by the following:
a.  Attorney:
b.  Firm:
c.  Address:
d.  Telephone number:
e.  E-mail address:
f.  Fax number:
g.  Party represented:
☐ Additional representation is described in Attachment 8.

9.  **Preference**
☐ This case is entitled to preference *(specify code section):*

10. **Alternative dispute resolution (ADR)**

a.  **ADR information package.** Please note that different ADR processes are available in different courts and communities; read the ADR information package provided by the court under rule 3.221 for information about the processes available through the court and community programs in this case.

(1) For parties represented by counsel: Counsel ☐ has ☐ has not  provided the ADR information package identified in rule 3.221 to the client and reviewed ADR options with the client.

(2) For self-represented parties: Party ☐ has ☐ has not  reviewed the ADR information package identified in rule 3.221.

b.  **Referral to judicial arbitration or civil action mediation** (if available).

(1) ☐ This matter is subject to mandatory judicial arbitration under Code of Civil Procedure section 1141.11 or to civil action mediation under Code of Civil Procedure section 1775.3 because the amount in controversy does not exceed the statutory limit.

(2) ☐ Plaintiff elects to refer this case to judicial arbitration and agrees to limit recovery to the amount specified in Code of Civil Procedure section 1141.11.

(3) ☐ This case is exempt from judicial arbitration under rule 3.811 of the California Rules of Court or from civil action mediation under Code of Civil Procedure section 1775 et seq. *(specify exemption):*

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

10. c. Indicate the ADR process or processes that the party or parties are willing to participate in, have agreed to participate in, or have already participated in *(check all that apply and provide the specified information)*:

| | The party or parties completing this form **are willing to** participate in the following ADR processes *(check all that apply)*: | If the party or parties completing this form in the case **have agreed to** participate in or have already completed an ADR process or processes, indicate the status of the processes *(attach a copy of the parties' ADR stipulation)*: |
|---|---|---|
| (1) Mediation | ☐ | ☐ Mediation session not yet scheduled <br> ☐ Mediation session scheduled for *(date)*: <br> ☐ Agreed to complete mediation by *(date)*: <br> ☐ Mediation completed on *(date)*: |
| (2) Settlement conference | ☐ | ☐ Settlement conference not yet scheduled <br> ☐ Settlement conference scheduled for *(date)*: <br> ☐ Agreed to complete settlement conference by *(date)*: <br> ☐ Settlement conference completed on *(date)*: |
| (3) Neutral evaluation | ☐ | ☐ Neutral evaluation not yet scheduled <br> ☐ Neutral evaluation scheduled for *(date)*: <br> ☐ Agreed to complete neutral evaluation by *(date)*: <br> ☐ Neutral evaluation completed on *(date)*: |
| (4) Nonbinding judicial arbitration | ☐ | ☐ Judicial arbitration not yet scheduled <br> ☐ Judicial arbitration scheduled for *(date)*: <br> ☐ Agreed to complete judicial arbitration by *(date)*: <br> ☐ Judicial arbitration completed on *(date)*: |
| (5) Binding private arbitration | ☐ | ☐ Private arbitration not yet scheduled <br> ☐ Private arbitration scheduled for *(date)*: <br> ☐ Agreed to complete private arbitration by *(date)*: <br> ☐ Private arbitration completed on *(date)*: |
| (6) Other *(specify)*: | ☐ | ☐ ADR session not yet scheduled <br> ☐ ADR session scheduled for *(date)*: <br> ☐ Agreed to complete ADR session by *(date)*: <br> ☐ ADR completed on *(date)*: |

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**11. Insurance**
  a. ☐ Insurance carrier, if any, for party filing this statement *(name):*
  b. Reservation of rights: ☐ Yes ☐ No
  c. ☐ Coverage issues will significantly affect resolution of this case *(explain):*

**12. Jurisdiction**
  Indicate any matters that may affect the court's jurisdiction or processing of this case and describe the status.
  ☐ Bankruptcy ☐ Other *(specify):*
  Status:

**13. Related cases, consolidation, and coordination**
  a. ☐ There are companion, underlying, or related cases.
      (1) Name of case:
      (2) Name of court:
      (3) Case number:
      (4) Status:
    ☐ Additional cases are described in Attachment 13a.
  b. ☐ A motion to ☐ consolidate ☐ coordinate will be filed by *(name party):*

**14. Bifurcation**
  ☐ The party or parties intend to file a motion for an order bifurcating, severing, or coordinating the following issues or causes of action *(specify moving party, type of motion, and reasons):*

**15. Other motions**
  ☐ The party or parties expect to file the following motions before trial *(specify moving party, type of motion, and issues):*

**16. Discovery**
  a. ☐ The party or parties have completed all discovery.
  b. ☐ The following discovery will be completed by the date specified *(describe all anticipated discovery):*

| Party | Description | Date |
|---|---|---|
| | | |

  c. ☐ The following discovery issues, including issues regarding the discovery of electronically stored information, are anticipated *(specify):*

**CASE MANAGEMENT STATEMENT**

CM-110

| PLAINTIFF/PETITIONER: | CASE NUMBER: |
|---|---|
| DEFENDANT/RESPONDENT: | |

**17. Economic litigation**

   a. ☐ This is a limited civil case (i.e., the amount demanded is $25,000 or less) and the economic litigation procedures in Code of Civil Procedure sections 90-98 will apply to this case.

   b. ☐ This is a limited civil case and a motion to withdraw the case from the economic litigation procedures or for additional discovery will be filed *(if checked, explain specifically why economic litigation procedures relating to discovery or trial should not apply to this case):*

**18. Other issues**

   ☐ The party or parties request that the following additional matters be considered or determined at the case management conference *(specify):*

**19. Meet and confer**

   a. ☐ The party or parties have met and conferred with all parties on all subjects required by rule 3.724 of the California Rules of Court *(if not, explain):*

   b. After meeting and conferring as required by rule 3.724 of the California Rules of Court, the parties agree on the following *(specify):*

20. Total number of pages attached *(if any):* _____

I am completely familiar with this case and will be fully prepared to discuss the status of discovery and alternative dispute resolution, as well as other issues raised by this statement, and will possess the authority to enter into stipulations on these issues at the time of the case management conference, including the written authority of the party where required.

Date:

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

_____
(TYPE OR PRINT NAME)

▶ _____
(SIGNATURE OF PARTY OR ATTORNEY)

☐ Additional signatures are attached.