UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

JENNIFER DAVIDSON,

            Plaintiff,

     v.

KIMBERLY-CLARK CORPORATION, et al.,

            Defendants.

_____/

No. C 14-1783 PJH

**ORDER GRANTING DEFENDANTS' MOTION TO DISMISS AND TO STRIKE IN PART AND DENYING IT IN PART**

Defendants' motion to dismiss the above-entitled action and to strike certain allegations in the complaint came on for hearing before this court on July 30, 2014.  Plaintiff Jennifer Davidson appeared by her counsel Kristen Simplicio, and defendants appeared by their counsel Amy Lally.  Having read the parties' papers and carefully considered their arguments and the relevant legal authority, the court hereby GRANTS the motion in part and DENIES it in part as follows.

**BACKGROUND**

In this consumer fraud case, plaintiff Jennifer Davidson alleges that defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc.; and Kimberly-Clark Global Sales LLC ("Kimberly-Clark" or "defendants") falsely advertised that four cleansing cloths/"wipes" they manufacture and sell are "flushable," which she claims should be defined as "suitable for disposal by flushing down a toilet."  Cplt ¶ 22.  She asserts that the four products are not in fact "flushable," because after they are flushed down a toilet, they fail to "disperse," with the result that they may clog municipal sewer systems and septic systems, and/or damage pipes and sewage pumps.  See Cplt ¶¶ 32-36.

Plaintiff alleges that at some point in 2013, she purchased one such product – Scott

United States District Court

For the Northern District of California

Naturals® Flushable Moist Wipes (also referred to as Scott Naturals® Flushable Cleansing Cloths) – which she believed had been "specially designed to be suitable for flushing down her toilet, without causing problems in her plumbing or at the water treatment plant."  Cplt ¶ 70.  Subsequently, after "several uses of the wipes," plaintiff "began to seriously doubt that they were truly flushable."  Cplt ¶ 71.  She stopped using the wipes and has not purchased any of defendants' "flushable" products since that time.  Cplt ¶¶ 71-72.

Plaintiff asserts that she would not have purchased the Scott Naturals® wipes had defendants not misrepresented "the true nature" of their "flushable" products – or, at a minimum, she would have paid less for the Scott Naturals® product because she would not have obtained the benefit of being able to flush it.  Cplt ¶ 73.

Plaintiff filed the complaint in this case on March 13, 2014 in the Superior Court of California, County of San Francisco, as a proposed class action.  Plaintiff asserts violations of the Consumer Legal Remedies Act ("CLRA"), Cal. Civ. Code § 1750, et seq., and the False Advertising Act ("FAL"), Cal. Bus. & Prof. Code § 17500, et seq.; common law fraud, deceit and/or misrepresentation; and unlawful, unfair, and deceptive trade practices, in violation of Cal. Bus. & Prof. Code § 17200, et seq.

Plaintiff seeks to represent a proposed class defined as "[a]ll persons who, between March 13, 2010 and the present, purchased, in California, any of the following products: Cottonelle® Fresh Care Flushable Wipes and Cleansing Cloths, Scott Naturals® Flushable Moist Wipes, Huggies® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh flushable wipes."  Cplt ¶ 74.

Plaintiff claims that these four "flushable" products are all deceptively advertised as "flushable," Cplt ¶¶ 21-44; that they are all manufactured and packaged "the same way . . . using the same proprietary paper blend, for which [d]efendants own the patent," Cplt ¶¶ 45-46; and that they are all subject to the same "flawed" tests used for setting the "industry guidelines" for determining whether a product is "flushable," Cplt ¶¶ 47-55.  She claims that wipes that are not truly flushable cause numerous problems at municipal sewage treatment facilities.  Cplt ¶¶ 56-69.  Plaintiff (on behalf of herself and the members

2

1  of the proposed class) seeks restitution, injunctive relief, declaratory relief, compensatory

2  and punitive damages, and attorney's fees and costs.

3      Defendants removed the case on April 17, 2014, asserting jurisdiction under the

4  Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1332(d)(2)(A).  They now seek an order

5  dismissing the complaint pursuant to Federal Rules of Civil Procedure 12(b)(1) and

6  12(b)(6), and also seek an order striking certain allegations in the complaint as immaterial,

7  impertinent, or irrelevant to this action.

**DISCUSSION**

9  A.    Motion to Dismiss for Lack of Subject Matter Jurisdiction

10      1.    Legal standard

11      Federal courts are courts of limited jurisdiction.  They can adjudicate only those

12  cases which the Constitution and Congress authorize them to adjudicate – those involving

13  diversity of citizenship or a federal question, or those to which the United States is a party.

14  Kokkonen v. Guardian Life Ins. Co. of America, 511 U.S. 375, 380-81 (1994).  "If the court

15  determines at any time that it lacks subject-matter jurisdiction, the court must dismiss the

16  action." Fed. R. Civ. P. 12(h)(3).

17      The plaintiff always bears the burden of establishing subject matter jurisdiction.

18  Kokkonen, 511 U.S. at 377.  A defendant may raise the defense of lack of subject matter

19  jurisdiction by motion pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure   "A

20  Rule 12(b)(1) jurisdictional attack may be facial or factual."  Safe Air for Everyone v. Meyer,

21  373 F.3d 1035, 1039 (9th Cir. 2004).  "In a facial attack, the challenger asserts that the

22  allegations contained in a complaint are insufficient on their face to invoke federal

23  jurisdiction." Id.  "By contrast, in a factual attack, the challenger disputes the truth of the

24  allegations that, by themselves, would otherwise invoke federal jurisdiction." Id.; see also

25  Terenkian v. Republic of Iraq, 694 F.3d 1122, 1131 (9th Cir. 2012).

26      Even where subject matter jurisdiction requirements are met, various doctrines may

27  preclude a case from proceeding in federal court.  See Schwarzer, Tashima & Wagstaffe,

28  Federal Civil Procedure Before Trial (2014) § 2:4100.  Standing is "an essential and

United States District Court
For the Northern District of California

3

United States District Court

For the Northern District of California

1   unchanging part of the case-or-controversy requirement of Article III" of the United States

2   Constitution. <u>Lujan v. Defenders of Wildlife</u>, 504 U.S. 555, 560 (1992). To establish a

3   "case or controversy" within the meaning of Article III, a plaintiff must, at an "irreducible

4   minimum," show an "injury in fact" which is concrete and not conjectural, as well as actual

5   or imminent; a causal causation between the injury and defendant's conduct or omissions;

6   and a likelihood that the injury will be redressed by a favorable decision. <u>Monsanto Co. v.

7   Geertson Seed Farms</u>, 561 U.S. 139, 149, (2010); <u>Lujan</u>, 504 U.S. at 560-61. Standing is

8   not subject to waiver, and must be considered by the court even if the parties fail to raise it.

9   <u>See</u> <u>United States v. Hays</u>, 515 U.S. 737, 742 (1995).

10          2.      Defendants' Motion

11          Defendants contend that the complaint should be dismissed for lack of subject

12   matter jurisdiction because plaintiff has failed to establish Article III and statutory standing.

13   They assert that she has not alleged an injury-in-fact, and that she does not have standing

14   either to state a claim for prospective injunctive relief, or to bring a class action relating to

15   products she has not alleged she purchased.

16          First, defendants argue that plaintiff lacks standing because she has not alleged that

17   she suffered an injury-in-fact that is "distinct and palpable" as opposed to "merely "abstract"

18   or "conjectural."  In addition, defendants argue, plaintiff lacks standing under the UCL/FAL

19   and CLRA because she has not alleged facts showing that she lost money or property as a

20   result of the defendants' acts.

21          Defendants assert that the thrust of plaintiff's claim is hypothetical – that consumers

22   "risk damaging pipes, septic tanks, and sewage systems" – but that she does not allege

23   that she herself actually suffered any damage to <u>her</u> pipes, septic system, or sewage

24   system, or any other type of economic harm, and does not allege that she used the Scott

25   Naturals® product at any time after 2013 or will do so in the future.  They contend that

26   while plaintiff alleges that unidentified brands of "flushable" wipes have damaged sewer

27   systems in various municipalities, she does not allege that she has personal knowledge of

28   these issues or that they affected her personally in any way.

4

United States District Court

For the Northern District of California

1    In opposition, plaintiff asserts that she was injured by defendants' false advertising

2  and that she has standing to pursue her claims.  She argues that she has alleged actual

3  harm – that she paid "a premium" for a product that Kimberly-Clark advertised as

4  "flushable," because she believed it was a product that was "suitable for" disposal by

5  flushing down a household toilet, but that she later determined the product was not in fact

6  flushable.  She claims that her injury is directly traceable to defendants' actions.

7    Plaintiff contends that she is <u>not</u> suing defendants for the damage their flushable

8  wipes cause to municipal sewage systems, but rather, for the damage caused to

9  consumers by false advertising, which she claims is easily traceable to defendants, as they

10  manufactured the wipes, placed the allegedly false and deceptive statement "flushable" on

11  every package, and reaped the sales resulting from that allegedly false and deceptive

12  statement.

13    Defendants contend that because plaintiff alleges no facts showing that she herself

14  suffered any injury, it follows that defendants caused no injury.  In addition, they assert,

15  plaintiff concedes that there are other brands of wipes on the market, and also that

16  municipalities' plumbing problems can be caused by many factors, including interaction with

17  tree branches, rocks, and other non-flushable items, all of which are outside of Kimberly-

18  Clark's control – further demonstrating a lack of causation.

19    The court finds that this portion of defendants' motion must be DENIED.  In a

20  consumer products false advertising case, Article III's standing requirements may be

21  satisfied by allegations that the plaintiff purchased a product he/she otherwise would not

22  have purchased, or spent more on such a product, in reliance on the alleged

23  misrepresentations.  <u>Kane v. Chobani, Inc.</u>, 973 F.Supp. 2d 1120, 1128 (N.D. Cal. 2014).

24  The plaintiff must also plead a "causal connection" between her alleged injury and her

25  damages.  <u>Bruton v. Gerber Products Co.</u>, 961 F.Supp. 2d 1062, 1088 (N.D. Cal. 2013);

26  <u>Daro v. Superior Court</u>, 151 Cal. App. 4th 1079, 1099 (2007)).

27    In addition to the requirements imposed under Article III, the both the UCL and the

28  FAL require a plaintiff to demonstrate standing by alleging facts showing that she relied on

United States District Court

For the Northern District of California

1   the defendant's alleged misrepresentation and suffered economic injury as a result.  Cal.

2   Bus. & Prof. Code § 17204 (UCL), § 17535 (FAL); see also Kwikset Corp. v. Superior

3   Court, 51 Cal.4th 310, 322 (2011).  Similarly, to bring a case under the CLRA, "[a] plaintiff

4   . . . must not only be exposed to an unlawful practice but also have suffered some kind of

5   damage."  Bower v. AT&T Mobility, LLC, 196 Cal. App. 4th 1545, 1556 (2011) (citation and

6   quotation omitted); see also Durell v. Sharp Healthcare, 183 Cal. App. 4th 1350, 1367

7   (2010).

8          Thus, both Article III standing and standing under the UCL/FAL and CLRA can be

9   established by showing the plaintiff either paid a price premium for a mislabeled product; or

10  would not have purchased the product had he known about the alleged misbranding.

11  Chobani, 973 F.Supp. 2d at 1128; see also Jones v. ConAgra Foods, Inc., 912 F.Supp.2d

12  889, 901 (N.D. Cal. 2012) (allegations that plaintiffs would not have purchased a product

13  had it been labeled accurately held sufficient to establish injury under California's consumer

14  laws); Brazil v. Dole Food Co., 935 F.Supp. 2d 947, 962 (N.D. Cal. 2013) (plaintiff "suffered

15  a concrete and particularized injury . . . [because] he allegedly was deceived, and then paid

16  money that he would not otherwise have paid had he known about the true nature of

17  [d]efendants' products").

18         Here, plaintiff has not alleged that the Scott Naturals® product did not work as

19  promised, or that her own pipes or septic system or her local waste water treatment plant

20  was harmed by her use of the wipes.  Plaintiff has, however, alleged that she suffered

21  economic harm because she would not have paid a premium for the Scott Naturals® wipes

22  had defendants not misrepresented the product as "flushable."  Whether that was in fact a

23  misrepresentation cannot be determined at this stage of the case, but the court finds that

24  plaintiff has satisfied both Article III and statutory standing as to that one product.

25         In their second main argument, defendants assert that plaintiff lacks standing to

26  assert a claim for prospective injunctive relief.  A plaintiff must establish standing for each

27  type of relief sought.  Summers v. Earth Island Inst., 555 U.S. 488, 493 (2009); Castagnola

28  v. Hewlett-Packard Co., 2012 WL 2159385 at *5 (N.D. Cal. June 13, 2012).

United States District Court

For the Northern District of California

1   To seek injunctive relief, a plaintiff must show that he is under threat of
2   suffering injury in fact that is concrete and particularized; the threat must be
    actual and imminent, not conjectural or hypothetical; it must be fairly traceable
3   to the challenged action of the defendant; and it must be likely that a
    favorable judicial decision will prevent or redress the injury."

4   Summers, 555 U.S. at 493 (internal quotation and citation omitted).

5   Defendants contend that in the present case, plaintiff lacks standing for prospective

6   injunctive relief because she has failed to plead facts showing that she is threatened with a

7   "concrete and particularized" legal harm coupled with a sufficient likelihood that she will

8   again be wronged in a similar way.  They assert that in false and misleading advertising

9   cases, there is no likelihood of injury to the plaintiff in the future where she has no intention

10  of again purchasing the product at issue as a result of the defendant's allegedly deceptive

11  advertising.  Thus, they argue, there are no allegations showing how a favorable decision

12  will redress any injury suffered by plaintiff.

13  In opposition, plaintiff contends that she has not alleged that she would never again

14  purchase defendants' flushable wipes, just that she would not have bought them if she had

15  known they were not flushable.  Indeed, she asserts, she "would love to purchase

16  [d]efendants' wipes if they were truly 'flushable,'" and claims that "the [c]omplaint leaves

17  open the possibility that [she] may wish to buy flushable wipes in the future."  However, she

18  argues, unless injunctive relief is granted, she will never know whether a statement on the

19  package that the product is "flushable" is true.  She also contends that the question of

20  entitlement to injunctive relief or the availability of injunctive relief should be deferred until

21  after the factual record has been developed.

22  The court finds that plaintiff lacks standing to seek prospective injunctive relief.  This

23  part of the motion is therefore GRANTED.  To establish a threat of imminent injury, as

24  required to obtain prospective injunctive relief, a plaintiff must allege facts showing that he

25  is "realistically threatened by a repetition of the violation."  Gest v. Bradbury, 443 F.3d

26  1177, 1181 (9th Cir. 2006).  This requirement is additional to the minimum threshold

27  requirements for Article III standing to bring a damages claim.  See Clark v. City of

28  Lakewood, 259 F.3d 996, 1006 (9th Cir. 2001).  The alleged threat cannot be "conjectural"

United States District Court

For the Northern District of California

1   or "hypothetical." City of Los Angeles v. Lyons, 461 U.S. 95, 101-02 (1983).  "Past

2   exposure to illegal conduct does not itself show a present case or controversy regarding

3   injunctive relief if unaccompanied by any continuing, present adverse effects." Lujan, 504

4   U.S. at 564 (internal quotations omitted).

5        To establish standing to seek prospective injunctive relief in connection with a

6   consumer products claim alleging false advertising, a plaintiff must allege facts showing

7   that she intends to purchase the product at issue in the future.  See Rahman v. Mott's LLP,

8   2014 WL 325241, at *10 (N.D. Cal. Jan. 29, 2014); Jou v. Kimberly-Clark Corp., 2013 WL

9   6491158, at *13 (N.D. Cal. Dec. 10, 2013); Mason v. Nature's Innovation, Inc., 2013 WL

10  1969957 at *5 (S.D. Cal. May 13, 2013); Ries v. Arizona Beverages USA LLC, 287 F.R.D.

11  523, 533-34 (N.D. Cal. 2012).  Allegations that a defendant's conduct will subject unnamed

12  class members to the alleged harm is insufficient to establish standing to seek injunctive

13  relief on behalf of the class.  Hodgers-Durgin v. De La Vina, 199 F.3d 1037, 1045 (9th Cir.

14  1999).  Thus, a plaintiff that has no intention of purchasing a product again "cannot rely on

15  the prospect of future injury to unnamed class members for standing." Castagnola, 2012

16  WL 2159385 at *5.

17       Here, plaintiff alleges that she purchased the Scott Naturals® wipes in the belief that

18  the product was "suitable for being disposed of by flushing down the toilet," because she

19  decided it would be "easier and more sanitary to flush the wipes than to dispose of them in

20  the garbage."  However, after forming an opinion that the wipes were not flushable (which

21  was not based on any harm to her plumbing or septic system), she quit using the Scott

22  Naturals® product and never bought it again.  Plaintiff does not allege that she intends to

23  purchase the same Scott Naturals® product again (or any "flushable" product currently

24  manufactured by Kimberly-Clark).

25       Although the facts alleged in the complaint are a bit sketchy, plaintiff contends in her

26  opposition to the motion that she "would love to purchase [d]efendants' wipes if they were

27  truly 'flushable.'"  In other words, plaintiff might consider purchasing Scott Naturals® wipes

28  if the structure or composition of the product were altered so that the wipes are in her

United States District Court

For the Northern District of California

1    opinion "flushable."  She also claims that "the [c]omplaint leaves open the possibility that

2    [she] may wish to buy flushable wipes in the future" (although she does not say where in

3    the complaint that representation might be found).

4         It seems clear from the allegations in the complaint and the arguments in plaintiff's

5    opposition that she has no plans to purchase the <u>same product</u> as to which she seeks

6    prospective injunctive relief, at the same price, even were Kimberly-Clark to remove the

7    word "flushable" from the packaging label.  Moreover, as she has now decided that the

8    Scott Naturals® wipes are not "flushable," she will be unable to allege with regard to any

9    future purchase of the same product that she purchased it in reliance on the "flushable"

10   label.  Thus, because plaintiff has not alleged facts showing a realistic threat that she will

11   be harmed by defendants' use of the term "flushable" on the packaging of the Scott

12   Naturals® product or any of the other "flushable" products currently manufactured by

13   defendants, she lacks standing to seek prospective injunctive relief.

14        In their third main argument, defendants contend that plaintiff lacks standing to

15   represent absent class members with regard to three of the products at issue in the

16   complaint because she never purchased or used those products.  Indeed, they note, she

17   does not even allege that she viewed or relied on the labels of the products she did not

18   purchase or use.  Moreover, they argue, a plaintiff may not make use of the class action

19   procedure under Rule 23 to allege claims she obviously could not pursue were she suing

20   only to assert her own rights.

21        In opposition, plaintiff asserts that she has standing to represent absent class

22   members, and that defendants' argument that she lacks standing to represent purchasers

23   of products she did not purchase is premature and better suited for the argument on class

24   certification.  She contends that plaintiffs are not always limited to representing classes of

25   only those consumers who purchased identical products, and that the theory that

26   purchasers of different flavors or models of products must bring separate lawsuits, has

27   been rejected.  She argues that she has standing to represent purchasers of products she

28   did not use where the products are made out of essentially the same materials and are

United States District Court

For the Northern District of California

1   intended for similar uses, and where the alleged misrepresentations all cause the same

2   type of injury.

3         The court finds that this part of the motion must be DENIED, without prejudice to

4   raising it again at the class certification stage.  District courts in this circuit are split on the

5   question whether a plaintiff has standing to sue on behalf of purchasers of a product the

6   plaintiff himself/herself did not purchase.  See Herskowitz v. Apple Inc., 940 F.Supp. 2d

7   1131, 1149-50 (N.D. Cal. 2013); see also Miller v. Ghirardelli Chocolate Co., 912 F.Supp.

8   2d 861, 868-70 (N.D. Cal. 2012); Astiana v. Dreyer's Grand Ice Cream, Inc., 2012 WL

9   2990766 at *11 (N.D. Cal. July 20, 2012).

10        In general, courts permit plaintiffs to brings claims regarding products they did not

11   purchase where "common misrepresentations are the crux of [the plaintiff's] case."  Brown

12   v. Hain Celestial Grp., 913 F.Supp. 2d 881, 892 (N.D. Cal. 2012); Miller, 912 F.Supp. 2d at

13   869-70.  The "critical inquiry" is "whether there is sufficient similarity between the products

14   purchased and not purchased."  Astiana v. Dreyer's, 2012 WL 2990766, at *11 (different

15   flavors of ice cream carried under different brand names sufficiently similar where same

16   wrongful conduct applied); see also Hendricks v. StarKist Co., __ F.Supp. 2d __, 2014 WL

17   1244770 at *13 (N.D. Cal., March 25, 2014 (consumer who purchased Starkist's tuna

18   products in cans that were allegedly under-filled and substantially underweight had

19   standing to proceed even though he had not purchased all four varieties of tuna sold by

20   Starkist, because complaint alleged same misrepresentations as to all four varieties).

21        Thus, for example, as explained in Astiana v. Dreyer's, where the product that is the

22   subject of a false advertising claim is a food product that comes in different flavors, and

23   every flavor of that product contains the same "un-natural" ingredient, a named plaintiff will

24   have standing to pursue claims based on all the flavors even if she only purchased one.

25   See 2012 WL 2990766 at *13 (N.D. Cal. Apr. 2, 2014) ("That the different ice creams may

26   ultimately have different ingredients is not dispositive as [p]laintiffs are challenging the

27   same basic mislabeling practice across different product flavors.").

28        Where there is sufficient similarity between the products but also material

United States District Court

For the Northern District of California

1  differences among them, concerns regarding the material differences can be addressed at

2  the class certification stage.  Miller, 912 F.Supp. 2d at 869; see also Donohue v. Apple,

3  Inc., 871 F.Supp. 2d 913, 922 (N.D. Cal. 2012) (allowing plaintiff to represent a class of

4  persons who purchased different but similar products reasoning that "questions of whether

5  common issues predominate and whether plaintiff can adequately represent absent class

6  members, [are] issues that are better resolved at the class certification stage.").

7       Here, while the gravamen of the complaint is that defendants falsely represented

8  that the four products listed in the definition of the proposed class were "flushable" (by

9  labeling them "flushable wipes" or "flushable cleansing cloths"), it is unclear whether all four

10  products are substantially the same except for the brand name and packaging details, or

11  whether they are different or distinct from each other in terms of the product design, or in

12  terms of the actual representations made on the packaging or in advertising.

13       Plaintiff contends that all four products are manufactured using the same type of

14  paper, which will hold up in the moist environment inside the packaging; that all four were

15  subjected to the same series of tests for "flushability;" and that all four are marketed the

16  same way.  Defendants claim that each of the four products has a distinct label, and is

17  marketed, priced, and sold differently.  For example, they assert, some of the labels bear

18  the notation, "For best results, flush only one or two cloths at a time," while others do not.

19  Some labels state that the wipes are "sewer and septic safe," while others do not.

20  Moreover, defendants argue, the four products are marketed to different intended users.

21       Based on these and other differences in the products and their labeling, the court is

22  unable to determine at this stage of the litigation whether plaintiff, who admittedly

23  purchased only one of the four products, has standing to represent class members who

24  purchased one or more of the other products.  Accordingly, resolution of this issue must be

25  deferred to the class certification stage.

26  B.    Motion to Dismiss for Failure to State a Claim

27       1.    Legal Standard

28       A motion to dismiss under Federal Rule of Civil Procedure 12(b)(6) tests for the legal

United States District Court

For the Northern District of California

1   sufficiency of the claims alleged in the complaint. Ileto v. Glock, Inc., 349 F.3d 1191,

2   1199-1200 (9th Cir. 2003). Review is limited to the contents of the complaint. Allarcom

3   Pay Television, Ltd. v. Gen. Instrument Corp., 69 F.3d 381, 385 (9th Cir. 1995). To survive

4   a motion to dismiss for failure to state a claim, a complaint generally must satisfy only the

5   minimal notice pleading requirements of Federal Rule of Civil Procedure 8, which requires

6   that a complaint include a "short and plain statement of the claim showing that the pleader

7   is entitled to relief." Fed. R. Civ. P. 8(a)(2).

8          A complaint may be dismissed under Rule 12(b)(6) for failure to state a claim if the

9   plaintiff fails to state a cognizable legal theory, or has not alleged sufficient facts to support

10  a cognizable legal theory. Balistreri v. Pacifica Police Dep't, 901 F.2d 696, 699 (9th Cir.

11  1990). The court is to "accept all factual allegations in the complaint as true and construe

12  the pleadings in the light most favorable to the nonmoving party." Outdoor Media Group,

13  Inc. v. City of Beaumont, 506 F.3d 895, 899-900 (9th Cir. 2007). However, legally

14  conclusory statements, not supported by actual factual allegations, need not be accepted.

15  Ashcroft v. Iqbal, 556 U.S. 662, 678-79 (2009); see also In re Gilead Scis. Sec. Litig., 536

16  F.3d 1049, 1055 (9th Cir. 2008). The allegations in the complaint "must be enough to raise

17  a right to relief above the speculative level." Bell Atlantic Corp. v. Twombly, 550 U.S. 544,

18  555 (2007) (citations and quotations omitted).

19         A claim has facial plausibility when the plaintiff pleads factual content that allows the

20  court to draw the reasonable inference that the defendant is liable for the misconduct

21  alleged." Iqbal, 556 U.S. at 678 (citation omitted). "[W]here the well-pleaded facts do not

22  permit the court to infer more than the mere possibility of misconduct, the complaint has

23  alleged – but it has not 'show[n]' – 'that the pleader is entitled to relief.'" Id. at 679. In the

24  event dismissal is warranted, it is generally without prejudice, unless it is clear the

25  complaint cannot be saved by any amendment. See Sparling v. Daou, 411 F.3d 1006,

26  1013 (9th Cir. 2005).

27         Finally, in actions alleging fraud, "the circumstances constituting fraud or mistake

28  shall be stated with particularity." Fed. R. Civ. P. 9(b). "[A]llegations of fraud must be

United States District Court

For the Northern District of California

specific enough to give defendants notice of the particular misconduct which is alleged to constitute the fraud charged so that they can defend against the charge and not just deny that they have done anything wrong." Bly-Magee v. California, 236 F.3d 1014, 1019 (9th Cir. 2001) (citation and quotations omitted).

Rule 9(b) requires that falsity be pled with specificity, including an account of the "time, place, and specific content of the false representations as well as the identities of the parties to the misrepresentations." Swartz v. KPMG LLP, 476 F.3d 756, 764 (9th Cir. 2007) (citations omitted); see also Kearns v. Ford Motor Co., 567 F.3d 1120, 1124 (9th Cir. 2009) ("[a]verments of fraud must be accompanied by 'the who, what, when, where, and how' of the misconduct charged") (citing Vess v. Ciba-Geigy Corp. USA, 317 F.3d 1097, 1106 (9th Cir. 2003)).  In addition, the plaintiff must do more than simply allege the neutral facts necessary to identify the transaction; he must also explain why the disputed statement was untrue or misleading at the time it was made. Yourish v. California Amplifier, 191 F.3d 983, 992–93 (9th Cir. 1999).

2.    Defendants' motion

Defendants argue that the complaint must be dismissed for failure to state a claim, because she has failed to plead any claim with the degree of particularity required by Rule 9(b), and has also failed to plead facts sufficient to show an actionable omission.

In their first main argument, defendants assert that all of plaintiff's claims sound in fraud, but that she has failed to plead the "who, what, when, where, and how of the misconduct charged." See Kearns, 567 F.3d at 1124.  Defendants argue that plaintiff has failed to allege the specific date she purchased the Scott wipes (apart from "in 2013"), with the result that defendants have not been placed on notice as to the relevant time period, and that plaintiff has not specified which advertising she saw and when, which advertising she relied on and why, when she determined the representations were false, and on what basis she reached that conclusion.

In particular, defendants argue that plaintiff has failed to plead sufficient particular facts showing that she was exposed to the alleged misrepresentations and that she relied

United States District Court

For the Northern District of California

1    on those misrepresentations.  Defendants contend that plaintiff does not allege she viewed

2    the packages of the other three products that she seeks to include in the class, but only

3    claims to have seen the Scott Naturals® product in the Safeway store, and does not allege

4    that she viewed any of the advertisements or websites she references in the complaint.

5    Nor, they assert, does she claim to have seen the other phrases that allegedly appear on

6    labels of the other three products – that the wipes "use a patented technology," that the

7    wipes "break up after flushing," that the wipes are "sewer and septic safe," or that "for best

8    results," the wipes should be flushed "one or two" at a time.  They note that the only term

9    she alleges she saw was the term "flushable" on the Scott Naturals® package.

10       Moreover, defendants assert, plaintiff does not allege how she came to believe that

11   the "flushable" representation was false.  To the extent that this "belief" is based on having

12   viewed publicly available advertisements and websites, which discuss "flushable" products

13   generally, defendants contend that it is unclear from the allegations in the complaint

14   whether plaintiff read those articles before or after she purchased the Scott Naturals®

15   product.  Defendants assert that this is significant because most of the cited articles were

16   published in 2013, not clearly before plaintiff made the alleged purchase.

17       In opposition, plaintiff asserts that the complaint contains all the information

18   necessary to satisfy Rule 9(b).  She notes that the complaint alleges that she viewed the

19   Scott Naturals® package in a San Francisco Safeway store in 2013, where she read the

20   word "flushable" and concluded that because the Scott product was more expensive than

21   other products not labeled "flushable," they must in fact have been specially suitable for

22   flushing down the toilet.  She also alleges that she paid a "premium" to purchase a product

23   that she believed was suitable for flushing.

24       She argues that "who" is defendants, that the "what" is the statement that the wipes

25   are "flushable," that the "when" is 2013 and "within 4 years," that the "where" is on the

26   packages, and that the "how the statements are misleading" is the allegation that the wipes

27   do not disperse or disintegrate like toilet paper and are not regarded as "flushable" by

28   municipalities and "water professionals."  As to the "when," plaintiff takes issue with

United States District Court
For the Northern District of California

1  defendants' assertion that she needs to allege the exact date she purchased the Scott

2  product, as she claims it is sufficient for her to allege she purchased the product during the

3  proposed class period.

4       This part of the motion is GRANTED.  The dismissal is with leave to amend.  To

5  state a claim under either the UCL/FAL or the CLRA, it is necessary to show that members

6  of the public are likely to be deceived.  In re Tobacco II Cases, 46 Cal. 4th 298, 312 (2009).

7  In addition, to maintain a claim under the FAL and CLRA, as well as under any UCL claim

8  premised on fraud or misrepresentation, a plaintiff must plead facts showing that she relied

9  on the defendant's alleged misrepresentation.  See Kwikset, 51 Cal. 4th at 326-27; see also

10 In re Tobacco II Cases, 46 Cal. 4th 298, 326 (2009) ("reliance is the causal mechanism of

11 fraud").[1]

12      Here, plaintiff does not allege that she saw any of defendants' advertisements or

13 websites – let alone that she relied on them in deciding to make her purchase.  She alleges

14 only that she based her decision to purchase the Scott Naturals® wipes on the

15 representation on the package that the wipes were "flushable."  Thus, as to the element of

16 reliance, plaintiff has not pled facts showing that she relied on any representation except as

17 to the "flushable" designation on the Scott Naturals® packaging.  In addition, plaintiff has

18 not alleged facts showing how she came to believe that the Scott Naturals® wipes were not

19 "flushable."  She does not allege that she was unable to flush the product down the toilet,

20 or that the product caused any problems with her pipes, just that after several uses of the

21 wipes she "began to seriously doubt that they were truly flushable."

22      In their second main argument, defendants contend that the allegations in the

23 complaint are insufficient to state a claim under the CLRA or UCL/FAL for fraudulent

24 omissions.  They assert that the complaint suggests that Kimberly-Clark's marketing

25 _____

26      [1]  Neither side addresses the third cause of action for common law fraud separately

27 from the statutory consumer fraud claims.  The elements of a claim of common law fraud are
   misrepresentation (false representation, concealment, or nondisclosure), knowledge of falsity,
   intent to defraud (intent to induce reliance), reasonable reliance, and resulting damage, Gil v.

28 Bank of America Nat. Ass'n, 138 Cal. App. 4th 1371, 1381 (2006).  The court does not
   consider whether or to what extent the fraud cause of action fails to state a claim.

United States District Court

For the Northern District of California

statements are false and deceptive because the wipes are "not regarded as flushable by municipal sewage systems," but argue that plaintiff herself has conceded that Kimberly-Clark's representation that the wipes are "flushable" is based on industry standards and extensive testing (although she also discounts the "industry standards" on the basis that they are set by INDA, which she describes as a "lobbying association for manufacturers of flushable wipes").

Moreover, defendants argue, nothing on the package indicates that every municipality in the country (or even California) agrees as to whether the wipes are flushable – and plaintiff does claim that Kimberly-Clark has some obligation to consumers to educate them as to whether municipalities are in agreement on this question.  Thus, they contend, the alleged omission is not "contrary to a representation actually made by the defendant" and cannot form the basis of a claim of fraudulent omission.

Defendants also argue that because a reasonable interpretation of the word "flushable" is "can be flushed," the use of this word cannot form the basis of an omission claim.  In the complaint, plaintiff cites a definition of "flushable" from the on-line merriam-webster.com – "suitable for disposal by flushing down a toilet."  Defendants assert, however, that there are a variety of dictionary definitions of "flushable," such as "able to be flushed down a toilet without causing an obstruction," Webster's New World College Dictionary (4th ed. 2010); and "of a size which admits of disposal down a toilet" (including examples such as "flushable diaper," "flushable cardboard applicator," "flushable goldfish"), Oxford English Dictionary (2010).  Defendants contend that these definitions would not pass muster under plaintiff's proposed definition, under which toilet paper would be the only type of paper product that is flushable.

In opposition, plaintiff contends that her "omissions" claims are actionable, and that under California law all she is required to plead is that defendants made partial representations but omitted to disclose some material fact necessary to make the statement not misleading.  Here, she asserts, Kimberly-Clark omitted from the product packaging any disclaimers or information clarifying what is meant by the term "flushable."

16

United States District Court

For the Northern District of California

1  In plaintiff's view, "flushable" means the product is "suitable for disposal down a household

2  toilet."  She contends that if Kimberly-Clark intended any definition other than the one she

3  proposes – for example, that the wipes "can" be flushed, even if not "suitable" for flushing –

4  then it was required to say so.  She argues that this "omission" renders the statement

5  "flushable" false and misleading.

6      This part of the motion is DENIED because it is not capable of resolution in a Rule

7  12(b)(6) motion.  A plaintiff can state a cause of action for fraudulent omission under the

8  UCL/CLRA when the omission is "contrary to a representation actually made by the

9  defendant," or the omission was of a fact the defendant was obligated to disclose.  Ehrlich

10  v. BMW of North Am., 801 F.Supp. 2d 908, 916 (C.D. Cal. 2010); see also Falk v. Gen.

11  Motors Corp., 496 F.Supp. 2d 1088, 1094-95 (N.D. Cal. 2007) (citing Daugherty v.

12  American Honda Motor Car Co., Inc., 144 Cal. App. 4th 824, 834 (2006)).

13      To allege a duty to disclose, a plaintiff must show that the defendant (1) is in a

14  fiduciary relationship with the plaintiff; (2) had exclusive knowledge of material facts not

15  known to the plaintiff; (3) actively concealed a material fact from the plaintiff; or (4) made

16  partial representations but also suppresses some material fact.  LiMandri v. Judkins, 52

17  Cal. App. 4th 326, 336 (1997).  A fact is deemed material, and obligates an exclusively

18  knowledgeable defendant to disclose it, if a reasonable consumer would deem it important

19  in determining how to act in the transaction at issue.  See Collins v. eMachines, Inc., 202

20  Cal. App. 4th 249, 256 (2011); see also Doyle v. Chrysler Group LLC, 2014 WL 3361770 at

21  *4 (C.D. Cal. July 3, 2014); Elias v. Hewlett-Packard Co., 950 F.Supp. 2d 1123, 1134-35

22  (N.D. Cal. 2013).

23      It is not clear whether plaintiff's claim is that the alleged omission was contrary to a

24  representation actually made by the defendants, or that defendants had a duty to disclose

25  to her (or to the public) that the wipes might not totally disperse between the time they are

26  flushed and the time they arrive at the waste water treatment plant.  The core allegation is

27  that the packaging for the Scott Naturals® product that plaintiff purchased stated that the

28  product was "flushable," which plaintiff claims was deceptive because even though she was

17

United States District Court

For the Northern District of California

able to flush the wipes down the toilet, they were not "suitable" for flushing because they might/could/did fail to completely disintegrate on their trip to the sewage treatment plant, and Kimberly-Clark failed to advise her of that possibility.

However, that argument is based on a premise that, if not exactly faulty, is at a minimum unsupported. Strictly speaking, something is "flushable" if it is "able to be flushed." Plaintiff's argument appears to be that the definition of "flushable" necessarily includes what happens to the item that is flushed, from the time it is flushed until it reaches its ultimate destination (septic system or waste-water treatment plant). Because of the dispute regarding the definition of "flushable," the court is unable to determine whether the "omissions" claim is or is not viable at this stage of the litigation.

C.      Motion to Strike

    1.      Legal Standard

The function of a motion to strike under Federal Rule of Civil Procedure 12(f) is to avoid the expenditure of time and money that must arise from litigating spurious issues by dispensing with those issues prior to trial . . . ." Whittlestone, Inc. v. Handi-Craft Co., 618 F.3d 970, 973 (9th Cir. 2010) (quotation and citation omitted). In order to determine whether to grant a motion to strike under Rule 12(f), the court must determine whether the matter the moving party seeks to have stricken is an insufficient defense; redundant; immaterial; impertinent; or scandalous. Id. at 973-74.

Motions to strike are not favored and "should not be granted unless it is clear that the matter to be stricken could have no possible bearing on the subject matter of the litigation." Colaprico v. Sun Microsystem, Inc., 758 F.Supp. 1335, 1339 (N.D. Cal. 1991). When a court considers a motion to strike, it "must view the pleading in a light most favorable to the pleading party." In re 2TheMart.com, Inc. Sec Lit., 114 F Supp. 2d 955, 965 (C.D. Cal. 2000). A court must deny the motion to strike if there is any doubt whether the allegations in the pleadings might be relevant in the action. Id.

    2.      Defendants' Motion

Defendants seek an order striking ¶¶ 24-30, 32, 33, 35, 36, 38, 39, 54, and 57-69 of

United States District Court

For the Northern District of California

the complaint as immaterial, impertinent, and irrelevant to the action.  Paragraphs 24-30, 39, 54, and 57-69 describe and cite on-line articles and websites regarding problems caused by disposable or "flushable" wipes at municipal waste-water treatment plants and sewage systems, most of which (to the extent they are identified) are outside the San Francisco area.  Paragraphs 32, 33, 35, and 36 discuss statements appearing on various labels used on the three "flushable" products that plaintiff did not purchase.  Paragraphs 33 and 38 discuss on-line advertising for "flushable" products that plaintiff did not purchase.

Defendants argue that because plaintiff does not allege that she saw or relied on the representations on labels of products she did not purchase, or that she saw or relied on on-line advertising for any of the products at issue, the allegations in ¶¶ 32, 33, 35, 36, and 38 should be stricken as immaterial and impertinent to the claims in the case.  They also assert that plaintiff does not allege that she read and relied on the various on-line articles and websites referenced in the complaint, ¶¶ 24-30, 39, 54, and 57-69, and that the articles and websites relating to municipal waste-water treatment plants are irrelevant in any case because with one exception they relate to municipalities outside of San Francisco, and should also be stricken from the complaint.

In opposition, plaintiff argues that the allegations regarding advertising on which she did not rely – including allegations relating to defendants' marketing of "flushable" wipes, the "ad campaigns," defendants' "marketing campaigns," and the "deceptive advertising" used in that marketing, in which the four products identified in the proposed class definition are referenced – should not be stricken because they are potentially relevant to showing an extensive and long-term advertising campaign" to market the products as "flushable" and to convince consumers that the wipes were "suitable for flushing" down a toilet.  She argues that because a plaintiff need not plead and prove individualized reliance on misrepresentations that are part of an extensive and long-term advertising campaign, such allegations have a place in the complaint.

In support, she cites In re Tobacco Cases II, where the California Supreme court held that in a UCL fraud case, the plaintiff is not required to allege that the defendant's

United States District Court

For the Northern District of California

1   misrepresentations were the sole or decisive cause of the injury-causing conduct.

> [W]here, as here, a plaintiff alleges exposure to a long-term advertising
> campaign, the plaintiff is not required to plead with an unrealistic degree of
> specificity that the plaintiff relied on particular advertisements or statements.
> . . . [W]e conclude that a plaintiff must plead and prove actual reliance to satisfy the
> standing requirement of section 17204 but . . . is not required to necessarily
> plead and prove individualized reliance on specific misrepresentations or false
> statements where, as here, those misrepresentations and false statements
> were part of an extensive and long-term advertising campaign.

7   Id., 46 Cal. 4th at 328.

8       As for the on-line reports/articles and websites describing harm caused by

9   "flushable" wipes at waste-water treatment plants, plaintiff asserts that the facts alleged in

10   those paragraphs are relevant because they demonstrate that defendants' claim that the

11   wipes were "flushable" was false.

12       The motion is GRANTED in part and DENIED in part.  With regard to allegations

13   regarding products that plaintiff did not purchase and advertising she did not view, those

14   allegations may be relevant to whether plaintiff can assert UCL/FAL or CLRA claims on

15   behalf of a proposed class as to such products or advertising.  Thus, because those

16   allegations may have some potential relevance, they will not be stricken.

17       Nevertheless, the court finds that the holding in Tobacco Products II is inapposite to

18   this case.  Here, the "injury-causing conduct" is the representation on the package that the

19   Scott Naturals® wipes were "flushable," which is allegedly what led plaintiff to purchase

20   them.  Plaintiff nowhere alleges that she was influenced to purchase the Scott Naturals®

21   product because of defendants' long-term advertising campaign.  Nor does she allege that

22   she saw any advertisements or was aware of any – only that one day while shopping at

23   Safeway, she "came across" the Scott Naturals® product and decided to buy it based on

24   the representation that it was "flushable," and also based on her own interpretation of that

25   word as meaning "suitable for" disposal by being flushed down the toilet.

26       With regard to the allegations citing on-line articles/reports and websites discussing

27   harm caused by "flushable" wipes to municipal treatment plants, the court agrees that those

28   allegations are irrelevant and immaterial, particularly because plaintiff does not allege that

**United States District Court**
For the Northern District of California

1   she read or even was aware of such articles and websites.  Plaintiff does not allege that

2   she "began to seriously doubt" that the Scott Naturals® product she purchased was not

3   "truly flushable" because she read the articles describing problems caused by "flushable"

4   wipes, just that she made that decision based on her own observations.

5        Thus, the allegations regarding sewage/septic systems and municipal waste

6   treatment plants (in Carlsbad, Bakersfield, Orange County, San Francisco County, Contra

7   Costa County, El Dorado Hills – all in California – and in locations in the states of Arizona,

8   Washington, Illinois, Virginia, Florida, Texas, and Arkansas) have no relevance to plaintiff.

9   See generally Cplt ¶¶ 17-69.  Morever, those allegations do not demonstrate that

10  defendants' claim that the products at issue were "flushable" was false, as they address

11  "flushable wipes" in general; no mention is made of any of Kimberly-Clark's products.

**CONCLUSION**

13       In accordance with the foregoing, defendants' motion is GRANTED in part and

14  DENIED in part.  The motion to dismiss for lack of subject matter jurisdiction is DENIED,

15  with the exception of the claim for prospective injunctive relief.  The motion to dismiss for

16  failure to state a claim is GRANTED, with the exception of the claim for fraudulent

17  omissions.  The dismissal is WITH LEAVE TO AMEND where indicated above.  The motion

18  to strike is DENIED, with the exception of the allegations regarding on-line reports/articles

19  and websites regarding problems caused by disposable or "flushable" wipes at various

20  municipal waste-water treatment plants and sewage systems.

21       Any amended complaint shall be filed within 28 days of the date of this order, and

22  may not assert new claims or add new parties without leave of court or stipulation of all

23  parties.

25  **IT IS SO ORDERED.**

26  Dated:  August 8, 2014

27       _____
         PHYLLIS J. HAMILTON
         United States District Judge