**GUTRIDE SAFIER LLP**
ADAM J. GUTRIDE (State Bar No. 181446)
SETH A. SAFIER (State Bar No. 197427)
KRISTEN G. SIMPLICIO (State Bar No. 263291)
835 Douglass Street
San Francisco, California 94114
Telephone: (415) 271-6469
Facsimile:  (415) 449-6469

Attorneys for Plaintiff

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

OAKLAND DIVISION

| | |
|---|---|
| JENNIFER DAVIDSON, an individual, on behalf of herself, the general public and those similarly situated,<br><br>　　　　Plaintiff,<br><br>　　　　v.<br><br>KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; and KIMBERLY-CLARK GLOBAL SALES LLC,<br><br>　　　　Defendants. | CASE NO.  14-CV-1783-PJH<br><br>UNLIMITED CIVIL CASE<br><br>FIRST AMENDED CLASS ACTION COMPLAINT FOR VIOLATION OF THE CALIFORNIA CONSUMERS LEGAL REMEDIES ACT; FALSE ADVERTISING; FRAUD, DECEIT, AND/OR MISREPRESENTATION; AND UNFAIR BUSINESS PRACTICES |

Jennifer Davidson, by and through her counsel, brings this Class Action Complaint against Defendants Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC on behalf of herself and those similarly situated, for violations of the Consumer Legal Remedies Act, false advertising, fraud, deceit and/or misrepresentation, and unfair trade practices. The following allegations are based upon information and belief, including the investigation of Plaintiff's counsel, unless stated otherwise.

## INTRODUCTION

1.      Defendants deceptively market several brands of personal hygiene moistened wipes ("wipes") as "flushable." They charge a premium for these wipes, as compared to both toilet paper and to wipes that are not marketed as "flushable." Despite the label, however, the wipes are not actually flushable, as they are not suitable for disposal by flushing down a toilet. Defendants obtained substantial profits from these deceptive sales. This action seeks to require Defendants to pay restitution and damages to purchasers of the wipes and to remove the word "flushable" from their packaging and marketing.

## PARTIES

2.      Jennifer Davidson ("Plaintiff") is, and at all times alleged in this Class Action Complaint was, an individual and a resident of San Francisco, California.

3.      Defendant Kimberly-Clark Corporation is a corporation incorporated under the laws of the Delaware, having its principal place of business in Neenah, Wisconsin.

4.      Defendant Kimberly-Clark Worldwide, Inc. is a corporation incorporated under the laws of the Delaware, having principal places of business in Irving, Texas and Neenah, Wisconsin.

5.      Defendant Kimberly-Clark Global Sales, LLC is a corporation incorporated under the laws of the Delaware, having its principal place of business in Irving, Texas.

6.      The Parties identified in paragraphs 3-5 of this Class Action Complaint are collectively referred to hereafter as "Defendants" or "Kimberly-Clark."

7.      At all times herein mentioned, each of the Defendants was the agent, servant, representative, officer, director, partner or employee of the other Defendants and, in doing the

things herein alleged, was acting within the scope and course of his/her/its authority as such agent, servant, representative, officer, director, partner or employee, and with the permission and consent of each Defendant.

8.      At all times herein mentioned, Defendants, and each of them, were members of, and engaged in, a joint venture, partnership and common enterprise, and acting within the course and scope of, and in pursuance of, said joint venture, partnership and common enterprise.

9.      At all times herein mentioned, the acts and omissions of Defendants, and each of them, concurred and contributed to the various acts and omissions of each and all of the other Defendants in proximately causing the injuries and damages as herein alleged.

10.      At all times herein mentioned, Defendants, and each of them, ratified each and every act or omission complained of herein.  At all times herein mentioned, the Defendants, and each of them, aided and abetted the acts and omissions of each and all of the other Defendants in proximately causing the damages, and other injuries, as herein alleged.

## JURISDICTION AND VENUE

11.      This action is brought by Plaintiff pursuant, *inter alia*, to the California Business and Professions Code, section 17200, *et seq.*  Plaintiff and Defendants are "persons" within the meaning of the California Business and Professions Code, section 17201.

12.      The injuries, damages and/or harm upon which this action is based, occurred or arose out of activities engaged in by Defendants within, affecting, and emanating from, the State of California.

13.      Defendants have engaged, and continue to engage, in substantial and continuous business practices in the State of California, including in San Francisco County.

14.      In accordance with California Civil Code Section 1780(d), Plaintiff filed a declaration establishing that, in 2013, she purchased at least one Kimberly-Clark product in San Francisco.

15.      Plaintiff accordingly alleges that jurisdiction and venue are proper in this Court.

## SUBSTANTIVE ALLEGATIONS

16.      Defendants are manufacturers and marketers of consumer product goods,

particularly paper products, including toilet paper, tissues, paper towels, feminine hygiene products, diapers, and baby wipes.  Their products are widely available for purchase in supermarkets, drug stores, and other retailers.   Among their biggest brands are Kleenex, Scott, Huggies, and Kotex. Other brands include Viva, Thick & Thirsty, Poise, Depends, and Cottonelle.

17.     Among the products manufactured by Defendants are a variety of pre-moistened cloths (a.k.a. "wipes").  This case focuses on four such pre-moistened cloths manufactured and marketed by Kimberly-Clark. These products are:

a.     Kleenex® Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths ("Cottonelle Wipes")

b.     Scott Naturals® Flushable Moist Wipes ("Scott Wipes")

c.     Huggies® Pull-Ups® Flushable Moist Wipes ("Huggies Wipes")

d.      U by Kotex® Refresh flushable wipes ("Kotex Wipes")

In this Complaint, these products will be collectively referred to as the "Flushable Wipes."

18.     Reasonable consumers understand the word "flushable" to mean suitable for disposal down a toilet.  Yet none of the Flushable Wipes are safe and appropriate for flushing down a toilet.  Unlike truly flushable products, such as toilet paper, which disperse and disintegrate within seconds or minutes, the Flushable Wipes take hours to begin to break down. As a result of the slow dispersement process, the Flushable Wipes, when subjected to ordinary, consumer use, are likely to, and routinely (1) clog household pipes; (2) clog septic tanks and cause damage to septic pumps; and (3) cause blockages and damage to municipal sewage lines and pumps, often due to proclivity of the Flushable Wipes to tangle with each other and with other debris and form large masses or ropes.  Because of these likely outcomes, it is false, misleading and deceptive to market the wipes as "flushable."

**(1) All of Defendants' Flushable Wipes Are Marketed and Sold as "Flushable."**

19.     Defendants advertise that their Flushable Wipes are "flushable" in a substantially identical manner.

20.     On the front of the Cottonelle Wipes package, Defendants advertise the product as

1    "FLUSHABLE MOIST WIPES" or as "flushable cleansing cloths."





21          One of the packages further represents that the wipes are "SEWER AND SEPTIC

22   SAFE.*"  No disclaimer appears to be associated with the asterisk.  On the back of the package,

23   Defendants represent that "Cottonelle Fresh Care Flushable Cleansing Cloths break up after

24   flushing."  On the backs of some packages of the Cottonelle Wipes, Defendants further state, "For

25   best results, flush only one or two cloths at a time," but this warning does not appear on all

26   packages, such as the smaller, travel size package of wipes.

27          21.     On the website for the Cottonelle Wipes, Defendants inform consumers that the

28   "flushable wipes use a patented dispersible technology, which means that when used as directed

they break up after flushing and clear properly maintained toilets, drainlines, sewers, pumps, and

septic and municipal treatment systems." *See* https://www.cottonelle.com/products/cottonelle-

fresh-care-flushable-moist-wipes#faqs (last accessed Feb. 6, 2014).  The website goes on to claim

that the Cottonelle Wipes are "Flushable," "Break up after flushing," and are "Sewer- and septic-

safe." *Id.*

   22.    On the front of the Scott Wipes package, Defendants similarly advertise the

product as "Flushable Cleansing Cloths" and represent that each of the wipes "breaks up after

flushing."



   On the back of the package, Defendants go on to state that "Scott Naturals* Flushable

Cleansing Cloths break up after flushing and are sewer and septic system safe.  For best results,

flush only one or two cleansing cloths at a time."  No disclaimer appears to be associated with the

asterisk.  The back of the package also states that the "flushable" cloths are "Septic Safe" and that

each wipe "Breaks up after flushing."

   23.    On the front of the Huggies Wipes package, Defendants similarly describe the

product as "flushable moist wipes."

1

2

3

4

5

6

7

8

9

10

11



12    On the back, Defendants represent that the wipes are "Septic Safe" and that each "Breaks

13 up after flushing," and only advise "For best results, flush only one or two wipes at a time." On

14 the website for the Huggies Wipes, Defendants claim the wipes are "sewer and septic safe and

15 break up after flushing." *See* http://www.pull-ups.com/products (last accessed Sept. 5, 2014).

16    24.    On the front of the Kotex Wipes package, Defendants likewise represent that the

17 product is "flushable.'

18

19

20

21

22

23

24



25

26 Defendants provide little additional information on the back, only reiterating that the product is

27 "Flushable!"

28    25.    Defendants do not disclose on the packaging or advertising for any of the

Flushable Wipes that the wipes are not suitable for disposal by flushing down a toilet; are not regarded as flushable by municipal sewage system operators; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like toilet paper.

### (2) Defendants Charge a Premium Price For Flushable Wipes.

26.    Defendants charge a premium for the wipes labeled as "flushable" compared to other wipes that are not so labeled.  For example, a 42-count package of "flushable" Cottenelle Wipes costs $4.99 at a Target in Albany, California, whereas a 40-count package of Wet Ones, a popular brand of wipes not labeled "flushable," costs $2.29.

27.    A 51-count package of "flushable" Scott Wipes retails for $6.01 on Amazon.com, also considerably more than the Wet Ones, which sell for $2.28 on that website.

28.    Similarly, a 24 count package of "flushable" Kotex Wipes retails for $4.28 on Amazon.com, whereas a 40 count package of Always® Clean Feminine Wipes, a wipe not marketed as "flushable," retails on Amazon.com for $3.27.  The Kotex Wipes are also significantly more expensive than the non-flushable Wet Ones.

29.    A consumer can buy 420 "flushable" Huggies Wipes for $22.49 on Amazon.com. In contrast, a 448 Huggies Soft Skin Baby Wipes, a product not labeled "flushable" and manufactured by Defendants, sells for $11.97, half the cost of the "flushable" Huggies Wipes. Other baby wipes not labeled "flushable" are similarly much lower priced.  For example, a 448 count box of Pampers® Sensitive Wipes sells for $10.97 on Amazon.com.  A 350 count package of Seventh Generation® "Original Soft and Gentle Free & Clear Baby Wipes" sells for $12.99 on Amazon.com.

30.    The representation of "flushability" commands a premium because customers perceive that it is more convenient, sanitary, and environmentally responsible to flush a wipe than to throw it in the trash.  If Defendants informed consumers that the Flushable Wipes were not suitable for flushing down a toilet, and that doing so created a subsantial risk that the consumers would clog or damage their household plumbing, or clog, damage and increase the costs of municipal sewage treatment systems (which they bear as taxpayer and ratepayers), they would not pay the premium, but rather, would opt to purchase the cheaper items not labeled "flushable."

**(3) Reasonable Consumers Understand The Word "Flushable" To Mean "Suitable For Disposal By Flushing Down a Toilet."**

31.    Many objects and materials theoretically are capable of passing from a toilet to the pipes after one flushes, such as paper towels, newspaper, jewelry, small toys, or cotton swabs, but that does not mean that such objects or materials are "flushable."  Rather, the word "flushable" means in reasonable usage not just that the object or material may under optimal conditions pass from the toilet through the household pipes, but that the object or material is *appropriate or suitable* to regularly flush down a toilet without causing damage to the septic or sewage system or the environment.

32.    An example is useful.  Imagine a child who throws his small toys in the toilet, and says "Look Mommy, my toys will flush!" A reasonable parent will reprimand the child that toys are not flushable.  If the child responds, "But Mommy, they *do* flush," the answer is clear: "Yes, they might flush but they are not *flushable*."  That is because reasonable people understand "flushable" to mean *suitable* for flushing.

33.    The common understanding of the word "flushable" is borne out by dictionary definitions. Indeed, the Merriam-Webster dictionary gives the following as the sole definition of flushable: "*suitable* for disposal by flushing down a toilet." *See* http://www.merriam-webster.com/dictionary/flushable, last visited August 28, 2014 (emphasis supplied).

34.    The common understanding of the word "flushable" is also borne out by usage within the industry.  For example, the Water Environment Federation (WEF), a nonprofit association of water quality professionals, has explained that:

> Anything labeled as flushable should start to break apart during the flush and completely disperse within 5 minutes… Our mantra is, 'It's not flushable if it's not dispersible' . . .

*See* http://news.wef.org/stop-dont-flush-that/ (last accessed August 28, 2014) (internal quotations omitted).  WEF further reports that unless wipes disperse like toilet paper, they are "mislabeled" as "flushable" because they are not suitable for disposal by flushing.  *Id.*  Similar statements have been made by the California Association of Sanitation Agencies, the San Francisco Public Utilities Commission, and the East Bay Municipal Utility District. *See* respectively

http://www.casaweb.org/flushable-wipes (last accessed August 29, 2014);

http://www.sfexaminer.com/sanfrancisco/flushable-wipes-cause-problematic-backups-at-local-

sewage-plants/Content?oid=2514283 (last accessed August 29, 2014);

https://www.ebmud.com/water-and-wastewater/pollution-prevention/residential-pollution-

prevention (last accessed August 29, 2014).

35.    Defendants' own marketing statements also show that they intend consumers to

understand the word "flushable" to mean not only that the wipes are *capable* of passing through a

toilet but that they are *suitable* for disposal in that way.  For example, as described *supra* in

paragraphs 20-23, the packages of the Flushable Wipes represent both that they are flushable and

that they are "sewer and septic system safe."  Defendants also created a Frequently Asked

Questions page on their website to assure consumers that the Flushable Wipes are "safe to flush,"

in which they state:

> The flushability of Kimberly-Clark® products is tested in accordance with
> trade association guidelines. These guideline tests demonstrate that when
> used as directed, our wipes clear properly maintained toilets, drainlines,
> sewers and pumps, and ***are compatible with on-site septic and municipal
> treatment.*** Cottonelle® Flushable Cleansing Cloths are flushable due to
> patented technology that allows them to lose strength and ***break up when
> moving through the system after flushing***. Watch our video to learn more
> about the tests that Cottonelle® flushable wipes go through to ensure their
> flushability.

https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes#faqs (last

accessed August 29, 2014) (emphasis supplied). A nearly identical statement appears on the

webpage for Scott Wipes. *See* http://www.scottbrand.com/faq#flushablemoistwipes (last accessed

August 29, 2014).  Further, Defendants state that their "trade association guidelines" measure not

only whether the wipes are capable of passing from toilet through household pipes without

clogging, but also whether they will complete seven stages of flushing – from the home disposal

stage all the way to the municipal treatment stage.

36.    Additionally, Defendants advertise the Flushable Wipes as a substitute for toilet

paper and market them to be used as part of a bathroom routine (Cottonelle Wipes and Scott

Wipes), as part of feminine hygiene (Kotex Wipes), and as part of potty training (Huggies

Wipes).  Defendants have run an advertising campaign entitled "Let's Talk About Your Bum,"

consisting of a webpage and various commercials.  The campaign tells consumers that "bums deserve the ultimate in fresh and clean," and the commercials encourage consumers to use the Flushable Wipes in their bathroom routines.  Defendants ran another commercial that featured a woman holding up both toilet paper and Cottonelle Wipes, while her family debated whether the routine of using both in the bathroom should be called "Southern hospitality," the "clean getaway" or the "freshy fresh."  Because Defendants encourage consumers to associate the Flushable Wipes with bathroom routines, the result is that consumers believe that the wipes are flushable like toilet paper, when in fact, they are not suitable for flushing down a toilet.

37.    Defendants further contribute to consumer confusion by pricing their Flushable Wipes higher than their other consumer wipes that are not advertised as "flushable."  Consumers presented with the large price discrepancy between the wipes labeled "flushable" and wipes not so labeled are led to believe that the more expensive Flushable Wipes are a special kind of product suitable for flushing, unlike the cheaper products that do not contain that representation, when in fact, neither set of products is suitable for disposal in that manner.

38.    Defendants' deceptive conduct has been extremely successful at persuading consumers to purchase the Flushable Wipes.  In 2007, Defendants reported to investors that sales for Defendants' Cottonelle and Scott flushable wipes "continued to grow at a strong double-digit rate." *See* http://www.cms.kimberly-clark.com/umbracoimages/UmbracoFileMedia/2007%20Annual%20Report_umbracoFile.pdf (last accessed Feb. 24, 2014).  In 2012, the "flushable wipes" market accounted for 14% of the $4 billion a year pre-moistened wipes market, and it is predicted that the market will grow six percent a year for the next few years. *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last accessed August 28, 2014). As of 2014, sales were still expected to grow. *See* http://www.contracostatimes.com/news/ci_24156213/popular-bathroom-wipes-blamed-sewer-clogs (last accessed Feb. 24, 2014).

**(4) Defendants' Wipes Are Not Suitable For Disposal By Flushing Down a Toilet.**

39.     Defendants' Flushable Wipes are not in fact flushable, because the wipes are not suitable for disposal by flushing down a household toilet.

**(4)(1) All of Defendants' Wipes Are Manufactured to Remain Durable in Wet Conditions Rather Than to Disperse and Degrade.**

40.     The Flushable Wipes are all manufactured using the same proprietary paper blend, for which Defendants own the patent.  To manufacture the paper, Defendants use an "air-laid" process, which creates strong knots of fibers that will not break down easily when submersed in water.  Unlike toilet paper, which is a dry paper product designed to fall apart in water, all of the Flushable Wipes are sold as pre-moistened products, and thus, the paper used to make them is designed to withstand months of soaking in a wet environment.  Defendants make the paper so strong, in fact, that it cannot efficiently disperse when placed in the water in a toilet.

**(4)(2) All Defendants' Wipes Are Subject to the Same Flawed "Flushability" Test That Does Not Test Whether the Wipes Are Suitable For Disposal By Flushing Down a Toilet.**

41.     Defendants represent that all their Flushable Wipes "are labeled as flushable meet or exceed the current industry guidelines for assessing the flushability of non-woven products." *See* http://www.kimberly-clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last accessed September 4, 2014). These guidelines, however, do not adequately measure the Wipes' suitability for disposal by flushing down the toilet.  The guidelines were created by the Association of the Nonwoven Fabrics Industry (the "INDA"), a lobbying association for manufacturers of flushable wipes, including Defendants, which fights aggressively against governmental efforts to regulate the sale of flushable wipes or use of the word "flushable."  The INDA guidelines encourage manufacturers of flushable wipes to conduct a series of seven tests before labeling their products as "flushable."  But a closer look at those tests reveals flaws in their design and demonstrates that merely passing these self-serving guidelines does not mean the wipes are flushable.

42.     For example, Defendants note that their Flushable Wipes pass test "FG502" known as the "Slosh Box Disintegration Test."  According to Defendants' website, the test "[a]ssesses the potential for a product to disintegrate (or break up) when it is subjected to mechanical agitation in water." *See* http://www.kimberly-

clark.com/safetoflush/faq/SafeToFlushFAQ.pdf (last accessed September 4, 2014). To conduct the test, the test material is placed in a box of water. Testers then agitate the water, often by simulating the swirl of a toilet flush or the movement of water in a pipe, and see how long it takes for the test material to disintegrate. Defendants and INDA have agreed that the standard for "passing" this test is not that the product performs like toilet paper or disintegrates during a flush. Rather, the test only requires that after **three hours of agitation** in the slosh box, more than **25%** of the wipe passes through a 12.5 milimeter (roughly a half inch) sieve **80%** of the time. *See* http://www.njwea.org/pdf/2013-guidelines-for-assessing-the-flushability-of-disposable-nonwoven-product.pdf (last accessed Feb. 24, 2014) (emphasis supplied). In other words, the test is still *passed even if after more than **three hours** of agitation, nearly **three-quarters** of the material is **unable** to pass through the pipe.*

43.    When subject to the Slosh Box Disintegration Test, a typical piece of toilet paper begins to break down as soon as the water in the slosh box begins to move, and is completely disintegrated within in a few seconds. *See* http://www.consumerreports.org/cro/video-hub/home--garden/bed--bath/are-flushable-wipes-flushable/16935265001/22783507001/ (last accessed Feb. 21, 2014). Thus, when flushed down a toilet, toilet paper will likely break into particles within seconds after flushing. (Id.) In comparison, the Flushable Wipes do not even begin to disintegrate immediately after flushing. (Id.) Rather, Defendants' own website reveals that the Wipes ***begin*** to break down ***35 minutes*** after flushing, and take ***hours*** to completely disperse. *See* http://www.kimberly-clark.com/newsroom/media_resources/safetoflush.aspx?print=true (last accessed Feb. 21, 2014). This extremely slow disintegration time means that wipes are likely to get clogged in the pipes during flushing.

44.    While Defendants represent that the wipes' rate of disintegration roughly mimics the amount of time it takes for a wipe to reach the sewage treatment plant, wipes can reach a sewage treatment pump in much less time, sometimes as quickly as a few minutes. *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last accessed August 28, 2014). Further, the moist lotion used in manufacturing certain wipes results

in them traveling faster through sewer pipes than ordinary products. *See* http://www.woai.com/articles/woai-local-news-119078/disposable-wipes-causing-nightmare-for-san-11718265/ (last accessed August 28, 2014).

45.     Nearly all the INDA-designed tests are further flawed as they do not similuate real-world conditions.  For example, sewer systems typically move sewage to the plant via gravity.  *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last accessed August 28, 2014).  Thus, the flowing water in municipal systems is not as hard on the wipes as the mechanically agitated water in some of Defendants' tests, meaning that they will not break down as quickly in real-world pipes as they do in Defendants' lab simulated tests. (Id.)  Both the Slosh Box test described in Paragraph 42 and Test FG505, the "Aerobic Biodisintegration" test, assess the wipes' abilities to disintegrate under constantly agitated water. *See* http://www.njwea.org/pdf/2013-guidelines-for-assessing-the-flushability-of-disposable-nonwoven-product.pdf (last accessed Feb. 24, 2014).  Since the Flushable Wipes are unlikely to be subjected to the same agitating water as they are subjected to in Defendants' lab, the tests are not reliable predictors of whether the Flushable Wipes are suitable for flushing down a toilet.  The result is that many of the Flushable Wipes arrive at the sewage treatment plant intact or insufficiently broken down.

46.     The tests used by Defendants are further flawed in that they fail to take into account the wipes' propensity for "ragging."  After being flushed down the toilet, some brands of flushable wipes have a propensity to tangle amongst one another and with other debris and form long ropes that can fill sewer lines for tens of feet. *See* http://www.hsconnect.com/page/content.detail/id/590706/Concerns-on-wipes-no-laughing-matter.html?nav=5005 (last accessed Feb. 24, 2014).  The tests used by Defendants however, assume that their Wipes are passing through sewage pipes and pumps one at a time, instead of in clumps of rags and ropes.  Because Defendants only test one or two Wipes at a time and do not evaluate the Wipes performance when subjected to real world conditions, such as the presence of other "flushable" wipes and other debris in the sewer, their tests do not take into consideration the

risk that their Wipes might tangle with these other items. The bigger the mass of wipes, the slower the disintegration time. *See* http://www.washingtonpost.com/local/trafficandcommuting/flushable-personal-wipes-clogging-sewer-systems-utilities-say/2013/09/06/9efac4e6-157a-11e3-a2ec-b47e45e6f8ef_story.html (last accessed August 28, 2014).

47.     The test FG507, the Municipal Pump Test, which evaluates the wipes' "compatibility" with municipal pumping systems, is flawed for the same reason. To conduct that test, Defendants feed one wipe into the pump every ten seconds. *See* http://www.kimberly-clark.com/newsroom/media_resources/safetoflush.aspx (last accessed Feb. 24, 2014). There is no reasonable basis for Defendants' assumption that in the real world, ten seconds will pass between the arrival of each new wipe from all households at the pump. Even if ten seconds was the "average" interval in the real world for arrival of each new wipe, the laws of probability require that the interval will often be much shorter, and that frequently multiple wipes will arrive simultaneously. In addition, the test does not account for the fact that prior to arriving at the pump, many wipes will likely entangle with other wipes and debris. Thus, the test is a poor predictor of the wipes "compatability" with municipal pumping systems.

**(4)(3) Municipalities' Reports Show That Defendants' Flushable Wipes Are Not Suitable For Flushing**

48.     Municipalities all over the country have experienced numerous problems that have been tied specifically to Defendants' Flushable Wipes.

49.     For example, in Bakersfield, California, the city found that none of the brands of "flushable" wipes tested, including Defendants' Cottonelle Wipes, actually broke apart in the sewer; instead, they ended up as giant clogs at the treatment plant.



*See* http://www.turnto23.com/news/local-news/bakersfield-sewer-systems-keep-getting-clogged-because-of-flushable-bathroom-wipes-092413 (last accessed August 28, 2014). As a result of the Flushable Wipes failure to flush and clear pipes, crews of three or four workers in Bakersfield must regularly visit the city's 52 sewage lift stations to cut up the balls of wipes that clog the lift stations.  If they do not, there is a risk that back flow damage will spill inside homes. The city has documented one of the clogs:



*Id.*

50.    In Jacksonville Beach, Florida, in response to city official concerns, a news outlet broadcasted a "Consumer Alert" to explain that while Cottonelle and Scott Wipes are advertised

as being able to be flushed, "there is little truth in the advertisements." *See*
http://www.news4jax.com/news/officials-flushable-wipes-clog-pipes/-/475880/23740904/-
/t5h2vrz/-/index.html (last accessed August 28, 2014).



Rather, the reporters explained, Defendants' Flushable Wipes do not break apart after
being flushed and clog pipes and pumps. The reporters quoted city estimates that because of the
time and money expended in dealing with clogs, consumers pay higher plumbing repair costs and
higher taxes. The city released a photo that demonstrates the extent to which wipes, such as
Defendants,' have clogged the pumps:



*Id.*

51.    In San Antonio, Texas, the San Antonio Water System has said that flushable

wipes, including specifically the Flushable Wipes made by Defendants, are clogging up sewers in ways in which sewer workers have never seen before. See http://www.woai.com/articles/woai-local-news-119078/disposable-wipes-causing-nightmare-for-san-11718265/ (last accessed August 28, 2014).  Sewer workers are responding to dozens of clogs, and to repair, they retreive large "rope like mass[es]" from the pipes.  *Id.*

## PLAINTIFF'S EXPERIENCE

52.     In 2013, Plaintiff desired to purchase moist wipes for household use.  While shopping for wipes at a Safeway store located at 2020 Market Street, San Francisco, California, Plaintiff came across Defendants' Scott Naturals® Flushable Moist Wipes.  Seeing that the wipes had the word "Flushable" on the front of the package and that the product was more expensive than other wipes that did not have that word, she believed that the product had been specially designed to be suitable for flushing down toilets.  Plaintiff was concerned that products not suitable for flushing down the toilet could cause problems in her plumbing or at the water treatment plant. Several years prior to her purchase, Plaintiff had visited San Francisco's sewage treatment plant as part of a school trip, and she learned there that people frequently flush things that should not be flushed, which causes many problems with the wastewater treatment. Because she did not wish to cause unnecessary damage to her plumbing, nor to city property or the environment, Plaintiff reviewed both the front and back of the package. She did not see anything that led her to believe that the wipes were not in fact suitable for flushing.  Because she believed it would be easier and more sanitary to flush the wipes than to dispose of them in the garbage, she decided to pay the higher price, and purchased the Scott Wipes for a few dollars.

53.     Plaintiff began using the wipes.  She noticed that each individual wipe felt very sturdy and thick, unlike toilet paper. She also noticed that the wipes did not break up in the toilet bowl like toilet paper but rather remained in one piece.  After several uses of the wipes, she began to become concerned that they were not truly flushable, so she stopped flushing the wipes and stopped using the product altogether.

54.     A few months later, Plaintiff investigated the matter further and learned of the widespread damage caused to consumers' home plumbing and to municipal sewer systems as a

result of consumers flushing the Flushable Wipes. This research further increased her concerns that the Wipes were not in fact appropriate for disposal by flushing down a toilet.

55.     Plaintiff has not subsequently purchased any of Defendants' Flushable Wipes.

56.     Had Defendants not misrepresented (by omission and commission) the true nature of their Flushable Wipes, Plaintiff would not have purchased Defendants' product or, at a very minimum, she would have paid less for the product since she would not be obtaining the benefit of being able to flush it.

57.     Plaintiff continues to desire to purchase wipes that are suitable for disposal in a household toilet.  She would purchase truly flushable wipes manufactured by Defendants if it were possible to determine prior to purchase if the wipes were suitable to be flushed.  Indeed, she regularly visits stores such as Safeway, where Defendants' "flushable" wipes" are sold, but has been unable to determine the flushability of the wipes currently on the shelves.  Without purchasing and opening a package, Plaintiff cannot feel the thickness of the paper or see if it degrades in her toilet.  Plaintiff knows that the design and construction of the Flushable Wipes may change over time, as Defendants use different technology or respond to pressure from legislators, government agencies, competitors or environmental organizations.  But as long as Defendants may use the word "Flushable" to describe non-flushable wipes, then when presented with Defendants' packaging on any given day, Plaintiff continues to have no way of determining whether the representation "flushable" is in fact true.

**OTHER CONSUMERS HAVE BEEN SIMILARLY DECEIVED**

58.     Numerous consumers have complained that Defendants' Wipes are falsely labeled as "flushable" because they are not suitable for disposal by flushing down a household toilet.  For example on Defendants' own website, numerous consumers have complained of damage caused by the wipes to their household plumbing:

> sugah - August 15, 2014
> just had to pay over 300.00 today , from using cottonelle flushable cleansing cloths!!! had to have a plumber first and then a septic tank cleaned, just 2 of us living here and have previously only had to have tank cleaned yearly, we were told and shown the cloths that had caused the blockage !! of course we will never use them again. this are very false statements on you package. they are not sewer and septic safe..just ask anyone who has just experienced what we have today, I will

make sure all my friend know about this... you should be called out on this, we are retired, and this is not in the budget !!!

Richard - June 24, 2013
A few months after flushing the wipes down my toilets and into my septic system it clogged the underground filter. I had the 1000 gallon storage tank pumped and it was disgustingly obvious that the Cottonelle wipes were the culprit. They do not break down like toilet paper or even close. Do not use them if you are on a septic system. If you read Kimberly Clark's claim for septic systems you will see that it is written to confuse the consumer. It focuses on "flushability" which only gets these things down the toilet but not through a septic system.

Kenneth - June 1, 2013
I tried a free sample and it did breakdown like toilet paper. I purchased this nice package (36 or 42 ?? nothing on wrapping indicating count). Being on a septic I checked to ensure it was also going to break down. No matter how hard I mashed and put in jar with water, heavy agitation it would not break apart. This is not suitable for a septic!!!

tlkflat - April 24, 2013
DO NOT use with the newer rural waste water treatment systems like a JET system. They will clog the booster pump and then tangle in the air pump spinner, VERY costly repair.

Doug - March 18, 2013
Flushable Wipes are NOT flushable. Sure, they'll flush. Then they will clog your pipes ... always. It may not be today or tomorrow, but they will clog. At my bed and breakfast I have to have the plumbers out at least 4 times a year to clear our lines. It is ALWAYS flushable wipes. BAD PRODUCT.

*See* https://www.cottonelle.com/products/cottonelle-fresh-care-flushable-moist-wipes/review (last accessed September 3, 2014).

## CLASS ALLEGATIONS

59.     Plaintiff brings this action against Defendants on behalf of herself and all others similarly situated, as a class action pursuant to Rule 23 of the Federal Rules of Civil Procedure. Plaintiff seeks to represent a group of similarly situated persons (the "Class"), defined as follows:

All persons who, between March 13, 2010 and the present, purchased, in California, any of the following products: Cottonelle® Fresh Care Flushable Wipes & Cleansing Cloths, Scott Naturals® Flushable Moist Wipes, Huggies® Pull-Ups® Flushable Moist Wipes, and U by Kotex® Refresh flushable wipes.

60.     This action has been brought and may properly be maintained as a class action against Defendants pursuant to Rule 23, as there is a well-defined community of interest in the litigation and the proposed class is easily ascertainable.

61.     Numerosity:  Plaintiff does not know the exact size of the class, but it is estimated

that it is composed of more than 100 persons.  The persons in the class are so numerous that the

joinder of all such persons is impracticable and the disposition of their claims in a class action

rather than in individual actions will benefit the parties and the courts.

62.    Common Questions Predominate:  This action involves common questions of law

and fact to the potential class because each class member's claim derives from the deceptive,

unlawful and/or unfair statements and omissions that led Defendants' customers to believe that

the Non-Flushable Wipes were flushable.   The common questions of law and fact predominate

over individual questions, as proof of a common or single set of facts will establish the right of

each member of the Class to recover.  Among the questions of law and fact common to the class

are:

a)    Whether reasonable consumers understand the word "flushable" to mean "suitable

for flushing down a toilet;"

b)    Whether Defendants' Flushable Wipes are suitable for flushing down a toilet;

c)    Whether Defendants unfairly, unlawfully and/or deceptively failed to inform class

members that their Flushable Wipes were not flushable;

d)    Whether Defendants' advertising and marketing regarding their Flushable Wipes

sold to class members was likely to deceive class members or was unfair;

e)    Whether Defendants engaged in the alleged conduct knowingly, recklessly, or

negligently;

f)    The amount of revenues and profits Defendants received and/or the amount of

monies or other obligations lost by class members as a result of such wrongdoing;

g)    Whether class members are entitled to injunctive and other equitable relief and, if

so, what is the nature of such relief; and

h)    Whether class members are entitled to payment of actual, incidental,

consequential, exemplary and/or statutory damages plus interest thereon, and if so, what is the

nature of such relief.

63.    Typicality:  Plaintiff's claims are typical of the class because, in 2013, she

purchased one of the Flushable Wipes, namely Defendants' Scott® Naturals Flushable Moist

Wipes, in reliance on Defendants' misrepresentations and omissions that they were flushable. Thus, Plaintiff and class members sustained the same injuries and damages arising out of Defendants' conduct in violation of the law.  The injuries and damages of each class member were caused directly by Defendants' wrongful conduct in violation of law as alleged.

64.     Adequacy:  Plaintiff will fairly and adequately protect the interests of all class members because it is in her best interests to prosecute the claims alleged herein to obtain full compensation due to her for the unfair and illegal conduct of which she complains.  Plaintiff also has no interests that are in conflict with or antagonistic to the interests of class members.  Plaintiff has retained highly competent and experienced class action attorneys to represent her interests and the interests of the class.  By prevailing on her own claim, Plaintiff will establish Defendants' liability to all class members.  Plaintiff and her counsel have the necessary financial resources to adequately and vigorously litigate this class action, and Plaintiff and counsel are aware of their fiduciary responsibilities to the class members and are determined to diligently discharge those duties by vigorously seeking the maximum possible recovery for class members.

65.     Superiority:  There is no plain, speedy, or adequate remedy other than by maintenance of this class action.  The prosecution of individual remedies by members of the class will tend to establish inconsistent standards of conduct for the Defendants and result in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties.  Class action treatment will permit a large number of similarly situated persons to prosecute their common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of effort and expense that numerous individual actions world engender.  Furthermore, as the damages suffered by each individual member of the class may be relatively small, the expenses and burden of individual litigation would make it difficult or impossible for individual members of the class to redress the wrongs done to them, while an important public interest will be served by addressing the matter as a class action.

66.     Nexus to California.  The State of California has a special interest in regulating the affairs of corporations that do business here.  Defendants have more customers here than in any other state.  Accordingly, there is a substantial nexus between Defendants' unlawful behavior and

California such that the California courts should take cognizance of this action on behalf of a class of individuals who reside anywhere in the United States.

67.    Plaintiff is unaware of any difficulties that are likely to be encountered in the management of this action that would preclude its maintenance as a class action.

## CAUSES OF ACTION

### PLAINTIFF'S FIRST CAUSE OF ACTION
**(Violation of the Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.*)**
**On Behalf of Herself and the Class**

68.    Plaintiff realleges and incorporates the paragraphs of this Class Action Complaint as if set forth herein.

69.    This cause of action is brought pursuant to the California Consumers Legal Remedies Act, California Civil Code § 1750, *et seq.* ("CLRA").

70.    Defendants' actions, representations and conduct have violated, and continue to violate the CLRA, because they extend to transactions that are intended to result, or which have resulted, in the sale or lease of goods or services to consumers.

71.    Plaintiff and other class members are "consumers" as that term is defined by the CLRA in California Civil Code § 1761(d).

72.    The Flushable Wipes that Plaintiff (and others similarly situated class members) purchased from Defendants were "goods" within the meaning of California Civil Code § 1761(a).

73.    By engaging in the actions, representations and conduct set forth in this Class Action Complaint, Defendants have violated, and continue to violate §§ 1770(a)(2), 1770(a)(5), § 1770(a)(7), 1770(a)(8), and 1770(a)(9) of the CLRA.  In violation of California Civil Code §1770(a)(2), Defendants' acts and practices constitute improper representations regarding the source, sponsorship, approval, or certification of the Flushable Wipes.  In violation of California Civil Code §1770(a)(5), Defendants' acts and practices constitute improper representations that the Flushable Wipes have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities, which they do not have.  In violation of California Civil Code §1770(a)(7), Defendants' acts and practices constitute improper representations that the Flushable Wipes are of a particular standard, quality, or grade, when they are of another.  In violation of California Civil

Code §1770(a)(8), Defendants have disparaged the goods, services, or business of another by false or misleading representation of fact.  In violation of California Civil Code §1770(a)(9), Defendants have advertised the Flushable Wipes with intent not to sell them as advertised. Specifically, in violation of sections 1770 (a)(2), (a)(5), (a)(7) and (a)(9), Defendants' acts and practices led customers to falsely believe that that their Flushable Wipes were suitable for flushing down a toilet.  In violation of section 1770(a)(8), Defendants falsely or deceptively market and advertise that, unlike products not specifically denominated as flushable, its Flushable Wipes are suitable for flushing down a toilet, when in fact none of the products are suitable for flushing.

74.     Plaintiff requests that this Court enjoin Defendants from continuing to employ the unlawful methods, acts and practices alleged herein pursuant to California Civil Code § 1780(a)(2).  If Defendants are not restrained from engaging in these types of practices in the future, Plaintiff and the other members of the Class will continue to suffer harm.

75.     More than thirty days prior to the filing of this First Amended Class Action Complaint, Plaintiff gave notice and demand that Defendants correct, repair, replace or otherwise rectify the unlawful, unfair, false and/or deceptive practices complained of herein.  Defendants failed to do so in that, among other things, they failed to identify similarly situated customers, notify them of their right to correction, repair, replacement or other remedy; and provide that remedy.  Accordingly, Plaintiff seeks, pursuant to California Civil Code § 1780(a)(3), on behalf of herself and those similarly situated class members, compensatory damages, punitive damages and restitution of any ill-gotten gains due to Defendants' acts and practices.

76.     Plaintiff also requests that this Court award her her costs and reasonable attorneys' fees pursuant to California Civil Code § 1780(d).

**PLAINTIFF'S SECOND CAUSE OF ACTION**
**(False Advertising, Business and Professions Code § 17500, et seq. ("FAL"))**
**On Behalf Of Herself and the Class**

77.     Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

78.     Beginning at an exact date unknown to Plaintiff, but within three (3) years

1    preceding the filing of the Class Action Complaint, Defendants made untrue, false, deceptive

2    and/or misleading statements in connection with the advertising and marketing of their Flushable

3    Wipes.

4          79.     Defendants made representations and statements (by omission and commission)

5    that led reasonable customers to believe that they were purchasing products that were suitable for

6    flushing. Defendants deceptively failed to inform Plaintiff, and those similarly situated, that their

7    Flushable Wipes were not suitable for disposal by flushing down a toilet, and that the Flushable

8    wipes are not regarded as flushable by municipal sewage systems; routinely damage or clog

9    pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like toilet

10   paper.

11         80.     Plaintiff and those similarly situated relied to their detriment on Defendants' false,

12   misleading and deceptive advertising and marketing practices, including each of the

13   misrepresentations and omissions set forth in paragraphs 20-25, 30, 35-36, and 52, above.   Had

14   Plaintiff and those similarly situated been adequately informed and not intentionally deceived by

15   Defendants, they would have acted differently by, without limitation, refraining from purchasing

16   Defendants' Flushable Wipes or paying less for them.

17         81.     Defendants' acts and omissions are likely to deceive the general public.

18         82.     Defendants engaged in these false, misleading and deceptive advertising and

19   marketing practices to increase their profits.  Accordingly, Defendants have engaged in false

20   advertising, as defined and prohibited by section 17500, *et seq.* of the California Business and

21   Professions Code.

22         83.     The aforementioned practices, which Defendants used, and continue to use, to

23   their significant financial gain, also constitute unlawful competition and provide an unlawful

24   advantage over Defendants' competitors as well as injury to the general public.

25         84.     Plaintiff seeks, on behalf of herself and those similarly situated, full restitution of

26   monies, as necessary and according to proof, to restore any and all monies acquired by

27   Defendants from Plaintiff, the general public, or those similarly situated by means of the false,

28   misleading and deceptive advertising and marketing practices complained of herein, plus interest

1    thereon.

2        85.    Plaintiff seeks, on behalf of herself and those similarly situated, an injunction to

3    prohibit Defendants from continuing to engage in the false, misleading and deceptive advertising

4    and marketing practices complained of herein.  The acts complained of herein occurred, at least in

5    part, within three (3) years preceding the filing of the Class Action Complaint.

6        86.    Plaintiff and those similarly situated are further entitled to and do seek both a

7    declaration that the above-described practices constitute false, misleading and deceptive

8    advertising, and injunctive relief restraining Defendants from engaging in any such advertising

9    and marketing practices in the future.  Such misconduct by Defendants, unless and until enjoined

10   and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the

11   general public and the loss of money and property in that the Defendants will continue to violate

12   the laws of California, unless specifically ordered to comply with the same.  This expectation of

13   future violations will require current and future customers to repeatedly and continuously seek

14   legal redress in order to recover monies paid to Defendants to which Defendants are not

15   entitled.  Plaintiff, those similarly situated and/or other consumers nationwide have no other

16   adequate remedy at law to ensure future compliance with the California Business and Professions

17   Code alleged to have been violated herein.

18       87.    As a direct and proximate result of such actions, Plaintiff and the other members of

19   the Class have suffered, and continue to suffer, injury in fact and have lost money and/or property

20   as a result of such false, deceptive and misleading advertising in an amount which will be proven

21   at trial, but which is in excess of the jurisdictional minimum of this Court.

22                    **PLAINTIFF'S THIRD CAUSE OF ACTION**
                     **(Fraud, Deceit and/or Misrepresentation)**
23                    **On Behalf of Herself and the Class**

24       88.    Plaintiff realleges and incorporates by reference the paragraphs of this Class

25   Action Complaint as if set forth herein.

26       89.    In 2013, Defendants fraudulently and deceptively led Plaintiff to believe that

27   Defendants' Flushable Wipes were suitable for flushing down a toilet.  Defendants also failed to

28   inform Plaintiff that Defendants' Flushable Wipes were not suitable for disposal by flushing

down a toilet; are not regarded as flushable by municipal sewage system operators; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodgrade like toilet paper.

90.     These omissions were material at the time they were made.  They concerned material facts that were essential to the analysis undertaken by Plaintiff as to whether to purchase Defendants' Flushable Wipes.

91.     Defendants made identical misrepresentations and omissions to members of the Class regarding Defendants' Flushable Wipes.

92.     In not so informing Plaintiff and the members of the Class, Defendants breached their duty to her and the Class members.  Defendants also gained financially from, and as a result of, their breach.

93.     Plaintiff and those similarly situated relied to their detriment on Defendants' fraudulent omissions.  Had Plaintiff and those similarly situated been adequately informed and not intentionally deceived by Defendants, they would have acted differently by, without limitation, not purchasing (or paying less for) Defendants' Flushable Wipes.

94.     Defendants had a duty to inform class members at the time of their purchase that the Flushable Wipes were not suitable for flushing down a toilet; are not regarded as flushable by municipal sewage system operators; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biodrade like toilet paper. Defendants omitted to provide this information to class members.  Class members relied to their detriment on Defendants' omissions.  These omissions were material to the decisions of the class members to purchase the Flushable Wipes.  In making these omissions, Defendants breached their duty to class members.  Defendants also gained financially from, and as a result of, their breach.

95.     By and through such fraud, deceit, misrepresentations and/or omissions, Defendants intended to induce Plaintiff and those similarly situated to alter their position to their detriment.  Specifically, Defendants fraudulently and deceptively induced Plaintiff and those similarly situated to, without limitation, purchase their Flushable Wipes.

96.     Plaintiff and those similarly situated justifiably and reasonably relied on

Defendants' omissions, and, accordingly, were damaged by the Defendants.

97.    As a direct and proximate result of Defendants' misrepresentations, Plaintiff and those similarly situated have suffered damages, including, without limitation, the amount they paid for the Flushable Wipes.

98.    Defendants' conduct as described herein was willful and malicious and was designed to maximize Defendants' profits even though Defendants knew that it would cause loss and harm to Plaintiff and those similarly situated.

**PLAINTIFF'S FOURTH CAUSE OF ACTION**
**(Unfair, Unlawful and Deceptive Trade Practices,**
**Business and Professions Code § 17200, *et seq.*)**
**On Behalf of Herself and the Class**

99.    Plaintiff realleges and incorporates by reference the paragraphs of this Class Action Complaint as if set forth herein.

100.    Within four (4) years preceding the filing of the Class Action Complaint, and at all times mentioned herein, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices in California by engaging in the unfair, deceptive and unlawful business practices described in this Class Action Complaint.   In particular, Defendants have engaged, and continue to engage, in unfair, unlawful and deceptive trade practices by, without limitation, the following:

a.    deceptively representing to Plaintiff, and those similarly situated, that the Flushable Wipes are suitable for flushing down a toilet;

b.    failing to inform Plaintiff, and those similarly situated, that the Flushable Wipes: are not suitable for disposal by flushing down a toilet; are not regarded as flushable by municipal sewage systems; routinely damage or clog pipes, septic systems, and sewage pumps; and do not disperse, distingrate, or biobgrade like toilet paper.

c.    engaging in fraud, deceit, and misrepresentation as described herein;

d.    violating the CLRA as described herein; and

e.    violating the FAL as described herein.

101.    Plaintiff and those similarly situated relied to their detriment on Defendants'

unfair, deceptive and unlawful business practices. Had Plaintiff and those similarly situated been adequately informed and not deceived by Defendants, they would have acted differently by not purchasing (or paying less for) Defendants' Flushable Wipes.

102. Defendants' acts and omissions are likely to deceive the general public.

103. Defendants engaged in these unfair practices to increase their profits. Accordingly, Defendants have engaged in unlawful trade practices, as defined and prohibited by section 17200, *et seq.* of the California Business and Professions Code.

104. The aforementioned practices, which Defendants have used to their significant financial gain, also constitute unlawful competition and provide an unlawful advantage over Defendants' competitors as well as injury to the general public.

105. Plaintiff seeks, on behalf of those similarly situated, full restitution of monies, as necessary and according to proof, to restore any and all monies acquired by Defendants from Plaintiff, the general public, or those similarly situated by means of the unfair and/or deceptive trade practices complained of herein, plus interest thereon.

106. Plaintiff seeks, on behalf of those similarly situated, an injunction to prohibit Defendants from continuing to engage in the unfair trade practices complained of herein.

107. The acts complained of herein occurred, at least in part, within four (4) years preceding the filing of this Class Action Complaint.

108. Plaintiff and those similarly situated are further entitled to and do seek both a declaration that the above-described trade practices are unfair, unlawful and/or fraudulent, and injunctive relief restraining Defendants from engaging in any of such deceptive, unfair and/or unlawful trade practices in the future. Such misconduct by Defendants, unless and until enjoined and restrained by order of this Court, will continue to cause injury in fact to Plaintiff and the general public and the loss of money and property in that Defendants will continue to violate the laws of California, unless specifically ordered to comply with the same. This expectation of future violations will require current and future customers to repeatedly and continuously seek legal redress in order to recover monies paid to Defendants to which Defendants are not entitled. Plaintiff, those similarly situated and/or other consumers nationwide have no other

adequate remedy at law to ensure future compliance with the California Business and Professions Code alleged to have been violated herein.

109.    As a direct and proximate result of such actions, Plaintiff and the other members of the Class have suffered and continue to suffer injury in fact and have lost money and/or property as a result of such deceptive, unfair and/or unlawful trade practices and unfair competition in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.   Among other things, Plaintiff and the class lost the amount they paid for the Flushable Wipes.

110.    As a direct and proximate result of such actions, Defendants have enjoyed, and continue to enjoy, significant financial gain in an amount which will be proven at trial, but which is in excess of the jurisdictional minimum of this Court.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiff prays for judgment as follows:

A.    On Cause of Action Number 1 against Defendants and in favor of Plaintiff and the other members of the Class for:

1.    restitution and injunctive relief pursuant to California Civil Code section 1780;

2.    actual damages, the amount of which is to be determined at trial;

3.    punitive damages, the amount of which is to be determined at trial; and

4.    statutory damages as provided by Civil Code section 1780(b), the amount of which is to be determined at trial.

B.    On Causes of Action Numbers 2 and 4 against Defendants and in favor of Plaintiff and the other members of the Class for:

1.    restitution pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*; and

2.    injunctive relief pursuant to, without limitation, the California Business & Professions Code §§ 17200, *et seq.* and 17500, *et seq.*

C.    On Cause of Action Number 3 against Defendants and in favor of Plaintiff and the other members of the Class:

First Amended Class Action Complaint

1.      an award of compensatory damages, the amount of which is to be determined at trial; and

2.      an award of punitive damages, the amount of which is to be determined at trial.

D.     On all causes of action against Defendants and in favor of Plaintiff, class members and the general public for:

1.      reasonable attorneys' fees according to proof pursuant to, without limitation, the California Legal Remedies Act and California Code of Civil Procedure § 1021.5;

2.      costs of suit incurred; and

3.      such further relief as this Court may deem just and proper.

## JURY TRIAL DEMANDED

Plaintiff hereby demands a trial by jury.

Dated:  September 5, 2014           **GUTRIDE SAFIER LLP**

_____
Adam J. Gutride, Esq.
Seth A. Safier, Esq.
Kristen G. Simplicio, Esq.
835 Douglass Street
San Francisco, California 94114

Attorneys for Plaintiff

First Amended Class Action Complaint