**FOR PUBLICATION**

# UNITED STATES COURT OF APPEALS
## FOR THE NINTH CIRCUIT

| | |
|---|---|
| JENNIFER DAVIDSON, an individual on behalf of herself, the general public and those similarly situated, *Plaintiff-Appellant*, | No. 15-16173 |
| | D.C. No. 4:14-cv-01783-PJH |
| v. | |
| KIMBERLY-CLARK CORPORATION; KIMBERLY-CLARK WORLDWIDE, INC.; KIMBERLY-CLARK GLOBAL SALES, LLC, *Defendants-Appellees.* | ORDER AND AMENDED OPINION |

Appeal from the United States District Court
for the Northern District of California
Phyllis J. Hamilton, Chief Judge, Presiding

Argued and Submitted May 18, 2017
San Francisco, California

Filed October 20, 2017
Amended May 9, 2018

2        DAVIDSON V. KIMBERLY-CLARK CORP.

Before:  Marsha S. Berzon and Mary H. Murguia, Circuit
Judges, and Jon P. McCalla,[*] District Judge.

Order;
Opinion by Judge Murguia;
Concurrence by Judge Berzon

## SUMMARY[**]

### False Advertising / Standing

The panel issued an order amending the opinion and
concurrence filed on October 20, 2017, and denying on
behalf of the court a petition for rehearing en banc.  In the
amended opinion, the panel reversed the district court's
dismissal of a complaint in an action, brought in state court
against Kimberly-Clark Corporation and removed to federal
court pursuant to the Class Action Fairness Act, alleging that
Kimberly-Clark falsely advertised that four types of
cleansing wipes they manufactured and sold were flushable.

Davidson sought to recover the premium she paid for the
allegedly flushable wipes, as well as an order requiring
Kimberly-Clark to stop marketing their wipes as flushable.
The first amended complaint adequately
alleged that Kimberly-Clark's use of the word "flushable"
was false because the wipes plaintiff purchased did not

---

[*] The Honorable Jon P. McCalla, United States District Judge for
the Western District of Tennessee, sitting by designation.

[**] This summary constitutes no part of the opinion of the court.  It
has been prepared by court staff for the convenience of the reader.

disperse as a truly flushable product would have.  The panel
further held that plaintiff was not required to allege damage
to her plumbing or pipes.   Under California law, the
economic injury of paying a premium for a falsely advertised
product was sufficient harm to maintain a cause of action.
Because plaintiff only needed to allege an economic injury
to state a claim for relief, and because plaintiff alleged that
she paid a premium price for the wipes, plaintiff properly
alleged that she was injured by Kimberly-Clark's allegedly
false advertising.

The panel held that the district court erred by dismissing
the original complaint on the ground that plaintiff failed to
allege facts showing how she came to believe that the wipes
were not flushable.  The panel stated that it was aware of no
authority that specifically required a plaintiff bringing a
consumer fraud claim to allege how she "came to believe"
that the product was misrepresented when, as in this case, all
the Fed. R. Civ. P. 9(b) considerations had been met.

Finally, the panel held that a previously deceived
consumer may have standing to seek an injunction against
false advertising or labeling, even though the consumer now
knows or suspects that the advertising was false at the time
of the original purchase, because the consumer may suffer
an actual or imminent threat of future harm.  The panel held
that because plaintiff's allegations sufficiently identified a
certainly impending risk of her being subjected to Kimberly-
Clark's allegedly false advertising, she had standing to
pursue injunctive relief.

Judge Berzon concurred fully in the majority opinion but
wrote separately to note that duplicating the standing
analysis – as the majority did for prospective relief by
performing a separate standing analysis for each "form of

relief" – did not give effect to the "case or controversy" requirement of Article III.

---

## COUNSEL

Matthew T. McCrary (argued), Kristen G. Simplicio, Seth A. Safier, and Adam J. Gutride, Gutride Safier LLP, San Francisco, California, for Plaintiff-Appellant.

Constantine L. Trela, Jr. (argued), Sidley Austin LLP, Chicago, Illinois; Michelle Goodman and Amy Lally, Sidley Austin LLP, Los Angeles, California; Naomi Igra, Sidley Austin LLP, San Francisco, California; William R. Levi, Eamon P. Joyce, and Kwaku A. Akowuah, Sidley Austin LLP, Washington, D.C.; for Defendants-Appellees.

Anton Metlitsky, O'Melveny & Myers LLP, New York, New York; Deanna M. Rice, O'Melveny & Myers LLP, Washington, D.C.; Janet Galeria and Warren Postman, U.S. Chamber Litigation Center Inc., Washington, D.C.; Leland P. Frost, Quentin Riegel, and Linda E. Kelly, Manufacturers' Center for Legal Action, Washington, D.C.; Karin F.R. Moore, Grocery Manufacturers Association, Washington, D.C.; for Amici Curiae Chamber of Commerce of the United States of America, National Association of Manufacturers, and Grocery Manufacturers Association.

## ORDER

The opinion and concurrence filed October 20, 2017, and appearing at 873 F.3d 1103, is hereby amended.   An amended opinion and concurrence is filed herewith.  Judges Berzon and Murguia have voted to deny the petition for rehearing en banc, and Judge McCalla so recommends.

The full court has been advised of the petition for rehearing en banc and no judge has requested a vote on whether to rehear the matter en banc.  Fed. R. App. P. 35.

The petition for rehearing en banc is **DENIED** (Doc. 57).

No further petitions for rehearing or rehearing en banc will be entertained in this case.

## OPINION

MURGUIA, Circuit Judge:

Under California's consumer protection laws, a consumer who pays extra for a falsely labeled or advertised product may recover the premium she paid for that product. California law also permits that consumer to seek a court order requiring the manufacturer of the product to halt its false advertising.  California has decided that its consumers have a right, while shopping in a store selling consumer goods, to rely upon the statements made on a product's packaging.  Today, we hold that misled consumers may properly allege a threat of imminent or actual harm sufficient to confer standing to seek injunctive relief.  A consumer's inability to rely on a representation made on a package, even

if the consumer knows or believes the same representation was false in the past, is an ongoing injury that may justify an order barring the false advertising.

In this case, Jennifer Davidson paid extra for wipes labeled as "flushable" because she believed that flushable wipes would be better for the environment, and more sanitary, than non-flushable wipes. Davidson alleges that the wipes she purchased, which were manufactured and marketed by Kimberly-Clark Corporation, were not, in fact, flushable. Davidson seeks to recover the premium she paid for the allegedly flushable wipes, as well as an order requiring Kimberly-Clark to stop marketing their wipes as "flushable." Davidson has plausibly alleged that Kimberly-Clark engaged in false advertising. Davidson has also plausibly alleged that she will suffer further harm in the absence of an injunction. We therefore reverse the district court and remand this case for further proceedings.

## I. BACKGROUND

### A.  Factual Allegations[1]

Defendants-appellees Kimberly-Clark Corporation, Kimberly-Clark Worldwide, Inc., and Kimberly-Clark Global Sales, LLC (collectively "Kimberly-Clark") manufacture and market four types of pre-moistened wipes: Cottonelle Wipes, Scott Wipes, Huggies Wipes, and Kotex Wipes. Each of the four products is marketed and sold as "flushable." Kimberly-Clark charges a premium for these

---

[1] The following allegations are taken from the operative first amended complaint ("FAC"). At this stage of the proceedings, we must "accept as true all well-pleaded allegations of material fact, and construe them in the light most favorable to the non-moving party." *Daniels-Hall v. Nat'l Educ. Ass'n*, 629 F.3d 992, 998 (9th Cir. 2010).

flushable wipes, as compared to toilet paper or wipes that are
not marketed as "flushable." Each of the four flushable
wipes products contains a statement on the package (or on
the website associated with the product) stating, in various
ways, that the product "breaks up after flushing."

In 2013, Davidson was shopping at a Safeway in San
Francisco when she came across Scott Wipes. Davidson saw
the word "flushable" on the Scott Wipes package and
noticed that the Scott Wipes were more expensive than
wipes that did not have the word "flushable" on the package.
According to Davidson, flushable ordinarily means "*suitable*
for disposal down a toilet," not simply "*capable* of passing
from a toilet to the pipes after one flushes." Davidson
maintains that this ordinary meaning of flushable is
understood by reasonable consumers, who expect a flushable
product to be suitable for disposal down a toilet. Consistent
with that understanding, the Merriam-Webster dictionary
defines flushable as "suitable for disposal by flushing down
a toilet," and a nonprofit organization of water quality
professionals states that a flushable item must completely
disperse within five minutes of flushing. In other words,
"truly flushable products, such as toilet paper, . . . disperse
within seconds or minutes."

Davidson was concerned about products that were not
suitable for flushing because she remembered hearing stories
about people flushing items that should not be flushed,
which then caused problems with home plumbing systems
and municipal wastewater treatment facilities. Davidson did
not want to cause such damage to her plumbing or to San
Francisco's wastewater treatment facilities. Davidson
reviewed the front and back of the Scott Wipes package and
did not see anything indicating that the wipes were not
suitable for flushing. Believing it would be easier and more

sanitary to flush wipes than to throw them in the garbage, Davidson purchased the Scott Wipes.

Once Davidson began using the Scott Wipes, she noticed that each wipe felt sturdy and thick, unlike toilet paper. Davidson also noticed that the wipes did not disperse in the toilet bowl like toilet paper. After using the wipes several times, Davidson became concerned that the wipes were not truly flushable, so she stopped using the Scott Wipes altogether. Davidson investigated the matter further and learned that flushable wipes caused widespread damage to home plumbing and municipal sewer systems. This research "further[ed] her concerns that the [Scott] Wipes were not in fact appropriate for disposal by flushing down a toilet."

Davidson has never again purchased flushable wipes. Yet Davidson "continues to desire to purchase wipes that are suitable for disposal in a household toilet," and "would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible to determine prior to purchase if the wipes were suitable to be flushed." Davidson regularly visits stores that sell Kimberly-Clark's flushable wipes but is unable to determine, based on the packaging, whether the wipes are truly flushable. Davidson would not have purchased the Scott Wipes, or would have paid less for the Scott Wipes, had Kimberly-Clark not "misrepresented (by omission and commission) the true nature of their Flushable Wipes."

In addition to her experience with the Scott Wipes she purchased, Davidson alleges more broadly that all four flushable wipes products Kimberly-Clark manufactured and marketed "are not in fact flushable, because the wipes are not suitable for disposal by flushing down a household toilet." Kimberly-Clark manufactures these products with strong fibers that do not efficiently disperse when placed in

a toilet.  Kimberly-Clark's own testing demonstrates that the flushable wipes products break down in water at a significantly lower rate than toilet paper.  Numerous news stories describe how flushable wipes have clogged municipal sewage systems, thereby requiring costly repairs.  Consumers who have purchased some of the Kimberly-Clark flushable wipes products have lodged complaints on Kimberly-Clark's website that the flushable wipes damaged their septic tanks or plumbing.

Based on these allegations, Davidson brought four California state law causes of action against Kimberly-Clark, including for common law fraud and for violations of the Consumer Legal Remedies Act ("CLRA"), California Civil Code § 1750, *et seq.*, False Advertising Law ("FAL"), California Business & Professions Code § 17500, *et seq.*, and Unfair Competition Law ("UCL"), California Business & Professions Code § 17200, *et seq.*  Davidson sought restitution, injunctive relief, and actual, punitive, and statutory damages on her CLRA claim; restitution and injunctive relief on her FAL and UCL claims; and compensatory and punitive damages on her common law fraud claim.  Davidson sought to certify a class of all persons who purchased Cottonelle Wipes, Scott Wipes, Huggies Wipes, and Kotex Wipes in California between March 13, 2010 and the filing of the FAC on September 5, 2014.

## B.  Procedural History

Davidson initially filed this case in state court, but Kimberly-Clark removed it to federal court pursuant to the Class Action Fairness Act, 28 U.S.C. § 1332(d)(2).  The district court denied in part and granted in part Kimberly-Clark's motion to dismiss the original complaint.  In response, Davidson filed the operative FAC.  Kimberly-Clark moved to dismiss the FAC, and the district court

granted the motion, this time with prejudice. First, the district court granted Kimberly-Clark's Federal Rule of Civil Procedure ("Rule") 12(b)(1) motion to dismiss Davidson's injunctive relief claims, finding that Davidson lacked standing to seek injunctive relief because she was unlikely to purchase Kimberly-Clark's flushable wipes in the future. Second, the district court granted Kimberly-Clark's motion to dismiss the FAC pursuant to Rules 9(b) and 12(b)(6), concluding that Davidson had failed to adequately allege why the representation "flushable" on the package was false. Finally, the district court concluded that Davidson "failed to allege damage under the UCL/FAL/CLRA or common law fraud" causes of action, because Davidson had not alleged that she suffered any harm due to her use of the Scott Wipes.

Davidson filed a motion for reconsideration under Rules 59(e) and 60(b), which the district court denied. First, the district court rejected Davidson's argument that it should have remanded the injunctive relief claims to state court. Second, the district court rejected Davidson's argument that it dismissed the FAC without prejudice so that Davidson could file a second amended complaint curing the alleged defects in the FAC. Third, the district court rejected Davidson's argument that the district court erred by ruling that Davidson had not adequately pled damages. Davidson timely appealed.

Davidson appeals six of the district court's rulings. First, Davidson argues that the district court erred by dismissing the FAC pursuant to Rule 9(b) for failure to adequately allege why the representation "flushable" was false. Second, Davidson argues that the district court erred by dismissing the FAC pursuant to Rule 12(b)(6) on the basis that Davidson had not suffered any damages. Third, Davidson argues that the district court erred by dismissing the original

complaint pursuant to Rule 12(b)(6) for failing to plead how she came to believe the wipes were not flushable. Fourth, Davidson argues that the district court abused its discretion in striking, pursuant to Rule 12(f), references to newspaper reports in the original complaint. Fifth, Davidson argues that the district court abused its discretion by denying Davidson leave to amend her FAC. Finally, Davidson argues that the district court erred by dismissing her injunctive relief claims pursuant to Rule 12(b)(1) for lack of standing.

## II. STANDARD OF REVIEW

We review de novo dismissals under Rule 9(b) for failure to plead fraud with particularity. *Kearns v. Ford Motor Co.*, 567 F.3d 1120, 1124 (9th Cir. 2009). We review de novo dismissals under Rule 12(b)(6) for failure to state a claim upon which relief can be granted. *Crowley v. Nevada ex. rel. Nev. Sec'y of State*, 678 F.3d 730, 736 (9th Cir. 2012). A district court's decision granting a motion to strike allegations in a complaint pursuant to Rule 12(f) is reviewed for abuse of discretion. *Nurse v. United States*, 226 F.3d 996, 1000 (9th Cir. 2000). Similarly, a district court's decision dismissing a complaint with prejudice, which thereby denies the plaintiff an opportunity to amend her complaint, is reviewed for abuse of discretion. *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 989 (9th Cir. 2009). Finally, we review de novo dismissals under Rule 12(b)(1) for lack of subject-matter jurisdiction. *Novak v. United States*, 795 F.3d 1012, 1017 (9th Cir. 2015).

## III. DISCUSSION

### A.  Theory of Fraud

The district court dismissed the FAC pursuant to Rule 9(b) because it concluded that Davidson failed to adequately

allege "why" the representation that the wipes were flushable was false.  Davidson argues that the district court overlooked the FAC's "numerous, detailed factual allegations establishing that Defendants' wipes fail to disperse and therefore cause clogs and problems with sewer and septic systems."  Kimberly-Clark argues that Davidson must allege that she experienced problems with her home plumbing or the relevant water treatment plant—allegations that are indisputably lacking in the FAC.

Because Davidson's common law fraud, CLRA, FAL, and UCL causes of action are all grounded in fraud, the FAC must satisfy the traditional plausibility standard of Rules 8(a) and 12(b)(6), as well as the heightened pleading requirements of Rule 9(b).  *Kearns*, 567 F.3d at 1125 ("[W]e have specifically ruled that Rule 9(b)'s heightened pleading standards apply to claims for violations of the CLRA and UCL."); *Vess v. Ciba-Geigy Corp. USA*, 317 F.3d 1097, 1103–04 (9th Cir. 2003) (explaining that even "[i]n cases where fraud is not a necessary element of a claim, a plaintiff may choose nonetheless to allege in the complaint that the defendant has engaged in fraudulent conduct," and in such cases, Rule 9(b)'s heightened pleading requirement must be met).  "In alleging fraud . . . a party must state with particularity the circumstances constituting fraud."  Fed. R. Civ. P. 9(b).  To properly plead fraud with particularity under Rule 9(b), "a pleading must identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false."  *Cafasso, U.S. ex rel. v. Gen. Dynamics C4 Sys., Inc.*, 637 F.3d 1047, 1055 (9th Cir. 2011) (internal quotation marks and alterations omitted); *Vess*, 317 F.3d at 1106 ("The plaintiff must set forth what is false or misleading about a statement, and why it is false."

(quoting *Decker v. GlenFed, Inc.*, 42 F.3d 1541, 1548 (9th Cir. 1994))).

Assuming the truth of the allegations and construing them, as we must, in the light most favorable to Davidson, *Daniels-Hall*, 629 F.3d at 998, we hold that the FAC adequately alleged why the term "flushable" is false.[2] Davidson's theory of fraud is simple: "Unlike truly flushable products, such as toilet paper, which disperse and disintegrate within seconds or minutes, [Kimberly-Clark's flushable wipes] take hours to break down" or disperse, creating a risk that the wipes will damage plumbing systems, septic tanks, and municipal wastewater treatment facilities. Davidson alleged that flushable means "suitable for being flushed," which requires an item to be capable of dispersing within a short amount of time. This definition of flushable is supported by multiple allegations in the FAC, including dictionary definitions and Kimberly-Clark's own statement on its website that its flushable wipes "are flushable due to patented technology that allows them to lose strength and *break up when moving through the system after flushing*." In contrast to truly flushable or dispersible products,

---

[2] Davidson argues that to survive Rule 12(b)(6), she need only plead enough facts to plausibly demonstrate that a reasonable consumer may be misled. Her observation is correct. *See Williams v. Gerber Products Co.*, 552 F.3d 934, 938 (9th Cir. 2008) (concluding that UCL, CLRA, and FAL claims are governed by the "reasonable consumer standard," under which a plaintiff need only "show that members of the public are likely to be deceived" (internal quotation marks omitted)). The district court, however, did not dismiss the FAC only under Rule 12(b)(6), but also under Rule 9(b). Under Rule 9(b), Davidson was required not simply to adequately plead that reasonable consumers are likely to be deceived by Kimberly-Clark's use of the designation "flushable," but also *why* the designation "flushable" is false. *See Kearns*, 567 F.3d at 1125.

Davidson alleged, Kimberly-Clark's flushable wipes "take hours to begin to break down."

Importantly, Davidson alleged that the actual wipes she purchased failed to "disperse and disintegrate within seconds or minutes." For example, Davidson alleged that after using the wipes, she "noticed that each individual wipe felt very sturdy and thick, unlike toilet paper" and that "[s]he also noticed that the wipes did not break up in the toilet bowl like toilet paper but rather remained in one piece." Her personal experience is supported by additional allegations, including Kimberly-Clark's own testing of the wipes.

Kimberly-Clark argues that Davidson was required to allege damage to her pipes or her sewage system because "suitable for flushing" means that the wipes "would not cause problems in her plumbing or at the water treatment plant." But Kimberly-Clark justifies this theory by taking a single allegation in the FAC out of context. The FAC admittedly contains many allegations about how Kimberly-Clark's flushable wipes and other wipes marketed as "flushable" can cause damage to pipes and sewage systems. But these allegations are extraneous and do not detract from Davidson's basic theory of fraud: that "truly flushable products . . . disperse and disintegrate within seconds or minutes," and Kimberly-Clark's flushable wipes do not "disperse and disintegrate within seconds or minutes." Since "[d]ismissal is proper only where there is no cognizable legal theory or an absence of sufficient facts alleged to support a cognizable legal theory," *Navarro v. Block*, 250 F.3d 729, 732 (9th Cir. 2001), and since Davidson alleged a cognizable legal theory, dismissal was not appropriate in this case. *See Deutsch v. Flannery*, 823 F.2d 1361, 1365 (9th Cir. 1987) ("[A] pleading satisfies the particularity requirement [of Rule 9(b)] if it identifies the circumstances constituting fraud

so that the defendant can prepare an adequate answer from the allegations." (internal quotation marks omitted)).

For these reasons, we hold that the FAC adequately alleged that Kimberly-Clark's use of the word "flushable" was false because the Scott Wipes Davidson purchased did not disperse as a truly flushable product would have.

## B.  Harm

The district court also dismissed Davidson's FAC in part because Davidson had not alleged that she suffered any damages.  When Davidson questioned this conclusion in her motion for reconsideration, the district court clarified that Davidson "had not pled facts showing that her use of the wipes damaged her plumping, pipes, or septic system."

However, Davidson was not required to allege damage to her plumbing or pipes.   Under California law, the economic injury of paying a premium for a falsely advertised product is sufficient harm to maintain a cause of action.  *See, e.g.*, Cal. Bus. & Prof. Code § 17203 (requiring that an individual plead that she lost "money or property" because of the alleged deceptive conduct); Cal. Civ. Code § 1780(a) (stating that a plaintiff asserting a cause of action under the CLRA need only plead that she suffered "any damage"); *Hinojos v. Kohl's Corp.*, 718 F.3d 1098, 1104 (9th Cir. 2013) ("The lost money or property requirement therefore requires a plaintiff to demonstrate some form of economic injury as a result of his transactions with the defendant." (internal quotation marks omitted)).  Thus, a consumer's allegation that "she would not have bought the product but for the misrepresentation . . . is sufficient to allege causation . . . [and] to allege economic injury."  *Kwikset Corp. v. Superior Court*, 246 P.3d 877, 890 (Cal. 2011).

To properly plead an economic injury, a consumer must allege that she was exposed to false information about the product purchased, which caused the product to be sold at a higher price, and that she "would not have purchased the goods in question absent this misrepresentation." *Hinojos*, 718 F.3d at 1105. Davidson did that here. Davidson alleged that "[h]ad [Kimberly-Clark] not misrepresented (by omission and commission) the true nature of their Flushable Wipes, [she] would not have purchased [Kimberly-Clark's] product or, at a very minimum, she would have paid less for the product," and that "[Kimberly-Clark] charge[d] a premium price for flushable wipes." Because Davidson only needed to allege an economic injury to state a claim for relief, and because Davidson alleges that she paid a premium price for the Scott Wipes, Davidson has properly alleged that she was injured by Kimberly-Clark's allegedly false advertising.

## C. Dismissal of the Original Complaint

The district court stated in its order dismissing the original complaint that "plaintiff has not alleged facts showing how she came to believe that the [Scott Wipes] were not flushable." Davidson argues that this requirement "does not exist in law." According to Kimberly-Clark, the statement simply reflected the district court's observation that Davidson had not alleged facts about her own experience.

Davidson was required to "identify the who, what, when, where, and how of the misconduct charged, as well as what is false or misleading about the purportedly fraudulent statement, and why it is false." *Cafasso*, 637 F.3d at 1055 (internal quotation marks and alterations omitted). To the extent the district court dismissed the original complaint because Davidson failed to allege facts "showing how she

came to believe that the [Scott Wipes] were not 'flushable,'" the district court erred. We are aware of no authority that specifically requires a plaintiff bringing a consumer fraud claim to allege how she "came to believe" that the product was misrepresented when, as in this case, all the Rule 9(b) considerations have been met.

## D. Article III Standing for Injunctive Relief

Finally, we address the most challenging issue in this case: whether Davidson has standing to seek injunctive relief.[3] The district court concluded that Davidson lacked standing to assert a claim for injunctive relief, because Davidson "has no intention of purchasing the same Kimberly-Clark product in the future." Davidson argues that she has alleged a cognizable injury that establishes Article III standing to seek injunctive relief because (1) she will be unable to rely on the label "flushable" when deciding in the future whether to purchase Kimberly-Clark's wipes, and (2) Kimberly-Clark's false advertising threatens to invade her statutory right, created by the UCL, CLRA, and FAL, to receive truthful information from Kimberly-Clark about its wipes. We hold that Davidson properly alleged that she faces a threat of imminent or actual harm by not being able to rely on Kimberly-Clark's labels in the future, and that this harm is sufficient to confer standing to seek injunctive relief. We therefore do not reach Davidson's alternative statutory standing argument.

---

[3] We do not address the district court's order granting the motion to strike allegations in the original complaint, as that complaint was replaced by the FAC, and we conclude that the FAC is sufficient as is to survive the heightened pleading requirements of Rule 9(b). Similarly, we do not address the district court's order denying leave to amend the FAC, as we conclude that the FAC is adequate as it stands.

Article III of the U.S. Constitution authorizes the judiciary to adjudicate only "cases" and "controversies." The doctrine of standing is "an essential and unchanging part of the case-or-controversy requirement of Article III." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). The three well-known "irreducible constitutional minim[a] of standing" are injury-in-fact, causation, and redressability. *Id.* at 560–61. A plaintiff bears the burden of demonstrating that her injury-in-fact is "concrete, particularized, and actual or imminent; fairly traceable to the challenged action; and redressable by a favorable ruling." *Monsanto Co. v. Geertson Seed Farms*, 561 U.S. 139, 149 (2010).

A plaintiff must demonstrate constitutional standing separately for each form of relief requested. *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC) Inc.*, 528 U.S. 167, 185 (2000). For injunctive relief, which is a prospective remedy, the threat of injury must be "actual and imminent, not conjectural or hypothetical." *Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009). In other words, the "threatened injury must be *certainly impending* to constitute injury in fact" and "allegations of *possible* future injury are not sufficient." *Clapper v. Amnesty Int'l USA*, 568 U.S. 398, 409 (2013) (internal quotation marks and alteration omitted). Past wrongs, though insufficient by themselves to grant standing, are "evidence bearing on whether there is a real and immediate threat of repeated injury." *City of Los Angeles v. Lyons*, 461 U.S. 95, 102 (1983) (internal quotation marks omitted). Where standing is premised entirely on the threat of repeated injury, a plaintiff must show "a sufficient likelihood that he will again be wronged in a similar way." *Id.* at 111. In determining whether an injury is similar, we "must be careful not to employ too narrow or technical an approach. Rather, we must examine the questions realistically: we must reject the temptation to

parse too finely, and consider instead the context of the inquiry." *Armstrong v. Davis*, 275 F.3d 849, 867 (9th Cir. 2001), *abrogated on other grounds by Johnson v. California*, 543 U.S. 499 (2005).

It is an open question in this circuit to what extent a previously deceived consumer who brings a false advertising claim can allege that her inability to rely on the advertising in the future is an injury sufficient to grant her Article III standing to seek injunctive relief. With no guidance from our court, district courts applying California law have split dramatically on this issue. *See Pinon v. Tristar Prods., Inc.*, No. 1:16-cv-00331-DAD-SAB, 2016 WL 4548766, at *4 (E.D. Cal. Sept. 1, 2016) ("The Ninth Circuit has not addressed the specific question . . . [and] district courts within this circuit are divided about whether a plaintiff seeking to bring injunctive relief claims over deceptive labeling can establish Article III standing once they are already aware of an alleged misrepresentation."); *see also Russell v. Kohl's Dep't Stores, Inc.*, No. ED CV 15-1143 RGK (SPx), 2015 WL 12781206, at *5 (C.D. Cal. Oct. 6, 2015) (describing the "split among the district courts in the Ninth Circuit as to whether a plaintiff lacks Article III standing to seek injunctive relief under the UCL and FAL when the plaintiff has knowledge of the defendant's alleged misconduct").

Courts concluding that such a plaintiff lacks standing to seek injunctive relief generally reason that "plaintiffs who are already aware of the deceptive nature of an advertisement are not likely to be misled into buying the relevant product in the future and, therefore, are not capable of being harmed again in the same way." *Pinon*, 2016 WL 4548766 at *4. For example, in *Machlan v. Procter & Gamble Company*, the plaintiff alleged that the defendant

deceptively marketed its wipes as flushable, even though the wipes did not disperse like toilet paper and clogged pipes and sewage systems—facts nearly identical to those here.  77 F. Supp. 3d 954, 957 (N.D. Cal. 2015).  The district court in *Machlan* concluded that the plaintiff lacked Article III standing for injunctive relief because the plaintiff had alleged that the use of the term "flushable" was deceptive, so the plaintiff could not be deceived again, even if he purchased the same wipes in the future.  *Id.* at 960 ("[W]hen the alleged unfair practice is deception, the previously-deceived-but-now-enlightened plaintiff simply does not have standing under Article III to ask a federal court to grant an injunction.").[4]    Multiple district courts have held similarly.  *See Pinon*, 2016 WL 4548766 at *4 (collecting cases).

Other district courts in this circuit have concluded that a plaintiff has standing to seek an injunction against a product's misleading representation, even though the plaintiff already knows or has reason to believe that the representation is false.  *See id.* (collecting cases).  These courts generally reason that the plaintiff faces an actual and imminent threat of future injury because the plaintiff may be unable to rely on the defendant's representations in the

---

[4] Interestingly, the *Machlan* court remanded the portions of the plaintiff's claims that sought injunctive relief, and then proceeded in federal court on some of the claims seeking monetary damages.  *Id.* at 960–62, 964–65.  The court reasoned that injunctive relief is an important remedy in California's consumer protection statutes and that allowing a defendant to undermine those statutes through removal to federal court "is an unnecessary affront to federal and state comity."  *Id.* at 961.  Here, Davidson similarly argues that the district court erred by denying her request to remand the injunctive relief "claim" to state court.  Because we conclude that Davidson's alleged future injury justifies Article III standing for injunctive relief, we need not reach this issue.

future, or because the plaintiff may again purchase the
mislabeled product.

For example, in *Ries v. Arizona Beverages USA LLC*, the
plaintiffs alleged that the defendants engaged in false
advertising by marketing their "AriZona Iced Tea"
beverages as "All Natural" and "100% Natural" even though
the product contained the non-natural ingredients high
fructose corn syrup and citric acid.  287 F.R.D. 523, 527
(N.D. Cal. 2012).  The defendants argued that the plaintiffs
were not threatened by future harm because the plaintiffs
became aware of the contents of the drink and could no
longer be deceived.  *Id.* at 533.  The district court rejected
this argument, reasoning that "[s]hould plaintiffs encounter
the denomination 'All Natural' on an AriZona beverage at
the grocery store today, they could not rely on that
representation with any confidence."  *Id.*  The district court
in *Ries* also explained that "the record is devoid of any
grounds to discount plaintiffs' stated intent to purchase [the
product] in the future."  *Id.*; *see also Weidenhamer v.
Expedia, Inc.*, No. C14-1239RAJ, 2015 WL 1292978, at *5
(W.D. Wash. Mar. 23, 2015) (explaining that the plaintiff "is
entitled to rely on the statements made in [the] ad, even if he
previously learned that some of those statements were false
or deceptive," and that the plaintiff had adequately alleged
that he likely would continue to be an Expedia customer);
*Richardson v. L'Oreal USA, Inc.*, 991 F. Supp. 2d 181, 194–
95 (D.D.C. 2013) (finding that "the named plaintiffs,
knowledgeable about the misrepresentations, are likely to
suffer future harm in the absence of an injunction," because
they will be unable "to rely on the [misleading] label with
any confidence" and "will have no way of knowing" whether
defendants "boost[ed] the label's veracity").

We resolve this district court split in favor of plaintiffs seeking injunctive relief. We hold that a previously deceived consumer may have standing to seek an injunction against false advertising or labeling, even though the consumer now knows or suspects that the advertising was false at the time of the original purchase, because the consumer may suffer an "actual and imminent, not conjectural or hypothetical" threat of future harm. *Summers*, 555 U.S. at 493. Knowledge that the advertisement or label was false in the past does not equate to knowledge that it will remain false in the future.[5] In some cases, the threat of future harm may be

---

[5] Several other circuits have considered whether a previously deceived consumer has standing to seek injunctive relief and have held they do not. *See Conrad v. Boiron, Inc.*, 869 F.3d 536 (7th Cir. 2017) (holding that a consumer who brought a putative class action against the manufacturer of a homeopathic flu remedy could not seek injunctive relief); *Nicosia v. Amazon.com, Inc.*, 834 F.3d 220 (2d Cir. 2016) (holding that a consumer who purchased a weight-loss product from an online retailer lacked standing to pursue injunctive relief); *McNair v. Synapse Grp. Inc.*, 672 F.3d 213 (3d Cir. 2012) (holding that former customers lacked standing to pursue injunctive relief in a putative class action against a marketer of magazine subscriptions). These cases, however, are factually distinguishable from the present case. In none of these cases did the plaintiffs sufficiently allege their intention to repurchase the product at issue as Davidson does here.

In *McNair*, the court determined there was no reasonable likelihood that the former customers would be injured by the marketer's techniques in the future because the former customers did not allege that they intended to subscribe to magazines through the marketer again—they alleged only that they "may, one day, become Synapse [magazine marketer] customers once more because 'Synapse's offers are compelling propositions . . . .'" 672 F.3d at 224–25.

In *Nicosia*, the plaintiff had purchased a diet product on Amazon.com that contained sibutramine, a controlled substance that had previously been removed from the market. 834 F.3d at 226. The court held that the plaintiff could not establish a likelihood of future or

the consumer's plausible allegations that she will be unable to rely on the product's advertising or labeling in the future, and so will not purchase the product although she would like to. *See, e.g.*, *Ries*, 287 F.R.D. at 533; *Lilly v. Jamba Juice Co.*, No. 13-cv-02998-JT, 2015 WL 1248027, at *4 (N.D. Cal. Mar. 18, 2015) ("[U]nless the manufacturer or seller has been enjoined from making the same representation, [the] consumer . . . won't know whether it makes sense to spend her money on the product."). In other cases, the threat of future harm may be the consumer's plausible allegations that she might purchase the product in the future, despite the fact it was once marred by false advertising or labeling, as she may reasonably, but incorrectly, assume the product was improved. *See, e.g.*, *L'Oreal*, 991 F. Supp. 2d at 194–95. Either way, we share one district court's sentiment that we are "not persuaded that injunctive relief is *never* available for a consumer who learns after purchasing a product that

---

continuing harm for the purposes of injunctive relief because the plaintiff did not show that he was likely to be subjected to further sales by Amazon of products containing sibutramine given that Amazon had ceased selling the diet product and the plaintiff did not allege "that he intends to use Amazon in the future to buy *any* products, let alone food or drug products generally or weight loss products in particular." *Id*. at 239.

Finally, in *Conrad*, the court held that an injunction would not redress the consumer's potential injury because the injury was already redressed by the merchant's refund program for the deceptive product, and no other injury justifying injunctive relief was pled. 869 F.3d at 542–43.

Unlike the cases cited above, here, Davidson sufficiently alleges that she would purchase truly flushable wipes manufactured by Kimberly-Clark.

the label is false." *Duran v. Creek*, 2016 WL 1191685, at *7 (N.D. Cal. Mar. 28, 2016) (emphasis added).

We observe—although our conclusion is not based on this consideration—that our holding alleviates the anomalies the opposite conclusion would create. As the *Machlan* court aptly recognized, "[a]llowing a defendant to undermine California's consumer protection statutes and defeat injunctive relief simply by removing a case from state court is an unnecessary affront to federal and state comity [and] . . . an unwarranted federal intrusion into California's interests and laws." 77 F. Supp. 3d at 961; *see also Henderson v. Gruma Corp.*, 2011 WL 1362188, at *8 (C.D. Cal. Apr. 11, 2011) ("[T]o prevent [plaintiffs] from bringing suit on behalf of a class in federal court would surely thwart the objective of California's consumer protection laws."). This is because "the primary form of relief available under the UCL to protect consumers from unfair business practices is an injunction," *In re Tobacco II*, 207 P.3d 20, 34 (Cal. 2009)—a principle the California Supreme Court recently reaffirmed.[6] *See McGill v. Citibank, N.A.*, 393 P.3d 85, 90,

---

[6] At the same time, we note that the risks to plaintiffs in cases such as this are occasionally overstated based on the mistaken impression that the only remedy for an improper removal is dismissal without prejudice. As a general rule, if the district court is confronted with an Article III standing problem in a removed case—whether the claims at issue are state or federal—the proper course is to remand for adjudication in state court. *See* 28 U.S.C. § 1447(c); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016). We do not resolve here whether severance and remand, as opposed to dismissal, is the appropriate option where standing is lacking for only some claims or forms of relief. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1006–07. But it bears noting that the end result is likely the same in any event: In prevailing on a motion to dismiss only as to some claims for lack of standing, a defendant is also making the case against the removal of those claims once they are refiled in state court unaccompanied by the claims over

93 (Cal. 2017) (explaining that "public injunctive relief under the UCL, the CLRA, and the false advertising law is relief that has the primary purpose and effect of prohibiting unlawful acts that threaten future injury to the general public," and that "public injunctive relief remains a remedy to private plaintiffs" under the UCL, FAL, and CLRA (internal quotation marks omitted)).

Since we hold that a previously deceived plaintiff may have standing to seek injunctive relief, we must turn our attention to whether Davidson adequately alleged that she faces an imminent or actual threat of future harm caused by Kimberly-Clark's allegedly false advertising.   Davidson alleged that she "continues to desire to purchase wipes that are suitable for disposal in a household toilet"; "would purchase truly flushable wipes manufactured by [Kimberly-Clark] if it were possible"; "regularly visits stores . . . where [Kimberly-Clark's] 'flushable' wipes are sold"; and is continually presented with Kimberly-Clark's flushable wipes packaging but has "no way of determining whether the representation 'flushable' is in fact true."

We are required at this stage of the proceedings to presume the truth of Davidson's allegations and to construe all of the allegations in her favor.  *Daniels-Hall*, 629 F.3d at 998.  Though we recognize it is a close question, based on the FAC's allegations, we hold that Davidson adequately alleged that she faces an imminent or actual threat of future harm due to Kimberly-Clark's false advertising.  Davidson has alleged that she desires to purchase Kimberly-Clark's flushable wipes.  Her desire is based on her belief that "it

---

which the district court *did* have jurisdiction.  *See* 28 U.S.C. § 1447(a).  A "perpetual loop" of removal to federal court and dismissal for lack of standing should not occur.  *Cf. Machlan*, 77 F. Supp. 3d at 961.

would be easier and more sanitary to flush the wipes than to dispose of them in the garbage."  As in *Ries*, the FAC is "devoid of any grounds to discount [Davidson's] stated intent to purchase [the wipes] in the future."  287 F.R.D. at 533.

Davidson has also sufficiently alleged an injury that is "concrete and particularized."  *See Spokeo, Inc. v. Robins*, 136 S. Ct. 1540, 1548 (2016), *as revised* (May 24, 2016) (quoting *Lujan*, 504 U.S. at 560).  The alleged injury is particular to Davidson because it would affect her, as a direct consumer of Kimberly-Clark's wipe products, in a personal and individual way.  *See id*.  At this motion to dismiss stage, based on Davidson's allegations that she would purchase truly flushable wipes manufactured by Kimberly-Clark if it were possible, her injury is concrete—it is real and not merely abstract.  *See id*.  Indeed, "'[c]oncrete' is not ... necessarily synonymous with 'tangible.'"  *Id*. at 1549. Davidson's alleged harm is her inability to rely on the validity of the information advertised on Kimberly-Clark's wipes despite her desire to purchase truly flushable wipes. This court recognizes a history of lawsuits based on similar informational injuries.  *See id*. (stating that in considering whether a harm is concrete, it is instructive to consider whether the harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in American courts); *Wilderness Soc., Inc. v. Rey*, 622 F.3d 1251, 1258 (9th Cir. 2010) (discussing the history of informational injury serving as an injury-in-fact sufficient for standing).

As necessary where standing for prospective injunctive relief is premised entirely on the threat of repeated injury,[7] Davidson has also shown "a sufficient likelihood that [s]he will again be wronged in a similar way." *Lyons*, 461 U.S. at 111. Despite now knowing that the "flushable" labeling was false at the time of purchase, "[s]hould [Davidson] encounter the denomination ['flushable'] on a [Kimberly-Clark wipes package] at the grocery store today, [she] could not rely on that representation with any confidence." *Ries*, 287 F.R.D. at 533. In other words, Davidson faces the similar injury of being unable to rely on Kimberly-Clark's representations of its product in deciding whether or not she should purchase the product in the future. *See Lyons*, 461 U.S. at 111; *see also Armstrong*, 275 F.3d at 867.

Finally, Davidson meets the redressability prong of standing because a favorable ruling would likely provide redress for her alleged injury. *See Monsanto Co.*, 561 U.S. at 149. The injunction Davidson seeks would prohibit Kimberly-Clark from using the term "flushable" on their wipes until the product is truly flushable. This injunctive relief would likely redress Davidson's injury by requiring that Kimberly-Clark only make truthful representations on

---

[7] Although courts in this circuit occasionally imply otherwise, *see, e.g.*, *Pinon v. Tristar Prods., Inc.*, No 1:16-cv-00331-DAD-SAB, 2016 WL 4548766, at *4 (E.D. Cal. Sept. 1, 2016); *Anderson v. The Hain Celestial Grp., Inc.*, 87 F. Supp. 3d 1226, 1234 (N.D. Cal. 2015), there is no reason prospective injunctive relief must always be premised on a realistic threat of a similar injury recurring. A sufficiently concrete prospective injury is sufficient. *See, e.g.*, *Chapman v. Pier 1 Imports (U.S.) Inc.*, 631 F.3d 939, 951 (9th Cir. 2011) (en banc) ("Had the prospect of future injury been more concrete, the absence of a past injury . . . would not have precluded Article III standing.").

their wipe products upon which Davidson could reasonably
rely.

We therefore hold that Davidson's allegation that she has
"no way of determining whether the representation
'flushable' is in fact true" when she "regularly visits stores
. . . where Defendants' 'flushable' wipes are sold"
constitutes a "threatened injury [that is] certainly
impending," thereby establishing Article III standing to
assert a claim for injunctive relief. *See Clapper*, 568 U.S. at
409.

## IV. CONCLUSION

We hold that the FAC adequately alleges that Kimberly-
Clark's use of the word "flushable" was false because the
Scott Wipes that Davidson purchased did not adequately
disperse as a truly flushable product would have. The
district court erred in concluding that Davidson failed to
allege harm and how she came to believe the wipes were not
flushable. Finally, because Davidson's allegations
sufficiently identified a certainly impending risk of her being
subjected to Kimberly-Clark's allegedly false advertising,
Davidson had standing to pursue injunctive relief. We
therefore **REVERSE** and **REMAND.**

BERZON, Circuit Judge, concurring:

I concur in the majority opinion with the following observations:

As to prospective relief, the majority opinion rests on the proposition that we are required to perform a separate standing analysis for each "form of relief," and concludes that Davidson has separately established standing for her requests for restitution and for an injunction. There is case law supporting both points, as the opinion states.

I write separately to note that duplicating the standing analysis in this way does not give effect to the "case or controversy" requirement of Article III. Instead, it appears to be an artifact of the discredited practice of conflating the prerequisites for injunctive relief with the Article III prerequisites for entry into federal court. Although we said in *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1040 n.1 (9th Cir. 1999) (en banc), purporting to overrule earlier precedents,[1] that *City of Los Angeles v. Lyons*, 461 U.S. 95 (1983), requires this result, in my view it does not.

---

[1] *See Smith v. City of Fontana*, 818 F.2d 1411, 1423 (9th Cir. 1987) (holding that standing for a damages claim satisfies Article III standing with respect to other forms of relief "involv[ing] the same operative facts and legal theory"); *Giles v. Ackerman*, 746 F.2d 614, 619 (9th Cir. 1984) (treating the presence of a related damages claim as satisfying Article III standing, thereby allowing the court to consider "whether relief in addition to damages is appropriate"); *Gonzales v. City of Peoria*, 722 F.2d 468, 481 (9th Cir. 1983) (concluding that the presence of a damages claim "present[ed] a case in controversy as to injunctive relief").

I note that only equitable relief was sought in *Hodgers-Durgin*. 199 F.3d at 1040. The question presented in the cases cited in *Hodgers-*

The present case well illustrates the problem. Davidson seeks restitution for the premium she paid for a falsely labeled product, and no one doubts that she has standing in federal court to do so. Under California law, if Davidson prevails on her false advertising claim and is entitled to restitution, she is equally entitled to an injunction. *See* Cal. Bus. & Prof. Code §§ 17202–03; *see also Kwikset Corp. v. Superior Court*, 246 P.3d 877, 894–95 (Cal. 2011). No further showing, equitable or otherwise, is needed to trigger her right to injunctive relief. It follows that we have a single dispute—a single case, a single controversy—giving rise to multiple forms of relief.

It is mechanically possible, in this case, to define Davidson's "case or controversy" differently, and to assign the requirements of injury, causation, and redressability separately to each remedy she seeks. But it turns Article III on its head to let the remedies drive the analysis, where state law clearly envisions those remedies as the product of a single adjudication of a single issue. *See Korea Supply Co. v. Lockheed Martin Corp.*, 63 P.3d 937, 943 (Cal. 2003). And proceeding in that way undermines, substantively, the enforcement of state laws in federal court, as it adds new elements to the entitlement to state-law relief. *Cf. Erie R. Co. v. Tompkins,* 304 U.S. 64, 78 (1938) ("Congress has no power to declare substantive rules of common law applicable

---

*Durgin* was thus not at issue. It is therefore far from clear that *Hodgers-Durgin's* disapproval of those cases is controlling precedent. *See Alcoa, Inc. v. Bonneville Power Admin.,* 698 F.3d 774, 796–97 (9th Cir. 2012) (Tashima, J., concurring); *id.* at 804 n.4 (Bea, J., concurring in part and dissenting in part); *Miranda B. v. Kitzhaber,* 328 F.3d 1181, 1186 (9th Cir. 2003) (per curiam).

in a state . . . .  And no clause in the Constitution purports to confer such a power upon the federal courts.").

It was in recognition of this anomaly that the district court in *Machlan v. Procter & Gamble Co.* remanded only the injunctive aspect of that similar false advertising case to state court.  77 F. Supp. 3d 954, 960–61 (N.D. Cal. 2015). Such an approach may not be entirely consonant with the California law here at issue.[2]  But the impetus to sever the forms of relief over which the court lacks jurisdiction springs from the same problem I have identified—that a defendant should not be able to strip a plaintiff of remedies dictated by state law by removing to federal court a case over which there surely *is* Article III jurisdiction over the liability issues. *Cf. Larson v. Valente*, 456 U.S. 228, 238–39 (1982) ("The essence of the standing inquiry is whether the parties seeking to invoke the court's jurisdiction have alleged such a personal stake in the outcome of the controversy as to assure

---

[2] One ordinarily thinks of severing separate *claims* joined in a single action, not separate forms of relief flowing from a single claim.  *See* Fed. R. Civ. P. 21.  But severing and remanding discrete forms of relief is no less anomalous than separately analyzing forms of relief for the purposes of Article III standing.  And as remand is required if the district court lacks jurisdiction over a removed case, 28 U.S.C. § 1447(c), the *Machlan* approach makes a certain amount of sense. *See Lee v. Am. Nat'l Ins. Co.*, 260 F.3d 997, 1007 n.8 (9th Cir. 2001).

In any event, as the main opinion notes, the *Machlan* approach is considerably more efficient than the likely alternative—dismissing the "claim" for injunctive relief without prejudice, only to have that "claim" refiled in state court absent the request for restitution that justified removal.  *See* 28 U.S.C. § 1441(a); *Polo v. Innoventions Int'l, LLC*, 833 F.3d 1193, 1196 (9th Cir. 2016); *Lee*, 260 F.3d at 1006–07 (observing that the result of partial dismissal of a removed case for lack of Article III standing is not the end of litigation on the dismissed claims, but renewed litigation in state court).

that concrete adverseness which sharpens the presentation of issues . . . ." (internal quotation marks omitted)).

Federal courts have a history of improperly elevating the prerequisites for relief to the status of jurisdictional hurdles. *See Lexmark Int'l, Inc. v. Static Control Components, Inc.*, 134 S. Ct. 1377, 1387–88 & n.4 (2014).  Notably, although *Lyons* is now widely credited as the origin of the rule that injunctive relief always requires its own standing inquiry, *see, e.g.*, *Summers v. Earth Island Inst.,* 555 U.S. 488, 493 (2009); *Hodgers-Durgin*, 199 F.3d at 1040 n.1, that case, as I read it, did *not* make that jurisdiction/remedy mistake. Rather, *after* determining that there was no independent standing to seek injunctive relief, *Lyons* separately noted that there was also a pending request for damages.  *Lyons*, 461 U.S. at 111.  The Court then inquired into whether the *nonjurisdictional* requirements for equitable prospective relief were met, and concluded they were not.  *Id.* at 111–12. In my view, this aspect of *Lyons* recognized that there *was* a case or controversy regarding liability issues because of the damages claim, but precluded injunctive relief on nonjurisdictional grounds specific to the equitable requirements for such relief—the absence of a likelihood of irreparable harm.  *Id.*  Were this not what *Lyons* meant, the entire discussion of the equitable principles governing prospective relief would have been superfluous.

Conflating the elements of relief with the elements of standing is of little consequence in most cases following *Lyons.*  Where the availability of injunctive relief is governed by federal common law, the common-law prerequisites for injunctive relief must eventually be satisfied, and largely mirror the standing prerequisites.  *See, e.g.*, *Monsanto Co. v. Geertson Seed Farms,* 561 U.S. 139, 153–56 (2010); *Adarand Constructors, Inc. v. Pena,*

515 U.S. 200, 210–12 (1995).  Furthermore, although later Supreme Court cases have cited *Lyons* for the proposition that standing is relief-specific, none has actually found a lack of standing to pursue a particular form of relief where there was otherwise Article III standing over the same claim advanced by the same party.[3]  As a result, the Supreme Court has had no occasion to consider the logic of relief-specific standing.  But in a state-law case such as this, adhering to the proper scope of the standing inquiry is uniquely important.  For here, collapsing the standing and relief inquiries threatens to impose substantive limits on the availability of relief under state law in the service of constitutional interests that aren't actually under threat.

Despite these concerns, I nonetheless concur fully in the majority opinion.  The Supreme Court has read *Lyons* as requiring a separate standing analysis with regard to prospective injunctive relief, even when a party otherwise has standing to advance a claim.  And, as the majority opinion explains, assuming a separate standing analysis is

---

[3] *See Summers v. Earth Island Inst.*, 555 U.S. 488, 493 (2009) (applying *Lyons* to a claim involving only injunctive relief); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733–34 (2008) (applying *Lyons* to claims only for injunctive and declaratory relief, and conducting a single standing analysis); *Friends of the Earth, Inc. v. Laidlaw Envtl. Servs. (TOC), Inc.*, 528 U.S. 167, 184–88 (2000) (conducting a separate standing analysis for civil penalties, but concluding that deterrence of ongoing harm suffices for constitutional standing); *Adarand*, 515 U.S. at 210–12 (applying *Lyons* to claims only for injunctive and declaratory relief, and conducting a single standing analysis); *see also Town of Chester, N.Y. v. Laroe Estates*, 137 S. Ct. 1645, 1650 (2017) (invoking *Lyons* in support of the proposition that a plaintiff intervenor must show standing to seek relief of its own, distinct form that sought by the original plaintiff); *DaimlerChryster Corp. v. Cuno*, 547 U.S. 332, 350–53 (2006) (invoking *Lyons* in support of the proposition that standing is *claim-*specific).

34        DAVIDSON V. KIMBERLY-CLARK CORP.

necessary despite the state prescription of effectively automatic prospective relief, that requirement is met here.